IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| STATE OF MAINE, <br><br> Plaintiff, <br><br> v. <br><br> 3M COMPANY, ET AL., <br><br> Defendants. | Case No. 25-cv-00453 |

## DEFENDANT 3M COMPANY'S MOTION TO STAY

In its opinion issued on November 19, 2025, the First Circuit held that this case belongs in federal court. The First Circuit rejected the State of Maine's attempt to separate its claims related to AFFF PFAS from its claims related to non-AFFF PFAS. Instead, the First Circuit credited Defendant 3M Company's theory that alleged "PFAS contamination from sources for which 3M admittedly has a federal contractor defense [(MilSpec AFFF)] has commingled with" alleged non-AFFF PFAS contamination, entitling 3M to a federal forum in both cases. *State of Maine v. 3M Co.*, No. 23-1709, at 4–5, 21 (1st Cir. Nov. 19, 2025) ("Slip Op") (attached as Exhibit 1). Furthermore, recognizing that 3M may move to transfer this case to the pending MDL, *see In re: Aqueous Film-Forming Foam Products Liability Litigation* (MDL No. 2873), the First Circuit instructed that the Judicial Panel on Multidistrict Litigation (JPML) "choose" whether "to transfer this case" to the MDL for further proceedings. Slip Op. at 4–5, 25–26.

Consistent with the First Circuit's instruction, 3M intends to seek to transfer this case to the AFFF MDL upon issuance of the First Circuit's mandate. The MDL court is best positioned to efficiently answer the overlapping questions posed by this and other cases pending in the MDL,

1

including the State of Maine's "AFFF case." To preserve 3M's right to have a single court answer the same questions posed by each of the State's complaints, 3M respectfully requests that this Court stay further proceedings pending a final transfer decision by the JPML. A stay serves the interests of the Court and the parties. The matter on appeal and this matter are a single case, *see id.* at 12–15; and, as the First Circuit recognized, it belongs in the MDL subject to the JPML's ruling, *see id.* at 5, 26. Given the likelihood of transfer, continuing with discovery on a separate track before the JPML has an opportunity to rule on the transfer of this case would undermine judicial economy and conflict with the First Circuit's clear directive.

The remaining stay factors—the balance of harms—also support a stay. A stay will not meaningfully or unduly delay proceedings given the early stage of this case. Indeed, should the State choose to seek further review of the First Circuit's clear and unanimous decision, it would provide even more reason to stay these proceedings to allow those issues to be resolved before expending further resources of the parties and this Court. On the other hand, allowing this litigation to proceed, notwithstanding the First Circuit's order and without allowing an opportunity for transfer, would result in precisely the inefficiencies the MDL process is meant to avoid—including duplicative discovery into issues that should be decided by one court—while increasing the risk of inconsistent rulings.

## BACKGROUND

As described in 3M's notice of removal, this case is one of two nearly identical actions that the State of Maine filed in state court in 2023 against 3M and other Defendants. Dkt. 1 ¶¶ 7–9. One of those two cases (the "AFFF Suit") seeks to recover for alleged injuries from PFAS derived from Aqueous Film-Forming Foam (AFFF), a product 3M developed in part under directives from the U.S. military. The State's other case (this one) purports to disclaim recovery for any damages

related to AFFF in an attempt to avoid federal jurisdiction. Yet both actions seek to recover for alleged damages from the same six PFAS compounds that the State claims have been used by Defendants in the manufacture of AFFF. *Id*. ¶ 10. And both actions seek to recover for alleged damages for the same natural resources: they contain substantially similar allegations of PFAS contamination of natural resources throughout Maine and assert the same causes of action and requests for relief. *Id*. ¶ 9. The difference is that, in this suit, the State purports to disclaim damages related to AFFF. And it does so even though PFAS from AFFF are chemically indistinguishable from PFAS from other sources. *Id*. ¶¶ 5, 10.

***First Removal (2023).*** In 2023, 3M removed this case to this Court, asserting federal officer jurisdiction. Dkt. 1 ¶ 11. 3M alleged that, notwithstanding the State's attempt to disclaim any AFFF-related recovery in this action, PFAS from MilSpec AFFF and non-AFFF sources commingled across Maine, so the State's claims encompassed alleged PFAS contamination that plausibly derives at least in part from MilSpec AFFF. *Id*.

The State moved to remand to state court, invoking its AFFF disclaimer. *Id*. ¶ 12. This Court granted the State's motion, relying on the State's AFFF disclaimer. *See* Order on Mots. to Stay and Remand, No. 2:23-cv-00210-JAW, ECF No. 47 at 22 (D. Me. July 26, 2023). 3M appealed the Court's remand order to the First Circuit.

