IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| STATE OF MAINE,<br><br>              Plaintiff,<br><br>v.<br><br>3M COMPANY, ET AL.,<br><br>              Defendants. | Civil Action No. 2:25-cv-00453-JAW |

**PLAINTIFF STATE OF MAINE'S OPPOSITION
TO DEFENDANT 3M COMPANY'S MOTION TO STAY**

The Court should deny Defendant 3M Company's ("3M") Motion to Stay. The First Circuit's recent decision in this case was purely jurisdictional and, moreover, based on a single PFAS site—out of some 900—that is no longer at issue in this case. The State has now disclaimed liability for that site as well as six others that 3M alleges in its new notice of removal are plausibly cross-contaminated with some AFFF. And as the First Circuit recognized, the State's evidence effectively rebutted 3M's allegations of AFFF commingling at the sites in the original notice of removal. Thus, while *jurisdiction* is now in federal court, the sites on which 3M seeks to base MDL transfer are now out of the case for purposes of *liability*, which is what MDL transfer is all about, and thus 3M has not shown that MDL transfer is likely. This is true notwithstanding the recent conditional transfer order ("CTO") issued by the clerk of the Judicial Panel on Multi-District Litigation ("JPML") as such CTOs are routinely vacated upon the motion of a party opposing transfer, as occurred already in another non-AFFF case by a sister state.

In fact, the JPML has been clear that the AFFF MDL is only for AFFF cases; it has thus repeatedly rejected transfer of non-AFFF PFAS cases like this one that merely involve some "plausible" allegations of AFFF commingling. *Infra* pp. 7–8. And, contrary to 3M's

representations, the First Circuit's reference to 3M's intent to seek MDL transfer was not a thumb on the JPML scale; none of the JPML decisions on transfer were before the Court.

Most importantly, a stay would prejudice the State and reward Defendants' conduct in refusing to comply with this Court's discovery order. PFAS contamination is a crisis in Maine; this case by the State, acting through the Attorney General, is of the utmost importance to the State in its efforts to protect human health and the environment. However, the MDL has stayed (for years) all AFFF cases brought by states, including Maine's AFFF case, meaning that a transfer to that docket will grind this case to a halt. By contrast, since the case landed back in this Court in September, the Court's management of the case has caused bilateral discovery to move forward—at least until 3M and the other Defendants took it upon themselves to refuse to comply with the Court's order to produce documents in light of 3M's intention to seek MDL transfer. The Court should not reward such conduct. It should deny 3M's motion to stay.

## BACKGROUND

The State filed this case in March 2023 to address a public health crisis in Maine from contamination of the State's drinking water and other natural resources with toxic PFAS chemicals from Defendants' consumer and industrial products. ECF No. 1-1. The Complaint disclaimed recovery for PFAS contamination related to AFFF. *Id.* ¶ 15.

In 2023, 3M removed the State's non-AFFF case on the theory that contamination related to AFFF may "possibly" be commingled with non-AFFF contamination at certain locations and that the State's AFFF disclaimer was jurisdictionally invalid. ECF No. 5, Ex. 16 ¶¶ 26–30. 3M filed a Notice of Potential Tag-Along Action with the JPML in May 2023. JPML ECF No. 1923.[1] In June 2023, the Clerk of the Panel declined to transfer the case because it "was not

---

[1] "JPML ECF No." refers to filings and orders on the JPML docket for *In re: AFFF Prods. Liab. Litig.*, MDL 2873.

appropriate for inclusion in this MDL." JPML ECF No. 1926. 3M then unsuccessfully moved the JPML for a transfer notwithstanding the Clerk's decision. This Court denied 3M's motion to stay the case while 3M sought transfer to the AFFF MDL and granted the State's motion to remand the case to state court. *State of Maine v. 3M Co.*, 2023 WL 4758816, at *12 (D. Me. July 26, 2023). 3M then appealed that decision and, back in state court, again moved to stay the case. ECF No. 7, Ex. 67. In February 2024, the state court denied 3M's motion to stay given that the case already had a "lengthy procedural history." ECF No. 8, Ex. 82.

