IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

|  |  |
|---|---|
| STATE OF MAINE,<br><br>       Plaintiff,<br><br> v.<br><br>3M COMPANY, ET AL.,<br><br>       Defendants. | Case No. 2:25-cv-00453 |

### DEFENDANT 3M COMPANY'S REPLY IN SUPPORT OF MOTION TO STAY

The case for a stay is even stronger now than when 3M filed its motion on November 26, 2025. Dkt. 50. Last week, recognizing that transfer would be consistent with past precedents of the Judicial Panel on Multidistrict Litigation ("JPML"), the Clerk of the Panel conditionally transferred this case to the *In Re: Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation (MDL No. 2873). The conditional transfer order ("CTO") concluded that "[i]t appears" this case "involve[s] questions of fact that are common to the actions previously transferred to the District of South Carolina." Dkt. 55-1. The State must now move to vacate the CTO. Under these circumstances, courts routinely hold that judicial economy heavily favors a stay. Continuing with discovery and other motion practice on a separate track before the JPML has an opportunity to issue a final decision on transfer would be inefficient and conflict with the First Circuit's clear directive that "two courts" should not "answer the same questions." *Maine v. 3M Co., Inc.*, 159 F.4th 129, 131 (1st Cir. 2025). That principle applies whether the State attempts to split its claims between a state court and federal court or between two federal courts.

Contrary to the State's characterization of the First Circuit's opinion as "purely jurisdictional," Dkt. 56 at 1, the First Circuit reversed the remand of this case based on its

1

conclusion that the State's AFFF case and this case present overlapping questions regarding "whether PFAS contamination has commingled with AFFF contamination and so was caused largely or in part by AFFF." *Maine*, 159 F.4th at 131. The State is certainly correct that the First Circuit held that 3M is entitled to a federal forum; but the First Circuit's reasoning *also* means that it has become untenable for Maine to pursue this action separately from its AFFF case, making transfer likely and a temporary stay of these proceedings appropriate.

The State is incorrect that a stay would unduly prejudice it. Due to the State's jurisdictional gamesmanship, the parties have been litigating over the appropriate forum for this case for almost three years. A stay pending the transfer decision will be short—no more than about three months.[1] Conversely, allowing this litigation to proceed would compound the prejudice to 3M from the State's failed efforts to artificially split its claims in two and would risk precisely the inefficiencies, duplicative discovery, and inconsistent rulings that the MDL is meant to avoid.

## ARGUMENT

This Court should exercise its broad discretion to briefly stay these proceedings pending the JPML's final decision regarding transfer. The State has not shown that the relevant factors—the balance of equities and judicial economy—weigh against a short stay.

### A.    A Stay Will Promote Judicial Economy

A brief stay serves judicial economy, and Maine has not shown otherwise. When the JPML conditionally transfers a case, courts routinely stay proceedings to allow briefing before the JPML, recognizing the efficiencies promoted by the stay. *E.g., Tri-State Tint & Vinyl, LLC v. Erie Ins. Prop. & Cas. Co.,* No. 5:21-CV-76, 2021 WL 12368835, at *1 (N.D.W. Va. May 19, 2021)

---

[1] Since 3M filed its Motion, the Panel has set its hearing session dates for the first half of 2026. *See* https://www.jpml.uscourts.gov/hearing-information. 3M expects that the State's motion to vacate the CTO will be considered at the Panel's March 26, 2026 session, with the JPML issuing a decision within one or two weeks thereafter.

2

("Given the JPML's [Conditional Transfer] Order, … the interests of judicial economy heavily favor a stay in this case."); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. McKesson Corp.,* No. 18-CV-286-JDP, 2018 WL 2390120, at *2 (W.D. Wis. May 25, 2018) (staying case pending JPML's decision on motion to vacate CTO). This Court should follow suit.

