IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| STATE OF MAINE,<br><br>    Plaintiff,<br><br>v.<br><br>3M COMPANY, ET AL.,<br><br>    Defendants. | Case No. 2:25-cv-00453-JAW |

**DEFENDANTS EIDP, INC., THE CHEMOURS COMPANY, THE CHEMOURS COMPANY FC, LLC, CORTEVA, INC., AND DUPONT DE NEMOURS, INC.'S OPPOSITION TO PLAINTIFF STATE OF MAINE'S MOTION TO AMEND COMPLAINT TO ADD DISCLAIMER**

Defendants EIDP, Inc., The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., and DuPont de Nemours, Inc. (the "EIDP/CC Defendants") oppose Plaintiff State of Maine's Motion to Amend Complaint to Add Disclaimer (Doc. 53) on the following grounds.

**ARGUMENT**

"'[A] district court may deny leave to amend when the request is characterized by undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part.'" *Gilbert v. Maine Dep't of Health & Hum. Servs.*, 778 F. Supp. 3d 239, 259 (D. Me.), *reconsideration dismissed,* 788 F. Supp. 3d 48 (D. Me. 2025) (quoting *Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Ints. in Int'l & Foreign Cts*., 87 F.4th 62, 80 (1st Cir. 2023) (alteration in original). Leave to amend should be denied here because the proposed amendments would be futile.[1]

---

[1] The State's Amended Complaint still includes fraudulent transfer counts that have already been dismissed (Counts VIII–X, XII–XIII). While EIDP/CC Defendants do not oppose the State's Motion on that basis, so the record is clear, the only remaining fraudulent transfer claim in this case is the State's actual fraudulent transfer claim related to the DowDuPont transaction against EIDP Inc., DuPont de

1

The reason the State offers for amending the complaint is to "make clear that this is not an AFFF case and ought not be transferred to the AFFF MDL." Doc. 53 at 5. The original complaint, however, said the same thing:

> The State is not seeking to recover through this Complaint any relief for contamination or injury related to Aqueous Film Forming Foam, a firefighting material that contains PFAS.

Doc. 15-2 ¶ 15. And the First Circuit held that kind of hollow language did not eliminate the factual possibility of AFFF commingling, let alone defeat federal jurisdiction. So there is no reason to amend a complaint that had already declared that "[t]he State is not seeking to recover through this Complaint any relief for contamination or injury related to [AFFF]" in order to insert yet another empty affirmation to that effect. Motions to amend that duplicate prior allegations (particularly futile ones) should be denied. *See, e.g., Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995) (denying motion for duplicative amendment as futile).

The other reason the State offers for the proposed amendments is "to remove the Juniper Ridge Landfill and six other sites on which 3M bases its allegations of AFFF commingling . . . ." Doc. 53 at 5. But removing references to seven sites from the complaint would not change the fact that the commingling of AFFF and non-AFFF contamination will be an issue at each of the hundreds of sites at issue in this case.[2] Although Maine's complaint alleges the propensity of

---

Nemours, and Corteva, Inc (Count XI). As to the other fraudulent transfer claims: (1) the state court dismissed all claims against Dow Inc. for lack of personal jurisdiction, *Maine v. 3M Company*, No. BCD-CIV-2023-65 (Me. Bus. & Consumer Ct. Oct. 30, 2024); (2) the state court dismissed as untimely the State's fraudulent transfer claims related to the Chemours spinoff (Counts VIII, IX, and X), *Maine v. 3M Company*, No. BCD-CIV-2023-65 (Me. Bus. & Consumer Ct. Nov. 7, 2024) (dismissing Counts XIII, IX, X); and (3) the State consented to dismissal of its constructive fraudulent transfer claims related to the DowDuPont transaction (Counts XII and XIII), State of Maine's Opposition to Dow Inc.'s Motion to Dismiss Under Rule 12(b)(6) at 20, *Maine v. 3M Company*, No. BCD-CIV-2023-65 (Me. Bus. & Consumer Ct. June 18, 2024).