***Second Removal (2025).*** While the appeal was pending, the Maine state court ordered the State to disclose the sites for which it is seeking relief in this case. *See* Dkt. 1 ¶¶ 30–38. After 3M's preliminary investigation into the State's claimed sites revealed additional factual bases for federal jurisdiction, 3M removed this case again on September 8, 2025, to preserve its right to a federal forum pursuant to federal officer jurisdiction. Specifically, in response to interrogatories, the State for the first time identified Brunswick/Topsham Water District—a site reported to have been

3

contaminated with PFAS from MilSpec AFFF from the former Naval Air Station in Brunswick—as a site for which it seeks recovery in this case. *Id.* ¶¶ 3, 13, 32–33.

In other words, as 3M explained in its second notice of removal, the State by its own admission seeks damages in this action for alleged PFAS contamination from AFFF, including MilSpec AFFF. *Id.* ¶¶ 5, 13. And as 3M explained in a supplemental notice of removal filed on September 24, 2025, further investigation has revealed that the State seeks recovery in this action for the alleged contamination of at least six additional sites where the contamination plausibly derived at least in part from use of MilSpec AFFF.[1] *See* Dkt. 32 ¶ 4. 3M's investigation continues into potential AFFF commingling at the more than 900 other at-issue sites identified so far by the State in its discovery responses. *See* Dkt. 1 ¶ 31.

The case remains at its earliest stages in this Court. After the second removal, on October 16, 2025, Magistrate Judge Nivison entered a procedural order requiring the parties to use their best efforts to complete outstanding written discovery by December 5, 2025. Dkt. 41. He also scheduled a conference with the parties for December 17, 2025, "to discuss the future course of the case." *Id.*

**The First Circuit Decision.** On November 19, 2025, the First Circuit issued its opinion holding that 3M's removal was proper and that this case belongs in federal court, notwithstanding the State of Maine's disclaimer. *See* Slip Op. at 4–5, 21–26. The First Circuit explained that "[r]esolution of Maine's Complaint requires addressing whether and to what extent such contamination from AFFF sources has commingled with non-AFFF," *id.* at 21, and federal law

---

[1] Just one day after the First Circuit issued its decision, the State served supplemental discovery responses purporting to remove from the State's catalog of claimed sites in this case the seven sites 3M identified in its second notice of removal—and presumably shifting them to its catalog of claimed sites in its AFFF case in the MDL. This fluidity in the State's position only underscores the need to have one court address the impact of AFFF commingling across the State's two cases.

"entitles 3M to have a federal court adjudicate the scope of its federal contractor defense for the allegedly commingled PFAS contamination," *id.* at 24. The Court further explained that issues posed by the commingling—which overlap with the issues presented by Maine's AFFF lawsuit already in the MDL—should be decided by a single federal court, rather than "two courts answer[ing] the same questions," and that the proper court to do so would be the MDL court should the JPML so choose. *Id*. at 4–5, 25–26.

Accordingly, the First Circuit directed this Court to "resume jurisdiction over the case for further proceedings, and that should the [JPML] choose to transfer this case, including to the ongoing [MDL], then further proceedings would occur in the transferee court." *Id*. at 25–26. If the State does not seek further appellate review, the JPML will likely hear 3M's motion to transfer this case in March 2026 and decide the motion by early April 2026.[2]

## ARGUMENT

This Court should exercise its broad discretion to stay proceedings pending a decision by the JPML regarding transfer. A court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 92 F.4th 355, 366 (1st Cir. 2024) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." (quoting *Dietz v. Bouldin*, 579 U.S. 40, 47

---

[2] Based on the JPML's past hearing schedules, the Panel's first hearing session in 2026 is likely to be held in January, with the second hearing held in March 2026. *See* JPML Hearing Session Orders Archive, available at https://www.jpml.uscourts.gov/hearing-session-orders-archive (identifying JPML hearing dates in January and March in each year between 2021 and 2025). The Panel typically issues its decisions within one to two weeks after each hearing session.

(2016))). That inherent power includes the authority to "stay proceedings for prudential reasons." *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004).

In deciding whether to issue a stay, courts consider "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party without a stay; and (3) judicial economy." *Good v. Altria Grp.*, 624 F. Supp. 2d 132, 134 (D. Me. 2009). Applying these factors, courts "frequently grant stays pending a decision by the [JPML] regarding whether to transfer a case." *Id.* (quotation marks omitted); *see also Royal Park Invs. SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 370 (S.D.N.Y. 2013) ("[W]here a multi-district litigation proceeding has been established, courts have routinely stayed motions pending rulings by the JPML.").