The state court ruled on motions to dismiss and upheld the State's claims of public nuisance, private nuisance, statutory nuisance, and negligence while dismissing other claims. ECF No. 11, Exs. 204, 205. The State then proposed a case management order with deadlines for fact discovery through trial, while Defendants asked for a one-sided discovery process in which the State, but not Defendants, would be required to produce documents and written discovery responses and no case schedule. *Compare* ECF No. 12, Ex. 226, *with* ECF No. 12, Ex. 227. The state court rejected that one-sided proposal (which delayed discovery since Defendants refused to move forward until obtaining a court ruling on their proposal) and, in June 2025, ordered the parties to "expeditiously exchange paper discovery" so that there would be a "better sense about what an appropriate scheduling order should look like." ECF No. 12, Ex. 241. In response to Defendants' written discovery, the State shortly thereafter produced a list of over 900 Claimed Sites at issue in August and, with the help of a consulting expert, in September, an attribution chart that identified Defendants' PFAS chemistries present at each Claimed Site by environmental media (e.g., groundwater, soil, etc.). In July, the State had produced two spreadsheets of all PFAS sampling data for public drinking water, groundwater and other resources at the Claimed Sites and, since then, has made 31 rolling productions of over 6.5

million pages of "site file" documents for all PFAS sites in Maine. 3M responded by removing the case a second time based on allegations of "plausible" AFFF commingling at seven out of the 900 Claimed Sites. ECF Nos. 1, 32.

On October 16, Magistrate Judge Nivison held a hearing to address case management issues and ordered that the "parties shall use their best efforts to complete the outstanding discovery by December 5, 2025" so that there could be a "meaningful discussion regarding a scheduling order" on December 17. ECF No. 41. The State has complied with the order (with only a small number of documents that it is reviewing for privilege outstanding) and had made utterly extraordinary efforts to produce a large number of documents and information (replete with an unprecedently early expert analysis to identify the Claimed Sites). However, Defendants merely agreed that the State may use in this case the same general liability documents and fact witness deposition transcripts and exhibits that they produced in the State of Vermont's similar non-AFFF case. The State has requested the *new* documents needed to supplement these materials, such as records of PFAS product sales into Maine and Defendants' communications regarding PFAS with their customers and others in Maine. 3M and DuPont have not objected to producing these new (i.e., non-Vermont) documents in this case but, with the exception of a single sales spreadsheet by DuPont, now simply refuse to produce them, contrary to Judge Nivison's order, on the basis that 3M has filed a stay motion. Exs. 1, 2.

On November 19, the First Circuit reversed the 2023 remand order. *State of Maine v. 3M Co.*, 159 F.4th 129 (1st Cir. 2025). Although the First Circuit agreed with this Court that the State had rebutted 3M's allegations of AFFF commingling at the sites at issue in the original notice of removal, it found that 3M's recently filed new notice of removal "plausibly alleges commingled contamination at one of the sites" in the new removal notice, i.e., the Juniper Ridge

4

Landfill, which is also listed in the Complaint. *See id.* at 135 n.14.² The First Circuit did not invalidate all disclaimers but expressly reaffirmed a prior ruling that "location-based" disclaimers are valid. *Id.* at 139. The State then amended its discovery responses to remove the seven new sites at which 3M alleged AFFF commingling with non-AFFF (including the Juniper Ridge Landfill), filed a location-based disclaimer with respect to these seven sites, and moved for leave to amend the Complaint to add a similar disclaimer. ECF Nos. 52, 53.

On December 11, 2025, 3M filed a Notice of Potential Tag-along Action with the JPML based on alleged AFFF commingling at the sites in the original notice of removal (i.e., the ones where the First Circuit found that alleged AFFF commingling had been rebutted by the State's evidence), as well as the sites identified in its Supplemental Notice of Removal. However, 3M did not inform the JPML that the State had removed those sites from the case. The clerk of the JMPL issued a conditional transfer order on December 17.