Maine characterizes the CTO as irrelevant, but it indicates that transfer proceedings are well underway, and the State now must move to vacate it. JPML Rule 7.1(b) authorizes the Clerk to issue a CTO on the basis of "the Panel's previous opinions and orders." Under this rule, the Clerk concluded that this case appears to "involve questions of fact that are common to the actions previously transferred to" the MDL. Dkt. 55-1. The Clerk was right: As the First Circuit held, the State's case in the MDL and this case present overlapping questions regarding 3M's federal contractor defense and "whether PFAS contamination has commingled with AFFF contamination and so was caused largely or in part by AFFF." *Maine*, 159 F.4th at 131. In similar cases, the JPML has transferred purported "non-AFFF" actions because a state's effort to pursue two separate cases involving the same questions was "untenable" or because the courts in both cases would need to assess alleged contamination of the same natural resources. *See In re: AFFF Prods. Liab. Litig.*, Transfer Order at 3, ECF No. 4061 (J.P.M.L. Dec. 11, 2025) (Oklahoma); Transfer Order at 3, ECF No. 1020 (J.P.M.L. June 7, 2021) (Michigan); Transfer Order at 3, ECF No. 1927 (J.P.M.L. June 5, 2023) (Illinois).[2] Here, too, the MDL is best suited to address the overlapping questions identified by the First Circuit. *See In re AFFF Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018).

---

[2] While Maine is correct that the Panel declined to transfer New Hampshire's purported "non-AFFF" action to the MDL, *see* Dkt. 56 at 8, 10, that order depended on the Panel's finding, based on the limited record in that case at the time, that New Hampshire's AFFF and non-AFFF actions did not sufficiently "overlap." Here, the First Circuit's recognition of key overlapping issues, *see Maine*, 159 F.4th at 138–39, and its holding that "two courts" should not "answer the same questions," *id.* at 131, makes Maine's attempts to maintain separate AFFF and non-AFFF actions untenable.

### B. Denial Of A Stay Would Prejudice 3M

Proceeding with dual-track litigation, in a case that is likely to be transferred, would prejudice 3M. The State does not meaningfully contest that, absent a stay, 3M faces a risk of duplicative or inconsistent discovery obligations and inconsistent rulings on the same issues across two cases that should be addressed by a single court. Indeed, the State has recently suggested that there are disputes (not yet ripe) that may emerge if this case were to proceed—that alone demonstrates the potential for inconsistent rulings and discovery obligations. In contrast, substantial coordination of discovery has occurred in the MDL across a wide variety of issues and claims, including Plaintiff and Defense Fact Sheets and broad master discovery (totaling millions of pages) from the same defendants named in this action. States (including Maine) have served extensive discovery coordinated across multiple claims. And multiple State-owned sites (from various states) have recently been the subject of discovery under MDL Case Management Order No. 32 relevant to identifying the source of the alleged PFAS at those sites. Allowing discovery to proceed here undermines this coordination and imposes undue burdens and costs on 3M and the other defendants: the MDL does not permit any party to pursue one-off discovery efforts, including the discovery served so far in this action, because the goal is to efficiently manage all claims and not to allow one party to disrupt the process for all.[3]

Against this backdrop of substantial work in the MDL that benefits the State, Maine argues

---

[3] Magistrate Judge Nivison recently entered an order that "on or before January 30, 2026, Defendants shall produce the documents contemplated by the Court's October 16, 2025, order." Dkt. 57 at 3. That Order, however, was premised at least in part on the incorrect assumption that "production of relevant documents would undoubtedly be required regardless of whether the case is transferred." *Id*. The MDL Court, however, does not permit individual case discovery to proceed and does not permit parties to engage in individual discovery efforts without leave of Court and without coordination through the designated leadership of the MDL. *See In re: AFFF Prods. Liab. Litig.*, ECF No. 48 (CMO 2), ¶ 13a (D.S.C. Mar. 20, 2019); *Id.*, ECF No. 72 (CMO 3), ¶ 3 (D.S.C. Apr. 26, 2019). Thus, it is not correct that the discovery sought by the State now would proceed in the same fashion regardless of transfer.

4

that this case is not likely to be transferred on the infirm basis that the JPML has recently denied transfer in a very different type of purported "non-AFFF" case: firefighter turnout gear. Dkt. 56 at 7-10 (citing Order Denying Transfer, *In re: AFFF Prods. Liab. Litig.*, ECF No. 4062 (J.P.M.L. Dec. 11, 2025)). But this argument misreads the JPML's precedents. The MDL is not comprised solely of cases alleging AFFF contamination or exposure to the exclusion of all else. *Id*. It contains cases where a State has filed a single lawsuit to address alleged statewide PFAS contamination or exposure from both AFFF and non-AFFF sources.[4] It also contains "mixed" or "commingled" cases where any purported dividing line between alleged AFFF and non-AFFF PFAS contamination or exposure (if such a line can be discerned) requires fact and expert discovery.