[2] In response to an interrogatory propounded by Defendants, the State's most recent updated response contains a list of approximately 850 sites that it claims are at issue in this case, while reserving the right to amend the list to add (or remove) sites at any time. In addition, the Complaint makes clear that the State intends to pursue claims at any location where future testing reveals the presence of PFAS. Doc. 15-2 ¶¶

PFAS to migrate great distances and that it is found throughout Maine (Doc. 15-2 ¶¶ 38, 40, 47, 133, 141, 142, 146-47, 149-50, 154-57, 245, 252, 265, 289c, 302c, 315c), it meticulously avoids any allegations about the prevalence of AFFF in Maine. But state records and news accounts describe AFFF's presence and use in the state as pervasive and widely geographically dispersed, consistent with Maine's allegations about PFAS generally. A 2019 survey conducted in connection with the Maine Governor's PFAS Task Force revealed that more than two-thirds of responding Maine fire departments had stockpiles of AFFF in quantities up to 3,400 gallons. *See* Managing PFAS in Maine: Final Report from the Maine PFAS Task Force (Jan. 2020) at 44.[3] The same report indicates that there were 305 fire departments in Maine.[4] *Id*. at 40. In addition, several businesses reported storing AFFF in quantities up to 4,600 gallons, consistent with AFFF storage and use at certain large industrial sites and bulk petroleum storage facilities. *Id*. at 45. A 2024 survey conducted by a news organization showed similar results: "70% of Maine fire departments used AFFF prior to 2022, primarily for combustible fuel fires (including vehicles) and routine trainings." Marina Schauffler, "Highlights of a 2024 PFAS Survey of Maine Fire Departments," Maine Morning Star (Dec. 9, 2024) at 5.[5] "[I]t was widely used in municipal, airport and military firefighting." *Id*. AFFF was the fire suppressant of choice wherever firefighters responded to a gasoline, oil, or similar fires in Maine over the course of decades. And firefighters trained with it routinely. "Maine has roughly a dozen current and former regional

---

147 ("It is virtually certain that additional testing will reveal further PFAS contamination and injury of surface waters in locations throughout Maine."), 153 (same).
[3] Available at  https://www.maine.gov/pfastaskforce/materials/report/PFAS-Task-Force-Report-FINAL-Jan2020.pdf
[4] The Federal Emergency Management Agency reports that there were 338 fire departments in Maine as of January 2024. *See* https://www.usfa.fema.gov/downloads/pdf/registry-summary-2024.pdf The number of fire stations in Maine is substantially larger given that some fire departments have multiple stations.
[5] Available at: https://mainemorningstar.com/2024/12/09/highlights-of-2024-pfas-survey-of-maine-fire-departments/

25179140.7

training sites for firefighting, as well as former military training areas, dozens of airports, and potentially hundreds of sites where local fire departments conducted trainings or discharged AFFF." *See* Marina Schauffler, *"Where Historic Use of Firefighting Foam Threatens Drinking Water, Municipalities Bear the Burden of Responding,"* Maine Morning Star (Dec. 11, 2024).[6]

After its use or following its disposal, AFFF would inevitably wind up in landfills and wastewater treatment plants—and the resulting sludge, biosolids and leachate may in turn have been used, disposed or discharged at countless locations throughout Maine—as the State alleges concerning PFAS more generally (Doc. 15-2 ¶¶ 47, 54, 56, 134e.) The State does not and could not plausibly contend that the removal of seven sites comes anywhere close to solving the AFFF commingling problem the First Circuit identified.