The same approach is proper here. The First Circuit has directed this Court to resume jurisdiction pending a decision by the JPML as to whether the case should be transferred to the MDL, which would "eliminate duplicative discovery, prevent inconsistent pretrial rulings," and "conserve the resources of the parties, their counsel and the judiciary." *Good,* 624 F. Supp. 2d at 135 (citation omitted).

### A. A Stay Will Promote Judicial Economy

A stay pending transfer favors judicial economy, as further proceedings in this Court could "preempt the [MDL] court's discretion" and potentially undermine "the efficient conduct of pretrial proceedings" in the MDL. *Id.* at 135. Given that the same questions of fact will arise in the MDL, "judicial economy and the desire for consistent results militate in favor of a stay" pending transfer. *City of Portland v. Purdue Pharma, LP*, No. 1:18-CV-00298, 2018 WL 6191127, at *5 (D. Me. Nov. 28, 2018) (Nivison, J.).

Importantly, the First Circuit has now held that Maine's attempts to keep this case separated from its AFFF case in the MDL "must fail" because the State cannot "have two courts answer the same questions." Slip Op. at 4. But unless and until this case is transferred, there will still be two

6

separate courts deciding these questions, as the State's case will still be split between the District of Maine and the AFFF MDL. A stay allows for the First Circuit's instruction to be followed—it gives the JPML the opportunity to "choose" whether "to transfer this case" to the MDL (*id*. at 26), which it will have a chance to do once the mandate issues and 3M moves to transfer.

In addition, the First Circuit has now made clear that the State's AFFF case and this case present overlapping questions about the scope of 3M's federal contractor defense and "whether PFAS contamination has commingled with AFFF contamination and so was caused largely or in part by AFFF"—which 3M is entitled to have a federal court resolve. *Id.* at 4, 21, 24. The MDL court is best positioned to answer these overlapping questions. Indeed, as the JPML long ago recognized, the government contractor defense spans many of the cases in the MDL, such that "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings (including with respect to discovery, privilege, and *Daubert* motion practice); and conserve the resources of the parties, their counsel, and the judiciary." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018).

Given the efficiencies to be gained, the JPML is likely to transfer this case to the MDL so that it can be addressed jointly with the State's AFFF case. The JPML has done so in at least two similar circumstances, where the States of Illinois and Michigan (as here) each brought one case purportedly seeking to recover for AFFF PFAS and another purportedly seeking to recover for "non-AFFF" contamination. In transferring Illinois's putative "non-AFFF" case to the MDL (where its AFFF case already was pending), the Panel held that transfer "is necessary to avoid overlapping discovery and duplicative proceedings" across cases "involv[ing] the same water sources." Transfer Order, *In re: Aqueous Film-Forming Foam Prod. Liab. Litig.*, MDL No. 2873, ECF No. 1927 at 3 (J.P.M.L. June 5, 2023). In transferring Michigan's putative "non-AFFF" case

to the MDL under virtually identical circumstances, the Panel likewise explained that it has repeatedly "rejected" attempts by plaintiffs to "split . . . claims into AFFF and non-AFFF complaints and thereby maintain an action outside the MDL." Transfer Order, *In re: Aqueous Film-Forming Foam Prod. Liab. Litig.*, MDL No. 2873, ECF No. 1020 at 4 (J.P.M.L. June 7, 2021).[3]

So too here. The JPML should have the opportunity to decide whether this case, like Illinois' and Michigan's cases, should be transferred to the MDL.[4] Once the First Circuit's mandate issues, 3M will promptly file its motion to transfer.

A stay to allow the JPML this opportunity would be consistent with the approaches of other courts across the country that have followed similar principles of sound judicial administration to grant stays pending transfer to the AFFF MDL. *See, e.g., Clarke v. 3M Co.*, No. 3:25-cv-738, ECF No. 14 at 3 (E.D. Va. Oct. 30, 2025); *City of Philadelphia v. Kidde Fenwal, Inc.*, No. 2:22-cv-04779, ECF No. 31 (E.D. Pa. Feb. 7, 2023); *McKinnon v. Applied Indus. Techs.*, 2022 WL 17363903 (C.D. Cal. Aug. 31, 2022); *see also Marathon Petroleum Co. LP v. 3M Co., et al.*, No. 22-cv-10117, ECF No. 26 at 4 (E.D. Mich. Mar. 17, 2022) ("The efficiency of staying the proceedings until the transfer issue is resolved is especially apparent here, where, as Defendants note, the district court in South Carolina has overseen numerous cases in the multidistrict litigation for three years and, in that time, has determined a range of issues[.]"); *Tibbets v. 3M, et al.*, No. 21-

---

[3] A stay would also align with the MDL court's view that attempts "to avoid the MDL and/or federal jurisdiction by denying, disclaiming, or omitting allegations concerning exposure to AFFF" through "artful pleading" is "contrary to law." See Case Management Order No. 36, *In re: Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 7891 at 1 (D.S.C. Aug. 22, 2025).