## STANDARD OF REVIEW

"Whether to stay a proceeding in anticipation of a transfer ruling from the JPML rests within a court's discretion." *State of Maine*, 2023 WL 4758816, at *11. The pendency of a request before the JPML "does not limit" this Court's ability to rule on matters properly before it. *Id.* at *6. "Generally, in evaluating whether to issue a stay, a court will consider three factors: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party without a stay; and (3) judicial economy." *United States f/b/o Nucor Insulated Panel Grp. LLC v. Controlled Env't Sys. LLC*, 2025 WL 2378779, at *1 (D. Me. Aug. 15, 2025).³ "The party

---

² 3M provided the First Circuit with its Supplemental Notice of Removal claiming that seven new sites allegedly are contaminated with AFFF-related PFAS. The State requested the First Circuit not consider these new sites before the State had an opportunity to develop a factual record in this Court, but the First Circuit rejected that request. *Id.* at 135 n.17.

³ Unless otherwise indicated, case quotations omit all internal citations, quotation marks, and alterations.

5

seeking the stay bears the burden of demonstrating that a stay is appropriate." *Maine v. Wheeler*, 2020 WL 256519, at *2 (D. Me. Jan. 16, 2020). A stay proponent also "must make out a clear case of hardship or inequity" if there is "even a fair possibility" that the stay will harm another. *Am. Sales Co., LLC v. Warner Chilcott Pub. Co.*, 2013 WL 4016925, at *1–2 (D.R.I. Aug. 6, 2013).

## ARGUMENT

I.  **A stay would prejudice the State and reward Defendants' refusal to comply with the Court's discovery order.**

A stay would prejudice the State. PFAS contamination is a crisis in Maine, perhaps more than in any other State. The State has responded to this crisis by enacting PFAS consumer product bans, establishing maximum contaminant levels for PFAS in public drinking water, providing treatment to remove PFAS from private drinking water wells at residential homes, investigating PFAS contamination in agricultural products and at wastewater treatment facilities, farm fields where biosolids were applied, landfills, and industrial sites, evaluating technologies to clean up PFAS at those locations, and providing financial and technical assistance to PFAS-impacted farms, among many other actions. https://www.maine.gov/dep/spills/topics/pfas/. This lawsuit is a critical part of Maine's response to the PFAS crisis, and a stay would thus prejudice the State's response to the crisis, especially given the prior procedural delays in the case.

Moreover, consistent with the importance of this case, the State has produced extensive discovery in a short period of time. The State has responded to Defendants' discovery requests with an expedited and far-reaching document production and an expert analysis setting forth important information for every site at issue in the case, including the affected resources and the specific PFAS compounds that tie each site to specific Defendants. The State undertook this full-court-press effort to comply with Judge Nivison's order on the express understanding that

6

the ordered discovery would be bilateral.  But a stay would grind this case to a halt and delay progress on the State's effort to protect the environment and public health.

In sharp contrast to the State's efforts, Defendants have arrogated to themselves the decision not to comply with the Court's discovery order and thus have ignored Judge Nivison's December 5 deadline to complete initial document production.  This is wholly improper.[4]  Granting a stay would result in severe prejudice to the State and would reward Defendants' open refusal to comply with this Court's discovery order.

## II. Denial of a stay would cause no hardship or inequity to 3M, which cannot show a likelihood of MDL transfer.

The denial of a stay would work no hardship on 3M, which will only have to engage in the document discovery already ordered by the Court and other discovery that must occur anyway to resolve this case.

3M's primary argument for a stay is that the JPML is likely to transfer this case to the MDL, Mot. at 2, 9–10, but the JPML has repeatedly held that the MDL is only for AFFF cases.  Order Denying Transfer, *In re: AFFF Prods. Liab. Litig.*, ECF No. 4062 at 3 (J.P.M.L. Dec. 11, 2025) ("this remains an *AFFF* MDL, not a PFAS MDL").  Thus, it has "stated on numerous occasions" that "evidence of the mere potential for commingling [of PFAS contamination from AFFF and non-AFFF sites] is insufficient to warrant transfer of an otherwise non-AFFF complaint," and that evidence that it is "plausible" that AFFF "may have contributed" to PFAS injuries also is insufficient.  Order Denying Transfer, *In re: AFFF Prods. Liab. Litig.*, ECF No.

---

[4] *See Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 371 F. Supp. 2d 358, 360 (W.D.N.Y. 2005) ("Merely filing a motion for [a stay] does not excuse the moving party from fully complying with the order appealed from until a court grants a stay and relieves the party of its obligation to comply with a challenged order."); *Creative Sols. Grp., Inc. v. Pentzer Corp.*, 199 F.R.D. 443, 444 (D. Mass. 2001) ("The plain fact is that merely moving for a stay does not operate to effectuate a stay unless and until the stay is granted" and a party is "under an obligation to obey [an] Order unless it *sought and obtained* a stay of that specific Order.").