And, most relevant here, it includes cases where a State has filed two separate lawsuits, one purporting to recover for alleged AFFF and the other for alleged non-AFFF contamination or exposure. The JPML has concluded that splitting those claims was untenable, transferring both to the MDL. Indeed, the same day the Panel denied transfer in the turnout gear cases, it transferred *yet another* putative "non-AFFF" complaint filed by a state attorney general. The JPML—relying on the Michigan and Illinois cases discussed above—concluded that Oklahoma's "non-AFFF" case overlapped with its AFFF suit pending in the MDL and that maintaining it outside of the MDL was untenable due to the risk of duplicative rulings, discovery, and proceedings. Transfer Order at 3, MDL No. 2873, ECF No. 4061 (J.P.M.L. Dec. 11, 2025).

The Clerk's issuance of the CTO, just days after the turnout gear and Oklahoma decisions, underscores this point. Despite the denial of transfer in the turnout gear cases,[5] the Clerk

---

[4] *See, e.g.*, Transfer Order at 1–4, ECF No. 1646 (J.P.M.L. Dec. 13, 2022) (overruling Wisconsin opposition to transfer of its lawsuit seeking recovery for both AFFF and non-AFFF PFAS).

[5] Because the State argues that the turnout gear cases and its putative amended complaint in this case do not on their faces raise AFFF claims, it suggests that the JPML will decide them identically. *See id*. at 8. But the JPML's denial of transfer in the turnout gear cases—which allege personal injury from PFAS exposure solely from firefighting equipment—is inapplicable here, where Maine alleges statewide

conditionally transferred this case based on the "reasons expressed in the Panel's previous opinions and orders," including the Oklahoma, Illinois, and Michigan decisions. JPML Rule 7.1(b).

It is no answer for the State to now assert that it has "disclaimed" AFFF contamination "at or from" seven specific sites (identified in 3M's second notice of removal and supplemental notice). Dkt. 56 at 8. This argument fails for all the same reasons that the First Circuit rejected the State's original disclaimer. Whether the State litigates these seven sites in this case or in its putative AFFF case already in the MDL, this case will still (like the other one) require resolving "whether and to what extent contamination from AFFF sources has comingled with non-AFFF"—at *any* site and in *any* natural resource in Maine statewide—"and so was caused largely or in part by AFFF." *Id.* at 138–39. The seven site-specific disclaimers therefore do not defeat transfer. This case will still "require a court to determine whether the source of *any* PFAS contamination at a given site can be attributed to AFFF." *Maine*, 159 F.4th at 139 (emphasis added). And determining the extent of alleged PFAS contamination "at or from" those purportedly disclaimed sites and their potential impact on other sites and natural resources throughout the state will still require answering questions about commingling common to both this case and the AFFF case. If the case is transferred (as it should be), the MDL Court will resolve those questions, as well as the State's motion for leave to amend its complaint, *see* Dkt. 53, and the effect, if any, of its supplemental disclaimer, *see* Dkt. 52.

### C. A Stay Will Not Unduly Prejudice The State

The State contends that a stay would "grind this case to a halt and delay progress on the

---

environmental contamination. The broad scope of the alleged environmental contamination, the mobility of PFAS throughout the environment, and the extensive time periods involved in both this case and Maine's AFFF case in the MDL present common questions as to "whether PFAS contamination has commingled with AFFF contamination and so was caused largely or in part by AFFF." *Maine*, 159 F.4th at 131. This is precisely why the First Circuit held that Maine cannot pursue a non-AFFF case in a separate court and why the JPML transferred other states' non-AFFF cases to the MDL.

State's effort to protect the environment and public health." Dkt. 56 at 6-7. The State fails to explain, however, how a three-month stay would unduly prejudice it, let alone impede its other efforts to address alleged PFAS contamination. This case remains in its early stages, with limited discovery only just beginning, and it will take years to litigate to finality (regardless of forum). *See Varline*, 2025 WL 1155927, at *1 (in granting stay pending transfer to JPML, relying on the case being "in the early stages" and "the preliminary pretrial conference ha[ving] not yet occurred"). This case is more than four years behind the MDL because the State filed suit in March 2023—years after the MDL was created in 2018—not because of anything 3M has done. And since Maine filed this case, it has fought tooth and nail to avoid federal jurisdiction and the MDL.