As the First Circuit has observed, "[r]esolution of Maine's Complaint requires addressing whether and to what extent . . . contamination from AFFF sources has commingled with non-AFFF," which "will require a court to determine whether the source of *any PFAS contamination at a given site* can be attributed to AFFF." *Maine v. 3M Co., Inc.,* 159 F.4th 129, 138–39 (1st Cir. 2025) (emphasis added). Even if Juniper Ridge Landfill and six other sites are excluded, the scope of PFAS contamination from AFFF at or from those sites remains an issue in this case as it does for every other site and a fact-finder will still have to determine whether and to what extent contamination from AFFF sources has commingled with non-AFFF. The proposed amendments would therefore be futile.

The proposed amendments would have no impact on whether the case should be transferred to the AFFF MDL. And to the extent that the State seeks to argue that they do affect the transfer decision, they would reflect improper "gamesmanship to escape MDL jurisdiction."

---

[6] Available at: https://mainemorningstar.com/2024/12/11/little-pockets-of-this-all-over/

*In re Insulin Pricing Litig.*, No. 2:23-MD-3080 (BRM) (LDW), 2025 WL 3022535, at *2 (D.N.J. Oct. 29, 2025). What happened in *In re Insulin Pricing* parallels what happened here: Puerto Rico filed a complaint against pharmaceutical companies in the Court of First Instance in San Juan; the defendants removed the case to federal district court; and Puerto Rico successfully moved to remand. *Id*. at *1. When the defendants sought to transfer the case to a MDL following reversal of that order of remand on appeal, Puerto Rico moved for leave to amend its complaint to avoid transfer to the MDL. *Id*. Leave to amend was denied because the motion's timing (*inter alia*) "suggests that Plaintiff seeks to amend its pleadings to avoid transfer to the MDL," and "[t]he fact that the proposed second amended complaint tracks the language in the complaint filed in [Hawaii] after the JPML declined to transfer that case[] further suggests that Plaintiff is engaging in gamesmanship to escape MDL jurisdiction." *Id*. at *2 (quoting the District of Puerto Rico decision). So too here. With or without the proposed amendments, if the AFFF and non-AFFF cases are litigated separately the State would still be seeking "to have two courts answer the same questions" about commingling—a quest the First Circuit has declared "must fail." *Maine v. 3M Co.,* 159 F.4th at 131.

## CONCLUSION

WHEREFORE, the EIDP/CC Defendants respectfully request that Plaintiff State of Maine's Motion to Amend Complaint to Add Disclaimer be denied.

DATED at Portland, Maine this 13th day of January, 2026.

Respectfully submitted,

**PRETI FLAHERTY, LLP**

*/s/ Sigmund D. Schutz*
Sigmund D. Schutz
P.O. Box 9546
Portland, ME 04112-9546
(207) 791-3000
sschutz@preti.com


**McCARTER & ENGLISH, LLP**

*/s/ J. Wylie Donald*
J. Wylie Donald*
1301 K Street, Suite 1000W
Washington, DC 20005
(202) 753-3357
jdonald@mccarter.com

*Attorneys for Defendants EIDP, Inc.; The Chemours Company; The Chemours Company FC, LLC; Corteva, Inc; and DuPont de Nemours, Inc. as to all claims except Counts 8 through 13*

25179140.7

**CRESWELL LAW**

Randy J. Creswell (Bar No. 8962)
P.O. Box 7340
Portland, ME 04112
(207) 358-1010
rcreswell@creswelllaw.com

**BARTLIT BECK LLP**

Katherine L. I. Hacker (CO Bar No. 46656)*
Dan Brody (CO Bar No. 39437)*
1801 Wewatta Street, Suite 1200
Denver, CO 80202
(303) 592-3140
kat.hacker@bartlitbeck.com

Katharine A. Roin (IL Bar No. 6302872)*
Amy R. McCalib (IL Bar No. 6392733)*
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
(312) 494-4400
kate.roin@bartlitbeck.com
amy.mccalib@bartlitbeck.com

*Attorneys for EIDP, Inc.; Corteva, Inc.; and DuPont de Nemours, Inc. as to Counts 8 through 13 only*

*pro hac vice