[4] Other States have not attempted the jurisdictional gambit employed by Maine here and instead included all their claims for alleged PFAS contamination from AFFF and other products in single actions now pending in the MDL. *See, e.g.*, Transfer Order, *In re: Aqueous Film-Forming Foam Prod. Liab. Litig.*, MDL No. 2873, ECF No. 1646 at 2 (J.P.M.L. December 13, 2022) ("That the State's claims encompass both AFFF and non-AFFF sources of contamination does not eliminate the common factual questions and discovery relating to PFAS and AFFF that State of Wisconsin will share with the actions in the MDL.").

cv-2400, ECF No. 12 at 6–7 (E.D. La. Jan. 27, 2022) (similar); *Saracco v. State of Alaska*, No. 21-cv-00015, ECF No. 39 3–4 (D. Alaska Nov. 29, 2021) (similar).

In sum, the judicially efficient approach is to pause proceedings. Continuing with discovery—before the JPML has the opportunity to weigh in—would waste the time and resources of the Court and parties and undermine the pretrial processes the MDL court has set in place. The Court should thus issue a brief stay pending return of the mandate from the First Circuit and the JPML's ruling on 3M's motion to transfer.

### B. Denial Of A Stay Would Prejudice 3M

A stay is also warranted because proceeding with dual-track litigation and discovery, in a case that the First Circuit has expressly instructed will be transferred "if the [JPML] chooses" to do so, Slip Op. at 5, would prejudice 3M. "[A]llowing pretrial proceedings to continue poses a significant risk of duplicative motions and discovery that could result in needless expense and inequity to" 3M while the motion to transfer is pending. *See Azar v. Merck & Co.*, No. 3:06-cv-0579, 2006 WL 3086943, at *1 (N.D. Ind. Oct. 27, 2006); *accord Clarke*, No. 3:25-cv-738, ECF No. 14 at 3 ("Defendant would be required to expend resources by filing a responsive pleading or engaging in discovery—litigation that will prove duplicative if this case is later transferred to the MDL."); *Gallagher v. Boehringer Ingelheim Pharms., Inc.*, No. 22-cv-10216, 2023 WL 402191, at *9 (S.D.N.Y. Jan. 25, 2023) (same).

Here, as explained above, the case is likely to be transferred. Burdening 3M with duplicative discovery obligations before this Court pending that transfer imposes unnecessary costs and risks. Without a stay, there is a likelihood of duplicative discovery and inconsistent rulings on the same issues across two cases brought by Maine: one in the MDL and one before this Court.

The First Circuit has made plain that these two cases should not continue to proceed in separate courts, that the State's "efforts to have two courts answer the same questions must fail," and that 3M must be provided an opportunity to seek transfer to the MDL. Slip Op. at 4–5, 25–26. Duplicative discovery, unnecessary litigation costs, and inconsistent rulings can be easily avoided by pausing these proceedings until the JPML has weighed in following the issuance of the First Circuit's mandate. Once transferred, the MDL court's established case management orders and discovery processes will preserve judicial economy for the parties and the courts.

      **C.     A Stay Will Not Prejudice The State**

By contrast, the State will not be prejudiced by a short stay pending the JPML's decision on transfer. "The pendency of a related proceeding in another tribunal is a 'typical reason' for a stay of proceedings." *Poole v. Hancock Cnty.*, No. 1:22-cv-00364, 2023 WL 5627312, at *2 (D. Me. Aug. 31, 2023) (quoting *Hewlett-Packard Co. v. Berg*, 61 F.3d 101, 105 (1st Cir. 1995)). More generally, courts routinely hold that short delays in proceedings pending a JPML transfer decision do not prejudice plaintiffs. *See Gallagher*, 2023 WL 402191, at *9 (stay during three- to five-month period until next JPML hearing would not prejudice plaintiff); *see also Royal Park*, 941 F.Supp.2d at 372 ("Courts have determined that such short delays caused by staying proceedings until the JPML decides whether to transfer a case usually do not prejudice the plaintiff."); *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, No. 05-cv-453, 2005 WL 3555926, at *1 (E.D.N.Y. Dec. 23, 2005) (similar).