3260 at 2 (J.P.M.L. Feb. 12, 2025). One of those numerous occasions involved New Hampshire's non-AFFF case, where, as here, the clerk of the JMPL had issued a conditional transfer order but the JPML granted the state's motion to vacate.[5]

In fact, the JPML recently held that it "remain[s] concerned about the manageability of this [AFFF MDL] if it expands to include PFAS claims generally" because it "would include far more site-specific issues, different modes of PFAS contamination, and different PFAS chemicals and could quickly become unwieldy." Order Denying Transfer, *In re: AFFF Prods. Liab. Litig.*, ECF No. 4062, at 3 (J.P.M.L. Dec. 11, 2025). It has thus "insisted on a few hard lines regarding the scope of the MDL, chief of which is that a party seeking transfer of an action that does not on its face raise AFFF claims bears a significant burden to persuade [it] that transfer is appropriate," because "were [the JPML] to ignore the allegations in plaintiffs' complaints when considering transfer, this MDL would quickly transform into a general PFAS Litigation." *Id.* at 3 & n.3. Transferring such claims is a "step too far towards an MDL unmoored from AFFF claims," and would contradict "prior decisions restricting this MDL to cases that include allegations of injury caused by the manufacture, use, or disposal of AFFF products." *Id.* at 3.

The State's case here does not on its face raise AFFF claims: the State also has removed from this case the seven new sites raised by 3M, including the site that the First Circuit based its decision on, by filing a new location-specific disclaimer as to the seven sites as well as a motion to amend its complaint to add the same disclaimer. ECF Nos. 52, 53. The First Circuit itself recognized the validity of such disclaimers that "clearly carve out certain factual bases, whether

---

[5] *See* Order Vacating Conditional Transfer Order, *In re: AFFF Prods. Liab. Litig.*, ECF No. 1511 at 2 (J.P.M.L. Aug. 3, 2023) (3M's evidence in *State of New Hampshire* action "shows only the potential for commingling" and requiring "a more obvious overlap between the State's AFFF and non-AFFF actions … to warrant transfer of the State's non-AFFF action to the MDL"); *see also* Order Denying Transfer, *In re: AFFF Prods. Liab. Litig.*, ECF No. 3535 at 2 (J.P.M.L. June 2, 2025) ("'potential for commingling' of PFAS from AFFF and non-AFFF sources is not sufficient to warrant transfer").

by time span *or location*." *State of Maine*, 159 F.4th at 139 (emphasis added, brackets omitted). In addition, 3M has alleged only "plausible" AFFF commingling based upon a single site out of over 900 sites, and the First Circuit expressly based its jurisdictional decision on plausibility— the very standard that the JPML has declared insufficient for transfer. *Supra* pp. 7–8 & n.5. 3M repeatedly contends that the First Circuit decision means that transfer is likely, Mot. at 1, 2, 5, 7, but the First Circuit merely stated that "*if*" the JPML "chooses to transfer this case, then further proceedings would occur in that court," *id.* at 131 (emphasis added), an obviously true and anodyne statement. Moreover, as this Court has recognized in denying a prior stay motion in this case, jurisdiction (which was at issue in the appeal) and liability "are not the same." *State of Maine*, 2023 WL 4758816, at *12.[6]

3M relies upon JPML decisions transferring cases by the states of Illinois and Michigan, but those decisions must be read in light of the more recent rulings from the JPML and had unique facts not present here. The JPML transferred the Illinois case although it was a "close[] question" because "multiple [public water system] complaints in the MDL involve the same water sources as the State of Illinois complaint," JPML ECF No. 1927 at 2–3, but the JPML recently declined to transfer a case that involved the same water supply at issue in two MDL cases even though "there is potential overlap with claims being litigated in the MDL." JPML ECF No. 4062 at 2. The JPML also found it significant that Illinois' complaint cited "many" sites that also were the subject of actions in the MDL, JPML ECF No. 1927 at 2.[7] Unlike here,

---

[6] 3M repeatedly says that the First Circuit held that issues posed by AFFF commingling "should be decided by a single federal court [the MDL], rather than two courts answer[ing] the same questions," Mot. at 5, 6, 10, but that is misleading. The First Circuit was expressly referring to state and federal courts deciding the source of PFAS contamination, which it deemed a federal issue, not two federal courts. *See State of Maine*, 159 F.4th at 140 (need for federal forum "would be defeated were there state and federal court actions deciding the same PFAS contamination source issues alleged by Maine").