As set forth in 3M's motion, courts routinely find that short pauses in proceedings pending a JPML transfer decision do not unduly prejudice plaintiffs. *See Gallagher*, 2023 WL 402191, at *9 (stay during three to five month period until next JPML hearing would not prejudice plaintiff); *Royal Park*, 941 F.Supp.2d at 372 ("Courts have determined that such short delays caused by staying proceedings until the JPML decides whether to transfer a case usually do not prejudice the plaintiff."); *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, No. 05-cv-453, 2005 WL 3555926, at *1 (E.D.N.Y. Dec. 23, 2005) (similar). The same is true here. A CTO has issued, the issue of transfer is pending before the JPML, and the Panel's final decision is expected in about three months. Discovery remains in its preliminary stages, and this case will take years to resolve. A brief pause until the JPML decides the State's anticipated motion to vacate the CTO is fair and just.

## CONCLUSION

For the foregoing reasons and those stated in the Motion to Stay, 3M respectfully requests that the Court stay proceedings pending the JPML's decision whether to transfer this case.

Dated: December 24, 2025                    Respectfully submitted,

                                                 */s/ Daniel L. Ring*
                                                 Daniel L. Ring
                                                 JENNER & BLOCK LLP
                                                 353 N. Clark St.
                                                 Chicago, Illinois 60654
                                                 (312) 222-9350
                                                 dring@jenner.com
                                                 *Admitted Pro Hac Vice*

                                                 Jay S. Geller (Maine Bar No. 9022)
                                                 LAW OFFICE OF JAY S. GELLER
                                                 Lunt Professional Building
                                                 74 Lunt Road, Suite 206
                                                 Falmouth, ME 04105
                                                 (207) 899-1477
                                                 jgeller@jaysgellerlaw.com

                                                 *Counsel for Defendant 3M Company*

## CERTIFICATE OF SERVICE

I hereby certify that on December 24, 2025, I caused the foregoing to be filed with the Clerk of the Court via electronic mail, and I also caused a true and correct copy of the foregoing to be served on the following parties by Mail and Email as indicated below.

<u>By Mail and Email:</u>
Aaron M. Frey
Scott Boak
Robert Martin
Mark Bower
Office of the Maine Attorney General
6 State House Station
Augusta, Maine 04333
(207) 626-8566
Email:
Aaron.Frey@maine.gov
Scott.Boak@maine.gov
Robert.Martin@maine.gov
Mark.Bower@maine.gov

Matthew F. Pawa
Benjamin A. Krass
Gillian C.A. Cowley
PAWA LAW GROUP P.C.
1280 Centre Street, Suite 230
Newton Centre, MA 02459
(617) 641-9550
Email:
mp@pawalaw.com
bkrass@pawalaw.com
gcowley@pawalaw.com

Kyle J. McGee
Viola Vetter
Jason H. Wilson
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE 19801
(302) 622-7000
Email:
kmcgee@gelaw.com
vvetter@gelaw.com
jwilson@gelaw.com

Steven J. Daroci
SEEGER WEISS LLP
55 Challenger Road 6th Floor
Ridgefield Park, NJ 07660
(973) 639-8656
Email:
sdaroci@seegerweiss.com

*Attorneys for Plaintiff*

By mail:

Sigmund D. Schutz
Alexandra A. Harriman
PRETI, FLAHERTY
One City Center
P.O. Box 9546
Portland, ME 04112
(207) 791-3111
Email:
sschutz@preti.com
aharriman@preti.com

J. Wylie Donald
MCCARTER & ENGLISH LLP
1301 K Street N.W.
Suite 1000 West
Washington, DC 20005
(202) 753-3400
Email:
jdonald@McCarter.com

*Attorneys for Defendants EIDP, Inc., Chemours Company, Chemours Company FC LLC, Corteva Inc., and DuPont De Nemours Inc.*

Randy J. Creswell
CRESWELL LAW
PO BOX 7340
Portland, ME 04412
(207) 358-1010
Email:
rcreswell@creswelllaw.com

*Attorneys for Defendants EIDP, Inc., Corteva Inc., and DuPont De Nemours Inc.*

Adam S. Taylor
Andre G. Duchette
TAYLOR, MCCORMACK & FRAME, LLC
267 Commercial Street
Portland, ME 04101
(207) 828-2005
Email:
ataylor@tmfattorneys.com
aduchette@tmfattorneys.com

*Attorneys for Defendants Chemours Company and Chemours Company FC LLC*

Dated: December 24, 2025                    */s/ Daniel L. Ring*
                                                          Daniel L. Ring