Here, a stay pending the JPML's consideration of transfer will not cause any meaningful delay, apart from delay solely attributable to the State's initial choice to try to separate claims that belonged together or its choice to seek further appellate review, which may delay issuance of the mandate. If the State does choose to seek further appellate review, that continuing jurisdictional dispute only strengthens the case for a stay while the State seeks to undo the First Circuit's holding

that the case must proceed in a federal court. The State should not be heard to claim prejudice from delay in access to a federal forum while simultaneously arguing this case should not proceed in federal court at all.

*   *   *

In sum, the stay factors weigh heavily in favor of granting 3M's motion. In light of the First Circuit's directive, further proceedings in this Court before the JPML decides whether to transfer this case to the MDL would be inconsistent with the purpose of the MDL statute, the JPML's decision creating the AFFF MDL, and basic principles of sound judicial administration. Further, a stay will not prejudice the State, and it will conserve judicial resources, prevent duplicative litigation, and ensure uniform adjudication across common issues.

## CONCLUSION

3M respectfully requests that the Court stay proceedings pending the JPML's decision whether to transfer this case, and that the Court vacate the December 5, 2025 outstanding discovery deadline.

Dated: November 26, 2025

Respectfully submitted,

/s/ *Daniel L. Ring*
Daniel L. Ring
Jenner & Block LLP
353 N. Clark St.
Chicago, Illinois 60654
(312) 222-9350
dring@jenner.com
*Admitted Pro Hac Vice*

Jay S. Geller (Maine Bar No. 9022)
LAW OFFICE OF JAY S. GELLER
Lunt Professional Building
74 Lunt Road, Suite 206
Falmouth, ME 04105
(207) 899-1477
jgeller@jaysgellerlaw.com

*Counsel for Defendant 3M Company*

## CERTIFICATE OF SERVICE

      I hereby certify that on November 26, 2025, I caused the foregoing to be filed with the Clerk of the Court via electronic mail, and I also caused a true and correct copy of the foregoing to be served on the following parties by Mail and Email as indicated below.

<u>By Mail and Email:</u>
Aaron M. Frey
Scott Boak
Robert Martin
Mark Bower
Office of the Maine Attorney General
6 State House Station
Augusta, Maine 04333
(207) 626-8566
Email:
Aaron.Frey@maine.gov
Scott.Boak@maine.gov
Robert.Martin@maine.gov
Mark.Bower@maine.gov

Matthew F. Pawa
Benjamin A. Krass
Gillian C.A. Cowley
PAWA LAW GROUP P.C.
1280 Centre Street, Suite 230
Newton Centre, MA 02459
(617) 641-9550
Email:
mp@pawalaw.com
bkrass@pawalaw.com
gcowley@pawalaw.com

Kyle J. McGee
Viola Vetter
Jason H. Wilson
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE 19801
(302) 622-7000
Email:
kmcgee@gelaw.com
vvetter@gelaw.com
jwilson@gelaw.com

Steven J. Daroci
SEEGER WEISS LLP
55 Challenger Road 6th Floor
Ridgefield Park, NJ 07660
(973) 639-8656
Email:
sdaroci@seegerweiss.com

*Attorneys for Plaintiff*

By mail:

Sigmund D. Schutz
Alexandra A. Harriman
PRETI, FLAHERTY
One City Center
P.O. Box 9546
Portland, ME 04112
(207) 791-3111
Email:
sschutz@preti.com
aharriman@preti.com

J. Wylie Donald
MCCARTER & ENGLISH LLP
1301 K Street N.W.
Suite 1000 West
Washington, DC 20005
(202) 753-3400
Email:
jdonald@McCarter.com

*Attorneys for Defendants EIDP, Inc., Chemours Company, Chemours Company FC LLC, Corteva Inc., and DuPont De Nemours Inc.*

Randy J. Creswell
CRESWELL LAW
PO BOX 7340
Portland, ME 04412
(207) 358-1010
Email:
rcreswell@creswelllaw.com

*Attorneys for Defendants EIDP, Inc., Corteva Inc., and DuPont De Nemours Inc.*

Adam S. Taylor
Andre G. Duchette
TAYLOR, MCCORMACK & FRAME, LLC
267 Commercial Street
Portland, ME 04101
(207) 828-2005
Email:
ataylor@tmfattorneys.com
aduchette@tmfattorneys.com

*Attorneys for Defendants Chemours Company and Chemours Company FC LLC*

Dated: November 26, 2025 /s/ *Daniel L. Ring*
Daniel L. Ring