[7] 3M also relies on the MDL court's CMO 36, Mot. at 8 n.3, but the JPML recently rejected that CMO as a basis for transfer. JPML ECF No. 4062 at 3 n.3.

where commingling is merely a plausible defense allegation, Michigan "identified in written discovery responses multiple locations at which PFAS contamination from both AFFF and non-AFFF sources is alleged." Transfer Order, *In re: AFFF Prods. Liab. Litig.*, ECF No. 1020 at 4 (J.P.M.L. June 7, 2021).

Nor does the JPML's recent decision transferring cases by the states of New Mexico and Oklahoma mean that transfer is likely here. Those cases are easily distinguished as involving the same PFAS sites that were already at issue in cases pending in the MDL. *See* Transfer Order, *In re: AFFF Prods. Liab. Litig.*, ECF No. 4061 at 2–3 (J.P.M.L. Dec. 11, 2025).

In short, 3M has not demonstrated that this case is "a good candidate for transfer," which was the basis for this Court's decision to grant a stay in *Good v. Altria Group, Inc.*, 624 F. Supp. 2d 132, 136 (D. Me. 2009). 3M's claim of hardship thus fails.

### III.   Judicial economy does not favor a stay.

Judicial economy does not favor a stay. 3M's stay motion ignores the fact that other state non-AFFF cases are proceeding in their home jurisdictions, including cases by Illinois, New Hampshire, and Vermont.[8] The JPML rejected 3M's effort to transfer the New Hampshire case to the MDL, *supra* p. 8 n.5, while the Vermont case has proceeded through expert discovery in Vermont state and federal courts as 3M has repeatedly removed it. 3M says that allowing this case to move forward would result in duplicative discovery and inconsistent rulings, Mot. at 9, but that is utterly absurd: case-specific discovery in State AFFF cases has been stayed for years.

### CONCLUSION

The State respectfully requests that the Court deny 3M's Motion to Stay.

---

[8] Order in *Illinois ex rel. Raoul v. 3M Co.*, No. 4:25-cv-04189-SLD-RLH (C.D. Ill. Nov. 26, 2025) (Ex. 3), *appeal pending* No. 25-3133 (7th Cir.); *State of New Hampshire v. 3M Co.*, 132 F.4th 556, 563 (1st Cir. 2025) (remanding case to state court); *State of Vermont v. 3M Co.*, 152 F.4th 103, 105 (2d Cir. 2025) (ongoing litigation of 2019 non-AFFF PFAS lawsuit).

| | |
|---|---|
| Dated: December 17, 2025 | Respectfully submitted,<br><br>AARON M. FREY<br>ATTORNEY GENERAL<br><br>*/s/* Benjamin A. Krass<br>Benjamin A. Krass*<br>Matthew F. Pawa*<br>Gillian C.A. Cowley*<br>Pawa Law Group P.C.<br>1280 Centre Street, Suite 230<br>Newton Centre, MA 02459<br>(617) 641-9550<br>Email: mp@pawalaw.com<br>        bkrass@pawalaw.com<br>        gcowley@pawalaw.com<br><br>Scott Boak (Bar No. 009150)<br>Mark Bower (Bar No. 004132)<br>Assistant Attorneys General<br>6 State House Station<br>Augusta, Maine 04333<br>(207) 626-8566<br>Email: Scott.Boak@maine.gov<br>        Mark.Bower@maine.gov<br><br>Kyle J. McGee*<br>Viola Vetter*<br>Jason H. Wilson*<br>Grant & Eisenhofer P.A.<br>123 Justison Street<br>Wilmington, DE 19801<br>(302) 622-7000<br>Email: kmcgee@gelaw.com<br>        vvetter@gelaw.com<br>        jwilson@gelaw.com<br><br>*Admitted *pro hac vice* |

11