# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| STATE OF MAINE,<br><br>    Plaintiff,<br><br>  v.<br><br>3M COMPANY, ET AL.,<br><br>    Defendants. | Case No. 2:25-cv-00453-JAW<br><br>ORAL ARGUMENT REQUESTED |

### DEFENDANT 3M COMPANY'S
### OPPOSITION TO MOTION TO AMEND COMPLAINT TO ADD DISCLAIMER

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

ARGUMENT .................................................................................................................................. 7

    I.      The State's Delay And Lack Of Good Faith Compels Denying Leave To Amend ........................................................................................................... 8

    II.     The State's Attempt To Manipulate The Forum By Amendment Would Be Futile ........................................................................................................... 10

    III.    If The State's Amendment Were Not Futile, It Would Cause 3m Unfair Prejudice ......................................................................................................... 14

CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Bailey v. Bayer CropScience L.P.*,
 563 F.3d 302 (8th Cir. 2009) ...........................................................................................10

*Bombliss v. Sprung*,
 2017 WL 2766438 (C.D. Ill. June 26, 2017) ...................................................................10

*Cueva v. Allstate Fire & Cas. Ins. Co.*,
 2019 WL 3818035 (W.D. Tex. June 11, 2019) ...............................................................10

*DeLuca v. SmithKline Beecham Corp.*,
 2007 WL 541656 (S.D.N.Y. Feb. 20, 2007) ......................................................................9

*Edwards v. CVS Health Corp.*,
 714 F. Supp. 3d 239 (S.D.N.Y. 2024) .............................................................................10

*In re Fustolo*,
 896 F.3d 76 (1st Cir. 2018) ..........................................................................................7, 14

*Gov't of Puerto Rico v. Express Scripts, Inc.*,
 119 F.4th 174 (1st Cir. 2024) .......................................................................................5, 13

*Hatch v. Dept. for Children, Youth & Their Families*,
 274 F.3d 12 (1st Cir. 2001) ..................................................................................8, 10, 13

*In re Insulin Pricing Litig.*,
 2025 WL 3022535 (D.N.J. Oct. 29, 2025) .........................................................................8

*Maine v. 3M Co., Inc.*,
 159 F.4th 129 (1st Cir. 2025) ................................................................................. *passim*

*Maine State Bldg. & Constr. Trades Council, AFL CIO v. U.S. Dep't of Lab.*,
 359 F.3d 14 (1st Cir. 2004) ..............................................................................................10

*Maldonado v. Dominguez*,
 137 F.3d 1 (1st Cir. 1998) ................................................................................................10

*Nikitine v. Wilmington Tr. Co.*,
 715 F.3d 388 (1st Cir. 2013) ....................................................................................7, 8, 9

*Palmer v. Champion Mortg.*,
 465 F.3d 24 (1st Cir. 2006) ................................................................................................7

*Royal Canin U.S.A. Inc. v. Wullschleger*,
 604 U.S. 22 (2025) ........................................................................................................7, 10

*Wullschleger v. Royal Canin U.S.A., Inc.*,
 75 F.4th 918 (8th Cir. 2023) ....................................................................................7, 9, 10

**Statutes**

28 U.S.C. § 1442 ................................................................................................................2

**Rules**

Fed. R. Civ. P. 15 ....................................................................................................7, 8, 10

**Treatises**

6 Wright & Miller, *Federal Practice & Procedure* § 1487 (3d ed. 2025) ........................9

iv

# INTRODUCTION

This Court should deny the State's motion for leave to amend its complaint. Maine's belated request to amend—filed nearly three years into the litigation, but just three weeks after the First Circuit's decision upholding 3M's removal to federal court—is a transparent attempt to manipulate the forum. The State principally seeks to amend its complaint to disclaim seven locations where 3M has alleged plausible commingling with PFAS from aqueous film-forming foam (AFFF) manufactured pursuant to precise military specifications (MilSpec).

The State baldly admits that it seeks to amend its complaint to "make clear" this is not an AFFF case (Dkt. 53 at 3) in order to resist transfer to the AFFF multi-district litigation (MDL). And while it does not say the quiet part out loud, it is plain that the State also hopes amendment will give it another bite at the apple at remand—a maneuver the State's counsel is now attempting on behalf of the state of Vermont. The State's aims are improper, and its proposed amendments are ineffectual: They do not eliminate the issues that, under the First Circuit's decision, must be litigated in federal court, and should be litigated in the MDL if the Judicial Panel on Multidistrict Litigation (JPML) grants transfer. This Court should deny the motion for three reasons:

*First*, the State's motion for leave to amend is plainly dilatory. The State waited 32 months after filing suit, and after extensive litigation over removal, to propose revising its allegations. But it offers no good-faith justification for that delay. To the contrary, the State admits that its aim is to blunt the force of the First Circuit's decision by attempting to tweak the complaint's allegations to keep the case in its preferred forum. That objective cannot plausibly excuse such extreme delay.

*Second*, the State's proposed amendments would be futile in achieving remand of a case the First Circuit just held belongs in federal court. Nothing in the amendments would alter the fundamental character of the State's statewide case and erase the possibility of commingled

MilSpec AFFF and non-AFFF PFAS. Such commingling, the First Circuit confirmed, entitles 3M to a federal forum to raise a federal defense for *any* PFAS contamination at or from a given site in Maine. The State's threadbare disavowal of recovery for alleged PFAS "at or from" seven locations where 3M plausibly alleged that PFAS from AFFF commingled with non-AFFF PFAS is thus insufficient to defeat federal jurisdiction and falls short of an effective disclaimer anyway.

For similar reasons, the proposed amendments would not preclude transfer to the AFFF MDL. Again, the amendments would not eliminate 3M's plausible allegations of commingled AFFF and non-AFFF PFAS. That alone warrants coordination with other AFFF cases, an issue that the JPML will decide by early April. The State cannot short-circuit that decision based on mere conjecture that its proposed revisions will yield its preferred forum.

*Finally*, even if the State's proposed amendments *would* accomplish its apparent goals of forcing a remand or foreclosing transfer, that would only confirm that 3M would be prejudiced— itself a reason to deny leave to amend. Simply put, if the State's thirteenth-hour amendment were not futile, it would be patently unfair. Its motion for leave to amend should be denied.

## BACKGROUND

1.     On March 29, 2023, the State of Maine brought two nearly identical actions in state court. *See* Dkt. 1 (Second Notice of Removal) ¶¶ 7–9. One action sought to recover for alleged harm to natural resources throughout Maine from PFAS derived from AFFF, a firefighting foam 3M manufactured for the federal government. 3M removed that case under the federal-officer-removal statute, 28 U.S.C. § 1442, without objection from the State, and it is now proceeding in the AFFF MDL. *Maine v. 3M Co., Inc.*, 159 F.4th 129, 131 & n.2 (1st Cir. 2025).

This second case, which 3M also removed under the federal-officer-removal statute, likewise seeks relief for alleged "widespread contamination of State natural resources and State property" by PFAS. Dkt. 1-1 ¶ 1. But the State "sought to avoid removal" of this case (unlike the first)

2

"by including [a] disclaimer" that it "'is not seeking to recover through this Complaint any relief for contamination or injury related to [AFFF].'" *Maine*, 159 F.4th at 131 (quoting Compl. ¶ 15).

2. The parties litigated the removal issues in this case for more than two years. 3M first removed this case on May 17, 2023, alleging that PFAS from MilSpec AFFF and PFAS from non-AFFF sources "are plausibly commingled across Maine, so that PFAS deriving from MilSpec AFFF use at military facilities inseparably contributed to the alleged 'non-AFFF' PFAS contamination." First Notice of Removal (First NOR), No. 2:23-cv-00210-JAW, ECF No. 1 ¶ 26. The State moved to remand, relying on its disclaimer of "any AFFF-related contamination." Motion To Remand, No. 2:23-cv-00210-JAW, ECF No. 10 at 2 (emphasis omitted). The Court granted the State's motion on July 26, 2023, reasoning that "the State has taken upon itself the burden as part of its case to demonstrate that the source of contamination in its Non-AFFF lawsuit is not a AFFF source," and "[i]f the factfinder concludes that the State has failed to meet its burden concerning the source, 3M will prevail." Order on Mots. To Stay and Remand, No. 2:23-cv-00210-JAW, ECF No. 47 at 21. This Court concluded that the disclaimer "effectively means that the federal officer defense will not be applicable in the State's Non-AFFF lawsuit." *Id.* at 21–22. 3M appealed.

While that appeal was pending, the parties conducted limited initial discovery in state court. *See* Dkts. 1-3 through 1-6. As relevant here, the State produced a "Claimed Site List," which purported to identify 908 sites "where the State is aware of PFAS contamination and for which it seeks recovery in this case." Dkt. 1-3 at 7. One of the sites the State identified in its responses was the Brunswick/Topsham Water District; which had previously issued a report indicating that the alleged PFAS contamination originated from a neighboring military installation. Dkt. 1-4. 3M filed a second notice of removal on September 8, 2025, plausibly alleging it had a federal defense

3

for the MilSpec AFFF contamination at the Water District.  Dkt. 1.

3M supplemented its second notice of removal on September 24, 2025, identifying six additional sites where further investigation had revealed the alleged PFAS was plausibly attributable, at least in part, to MilSpec AFFF:  the Androscoggin River, the Aroostook River, the Hawk Ridge Compost Facility, the Juniper Ridge Landfill, the Little Madawaska River, and the Penobscot River.  Dkt. 32 ¶ 15.  3M informed the First Circuit that it had filed a second notice of removal, as supplemented, in which 3M alleged that the State's discovery responses had revealed that it seeks damages from at least seven sites where alleged PFAS contamination from MilSpec AFFF and non-AFFF sources have commingled.  At no point prior to the First Circuit's ruling did the State seek to amend its complaint based on these developments.[1]

3. On November 19, 2025, the First Circuit reversed the order remanding the case to state court, rejecting "Maine's efforts to have two courts answer the same questions." *Maine*, 159 F.4th at 131.  The First Circuit held that 3M "satisfied the statutory requirements for federal officer removal[,]" "credit[ing] 3M's theory that PFAS contamination from sources for which 3M admittedly has a federal contractor defense has comingled with and so has become in[di]visible with the PFAS contamination in natural resources and property which are broadly alleged in Maine's statewide non-AFFF Complaint." *Id.* at 133, 138.  While the court described the second notice of removal, as supplemented, in the procedural history of its opinion, its conclusion that federal jurisdiction was proper was not cabined to those sites. *Maine*, 139 F.4th at 135–36, 138–140.

The court of appeals rejected the State's disclaimer as "artful pleading," because "for example, it fails to 'clearly carve[] out certain factual bases, whether by time span or location, such that any alleged injury could not have happened under the direction of a federal officer.'" *Id*. at

---

[1] 3M continues to investigate potential AFFF comingling at the other sites the State identified.

4

137, 139 (quoting *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187 (1st Cir. 2024)) (emphasis omitted). The First Circuit thus "order[ed] this removed non-AFFF case be promptly returned" to the District Court and explained should the JPML "choose[] to transfer this case [to the MDL], then further proceedings will occur in that federal court." *Id.* at 131.

      4.      The day after that decision, the State served a second set of "supplemental" responses to 3M's interrogatories and produced a new "Claimed Site List," now identifying 884 allegedly contaminated sites for which it sought relief. Ex. 1 (Nov. 20, 2025 Second Suppl. R&Os and spreadsheet). The second supplemental discovery responses eliminated the seven sites 3M had identified in its second and supplemental notices of removal, as well as eight others. *Id.*[2] Shortly after, on November 26, 3M moved for a stay. Dkt. 50. 3M explained that it intended to seek transfer of this case to the AFFF MDL and requested that the Court stay proceedings pending a decision by the JPML on the transfer motion. *Id.* at 1–2.

The following week (on December 5)—with 3M's stay motion pending—the State filed what it styled as a "Supplemental Disclaimer." Dkt. 52. In that filing, the State informed this Court that it had served further supplemental discovery responses that removed seven sites from its "Claimed Site List." *Id.* at 2. It further stated that the "State hereby disclaims and confirms that it is not seeking any relief in this case with respect to contamination at or from any of the seven sites . . . and hereby limits all of its claims and any recovery to exclude such contamination in this case." *Id.* The State asserted that it was "fil[ing] this supplemental disclaimer to ensure that this case remains strictly focused on PFAS sites that are entirely unrelated to AFFF contamination, regardless of whether it will now proceed in federal court under the First Circuit's ruling." *Id.* at 3. The State made explicit that it "will strenuously oppose any attempt by 3M to transfer

---

[2] To date, the State has produced three different iterations of its Claimed Site List spreadsheet.

5

this case to the AFFF MDL." *Id.* While the State has not expressly stated it intends to seek remand if amendment is granted, the State tipped its hand that it believes a state forum remains a possibility: the State "wishes to litigate its case, which is over three and a half years old, in a Maine forum, *whether that forum is a state or federal one*." *Id.* (emphasis added).

Four days later (on December 9), the State filed its "Motion to Amend Complaint To Add Disclaimer." Dkt. 53 (Mot.). The State's motion acknowledges that its "proposed amendment . . . comes on the heels of the First Circuit's decision to reverse th[is] Court's remand order," and is intended "to remove any reference" to "potential commingling" of AFFF and other PFAS that the First Circuit had held "supports federal jurisdiction" and that 3M might argue "justif[ies] transfer of this case to the AFFF MDL." Mot. 4.

In its proposed amended complaint, the State professes to "disclaim[]" recovery "in this case with respect to contamination at or from" the seven sites that 3M had identified in its second and supplemental notices of removal, Dkt. 53-1 ¶ 15, arguing (erroneously) in its motion that the court of appeals predicated its finding of federal jurisdiction solely on one of those seven sites (the Juniper Ridge Landfill), Mot. 2. The State further purports to redefine PFAS, so that "[r]eferences in this complaint do not refer to PFAS associated with AFFF." Dkt. 53-1 ¶ 15. And it avers that, "[t]o the extent there are any sites with mixed AFFF and non-AFFF contamination, the State does not intend to pursue recovery for those sites in this non-AFFF case, but instead reserves its right to pursue and seek recovery for such disclaimed sites through the State's AFFF case currently pending in the AFFF MDL." *Id.* The State's proposed amendments leave intact its allegations of statewide PFAS contamination impacting multiple natural resources. *See, e.g., id.* ¶¶ 69, 132, 141,

6

146, 149, 151, 242 ("throughout Maine"); *id.* ¶¶ 140, 145, 148, 149 ("throughout the State").[3]

Following the First Circuit's guidance, 3M tagged this case as belonging in the MDL. On December 17, 2025, the clerk of the JPML entered a Conditional Transfer Order ("CTO"), finding that this action "involves questions of fact that are common to actions previously transferred" to the MDL. Dkt. 55. The State filed a notice of opposition to the CTO on December 23 and briefing in connection with the State's motion to vacate the CTO is ongoing.

## ARGUMENT

The State does not and cannot plausibly meet its burden of showing that justice demands granting leave to amend its complaint in these circumstances. Fed. R. Civ. P. 15(a)(2). To the contrary, the interests of justice strongly favor denying the State leave. Fed. R. Civ. P. 15(a)(2); *see also Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 923 n.2 (8th Cir. 2023), *aff'd*, 604 U.S. 22 (2025) (a district court can deny leave to amend "when justice so requires"). Courts routinely "deny leave to amend when the request is characterized by 'undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part.'" *Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 390 (1st Cir. 2013) (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006)). A court should allow amendment only "if the non-moving party will not suffer undue prejudice." *In re Fustolo*, 896 F.3d 76, 84–85 (1st Cir. 2018) ("lack of prejudice, however, does not 'compel a determination that amendment is appropriate'") (citations omitted).

Those considerations weigh decisively against granting leave to amend here, for three independent reasons: *First*, the State's delay forecloses its request. It waited years to seek leave and has no good-faith excuse for its lack of diligence; the State's motion makes clear that it sought

---

[3] Though, in certain places, the State modifies its description of how PFAS "move[s] through the environment"—for example, by qualifying those characterizations with the phrase "at specific locations." *See, e.g.*, Dkt. 53-1 ¶¶ 1, 152–54.

leave now only because it wants to try to undo the effects of the First Circuit's decision. *Second*, the State's motion is futile because its modified allegations make no difference to federal jurisdiction or transfer. And *third*, even if its amendments *did* matter, they would unfairly prejudice 3M.

## I. The State's Delay And Lack Of Good Faith Compels Denying Leave To Amend

The State's proposed amendment reflects the sort of "dilatory motive on the movant's part" that weighs against leave to amend, particularly where that amendment is futile to accomplish its goal anyway. *Hatch v. Dept. for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001); *see infra* Part II. Nothing impeded the State from seeking leave sooner. Instead, by the State's own admission, it seeks to amend its complaint only now—"on the heels of the First Circuit's decision to reverse th[is] Court's remand order," Mot. 4—because it hopes to negate or cabin the effects of that appellate ruling on the future course of this case. That transparent forum-manipulation objective is the antithesis of good faith under Rule 15.

The First Circuit's decision in *Nikitine v. Wilmington Trust Co.* is instructive. The court of appeals upheld the district court's denial of leave to amend where the plaintiff moved to amend approximately nine months after filing suit, six months after the defendant moved to dismiss, and six weeks after an order dismissing an identical parallel suit. 715 F.3d at 390–91. The court observed that the plaintiff offered no valid reason for the delay; instead, he was "improperly maneuvering for a do-over," and "scrambling to devise new theories of liability based on the same facts pled in his original complaint" to remedy the grounds for dismissal in the parallel suit. *Id.* (alteration adopted); *see also In re Insulin Pricing Litig.*, 2025 WL 3022535, at *2 (D.N.J. Oct. 29, 2025) (denying motion to amend where "timing of the motion" after "an adverse decision from the First Circuit" suggested "that Plaintiff is engaging in gamesmanship to escape MDL jurisdiction"). The same is true here. The State's delay is significant by any measure: It filed suit nearly three years ago, in March 2023, and 3M first removed the case about two months later. *See* Dkt. 1

8

¶¶ 7–9, 11.  Yet the State did not seek leave to amend until *December 9, 2025*.

That tardy request is not the result of any *recent* factual development.  The State does not claim that its request was sparked by 3M's identification of seven specific sites where PFAS from AFFF plausibly commingled with non-AFFF PFAS.  3M had identified those sites four months earlier, Mot. 2 n.1, but the State made no effort to amend at that time.  Nor does the State contend that its proposed amendment was prompted by newly discovered facts it seeks to plead.  To the contrary, as the State concedes, the proposed amended complaint is "consistent with the facts and claims pled in the original Complaint."  Mot. 5.

The impetus for the State's motion to amend was the First Circuit's decision confirming federal jurisdiction.  Mot. 4.  That is far too late.  If the State was truly concerned its original allegations were insufficiently clear or did not capture its suit's intended scope, any attempt to clarify them "could and should have been put forward in a more timeous fashion."  *Nikitine*, 715 F.3d at 391.  The State, however, elected to stand on its existing allegations, forcing 3M "to incur the legal fees" litigating, and federal courts to waste resources adjudicating, the removal issue for more than two years.  *DeLuca v. SmithKline Beecham Corp.*, 2007 WL 541656, at *3 (S.D.N.Y. Feb. 20, 2007).  Through its unjustified delay, the State has "forfeited [its] right to amend."  *Id.*

Leave to amend is particularly unwarranted where, as here, the motive for amendment is "forum manipulation."  *Wullschleger*, 75 F.4th at 923 n.2.  The very treatise the State cites (Mot. 4) explains a "court may not allow [an] amendment" where the plaintiff is engaged in jurisdictional jockeying.  6 Wright & Miller, *Federal Practice & Procedure* § 1487 (3d ed. 2025).  Yet the State's (futile) goal is to try to "remove" "commingling" from the case and preemptively preclude "transfe[r]" to the MDL.  Mot. 4–5.  Indeed, the State openly admits that its proposed amendment is a direct response to the "First Circuit's decision" that "potential commingling supports federal

9

jurisdiction and may be used by 3M to justify transfer of this case to the AFFF MDL." Mot. 4. Because the State's "primar[]y" purpose for amendment is to "defeat[] federal jurisdiction," leave should be denied. *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 309 (8th Cir. 2009).[4]

The State misreads *Royal Canin U.S.A. Inc. v. Wullschleger*, 604 U.S. 22 (2025), as supporting leave to amend in these circumstances. Mot. 4. The Supreme Court did not consider the *propriety* of a proposed amendment under Federal Rule 15—only its jurisdictional consequences once leave had been granted. 604 U.S. at 25. And the Eighth Circuit decision that the Supreme Court upheld made clear that under Rule 15 courts can and should "withhold 'leave' to amend" precisely to "curb[] potential forum manipulation"—including where a late amendment is designed to "destroy federal jurisdiction." *Wullschleger*, 75 F.4th at 923 n.2. That is exactly the case here. The State's inexcusable delay compels denying leave to amend.

**II.     The State's Attempt To Manipulate The Forum By Amendment Would Be Futile**

The State's motion for leave to amend should be denied for the independent reason that it is "futile" in achieving its objectives. *Maine State Bldg. & Constr. Trades Council, AFL CIO v. U.S. Dep't of Lab.*, 359 F.3d 14, 19 (1st Cir. 2004); *see also Hatch*, 274 F.3d at 26; *Maldonado v. Dominguez*, 137 F.3d 1, 11 (1st Cir. 1998). The State's goal in seeking leave to amend is no secret: It is trying to erase the basis for the First Circuit's determination that "potential commingling supports federal jurisdiction and may be used by 3M to justify transfer of the case to the AFFF MDL"

---

[4] *Accord Edwards v. CVS Health Corp.*, 714 F. Supp. 3d 239, 250 (S.D.N.Y. 2024) (concluding that "fundamental fairness counsels against granting Plaintiff's motion for leave to amend" where such motion "is purely dilatory" and was made "with the deliberate purpose of divesting th[e] court of jurisdiction") (cleaned up); *Cueva v. Allstate Fire & Cas. Ins. Co.*, 2019 WL 3818035, at *1 (W.D. Tex. June 11, 2019) (rejecting an amendment that would destroy diversity jurisdiction by reducing the amount in controversy as a "clear attempt to destroy this Court's jurisdiction"); *Bombliss v. Sprung*, 2017 WL 2766438, at *2 (C.D. Ill. June 26, 2017) (denying leave where plaintiff "repeatedly state[d] that his purpose for amending the complaint is to destroy diversity jurisdiction," which is "not a sufficient reason to allow amendment of a complaint").

by "remov[ing] any reference to locations where" such commingling occurred. Mot. 4. It has elsewhere suggested that its amendment would support a renewed remand motion. Dkt. 52 at 3 (arguing that its Supplemental Disclaimer calls into question whether the proper "forum is a state or federal one").[5] And its motion states expressly that the amendment would "make clear that this is not an AFFF case and ought not be transferred to the AFFF MDL." Mot. 5. But in reality the State's proposed amendment would defeat neither removal nor transfer by the JPML.

The First Circuit already credited 3M's initial basis for federal jurisdiction—that "PFAS contamination from sources for which 3M admittedly has a federal contractor defense has commingled with and so has become in[di]visible with the PFAS contamination in natural resources and property which are broadly alleged in Maine's statewide non-AFFF Complaint." *Maine*, 159 F.4th at 138. And given the State's concession that this "case will require a court to determine whether the source of *any* PFAS contamination at a given site can be attributed to AFFF," the court of appeals held that the "federal officer removal statute further entitles 3M to have a federal court" make that determination. *Id.* at 139 (emphasis added). That ruling was not limited to specific sites, just as the State's allegations were not focused on specific sites, but statewide contamination.

**Removal.** Nothing in the State's proposed amendments—aimed primarily at excising the sites identified in 3M's second supplemental notice of removal—changes the fundamental character of the State's case or the consequences for federal jurisdiction. The amendments leave intact the allegations of statewide PFAS contamination—on which 3M predicated its first notice of removal, and on which the First Circuit based its decision that 3M had "satisfied the statutory requirements for federal officer removal." *Id.* at 133.

---

[5] The State's private counsel is attempting a similar maneuver on behalf of the state of Vermont following the Second Circuit's reversal of a district court decision granting remand of a federal-officer removal case. *Vermont v. 3M Corp.*, No. 2:25-cv-00660-mkl, ECF Nos. 144, 145 (D. Vt).

11

For instance, the proposed amended complaint still alleges that PFAS contamination became "ubiquitous" and "widespread"; that PFAS "persist for an indefinite (and very long) period of time"; and "migrate long distances through soil and groundwater" and "are transported long distances through the air." Dkt. 53-1 ¶¶ 1, 36–38.  Similarly, the State still claims that the "contamination of the State's natural resources and property [] is ongoing, as [PFAS] continue to threaten, migrate into, and enter the State's natural resources and property at specific locations, and cause new contamination in new locations*.*" *Id.* ¶ 249.  And the State continues to seek recovery for contamination to its "natural resources and property"—which it defines as "all natural resources and property for which the State seeks damages, *including without limitation*, fish, wildlife, biota, air, surface water, groundwater, wetlands, drinking water supplies, soil, . . . and State-owned lands." *Id*. ¶ 19 (emphasis added); *accord Maine*, 159 F.4th at 132 (quoting same).

To be sure, the State purports to disclaim recovery for contamination "at or from" seven sites. Dkt. 53-1 ¶ 15.  It also purports to qualify its allegations about how PFAS "move[s] through the environment" or "threaten[s] natural resources" by adding the phrase "at specific locations." *See*, *e.g.*, *id*. ¶¶ 1, 152–54.  But none of those modifications transforms the State's original disavowal of AFFF recovery from ineffectual "artful pleading" into an "effective 'express' disclaimer[]" that defeats the original ground for removal that the First Circuit "credit[ed]," *Maine*, 139 F.4th at 139, namely that "PFAS from MilSpec AFFF and PFAS from the non-AFFF sources putatively at issue in this action are plausibly commingled across Maine." First NOR ¶ 26.

In evaluating the State's claims of statewide PFAS contamination, a factfinder will need to try to determine whether and to what degree a site was affected by MilSpec AFFF.  The State's modifications thus still require a factfinder to engage in the very causation-and-apportionment analysis that the First Circuit held entitled 3M to a federal forum.  *Maine*, 139 F.4th at 140 (quoting

12

*Gov't of Puerto Rico*, 119 F.4th at 189).  So to the extent the State expects its amendments will give it another shot at defeating federal jurisdiction, that expectation is wrong and leave should be denied.  *Hatch*, 274 F.3d at 26.

The State cannot sidestep that result by mischaracterizing the First Circuit's decision.  It contends that the First Circuit reversed the remand order based only on "3M's recently filed *new* notice of removal" that identified seven sites 3M plausibly alleged were "contaminated with AFFF-related PFAS." Mot. 2 & n.1.  That is false.  Although the First Circuit described the second notice of removal and its supplement in the procedural history of its opinion, its analysis never mentioned the seven sites the State now seeks to carve out.  *Maine*, 139 F.4th at 135–36, 138–140.  Instead, the court held that resolution of the State's "statewide" complaint "requires addressing whether and to what extent [] contamination from [MilSpec] AFFF sources has commingled with non-AFFF"—an issue that must be resolved in federal court.  *Id*. at 138–40.  The fact that the State now seeks to disclaim the sites that served as the basis for the second removal, as supplemented, does not touch the First Circuit's rationale nor alter the jurisdictional consequences of its decision.

In any event, the State's proposed disclaimer of relief "*at or from*" these seven sites, Dkt. 53-1 ¶ 15—which include four rivers and a water district—is "susceptible to different meanings and so is ambiguous."  *Maine*, 139 F.4th at 139 n.23.  The State itself alleges that PFAS "migrate long distances through soil and groundwater" and "are transported long distances through the air," Dkt. 53-1 ¶¶ 37–38, yet it does not explain what it means by "contamination at or from" these sites, or what other sites are excluded in light of contamination "at or from" these sites.  That ambiguity independently strips the disclaimer of any effect.  *See Maine*, 139 F.4th at 139 n.23.

Even in its proposed amendment, the State effectively concedes it cannot "clearly carve[] out" PFAS from AFFF in its suit seeking recovery for statewide contamination.  Mot. 3.  Its

13

proposed amended complaint acknowledges the possibility of "sites with mixed AFFF and non-AFFF contamination," but maintains that it does not "intend to pursue recovery for those sites" in this case. Dkt. 53-1 ¶ 15. A factfinder would thus need to resolve any disputes over the scope of this commingling to even attempt to hold the State to its new disclaimer in this suit, and the First Circuit has held that such factfinder must be a federal one. *Maine*, 139 F.4th at 138–40.

    ***Transfer To AFFF MDL.*** Because the possibility of commingled AFFF contamination remains, the State's proposed amendment likewise does not defeat transfer to the MDL. Indeed, its AFFF complaint alleges that use of AFFF was ubiquitous across Maine—affecting Maine's "drinking water, groundwater, surface water, wildlife, soil, and sediment"—and that the State "continually discovers additional PFAS contamination" from AFFF, "including in new locations." Dkt. 53-1 ¶¶ 11–12. So even crediting the State's disclaimer of seven sites, this case will still "require a court to determine whether the source of *any* PFAS contamination at" any of the 800-plus remaining sites "can be attributed to AFFF." *Maine*, 159 F.4th at 139 (emphasis added). That is a question that should be the subject of coordinated discovery in the MDL.

### III.    If The State's Amendment Were Not Futile, It Would Cause 3M Unfair Prejudice

    Even if the State's proposed amendments would achieve its aims of frustrating federal jurisdiction over this suit or foreclosing transfer to the AFFF MDL, that simply trades one reason to deny leave to amend for another: The amendments would substantially prejudice 3M. *See Fustolo*, 896 F.3d at 84 ("'It is axiomatic that amendments which unfairly prejudice a litigant should not be granted.'"). In addition to the unfairness of forcing 3M to litigate removal based on the original allegations, only to revise them years later after 3M prevailed on appeal, the State's amendments invite serious administrability problems and an untenable risk of inconsistent rulings.

    The State counters that 3M "cannot possibly" be prejudiced because the "proposed amendments do not seek to expand the case but to remove" a handful of sites "from the case." Mot. 5

14

(emphasis omitted). But the State's disclaimer and its scope remain to be litigated (removing nothing from the case), and the State has not disclaimed recovery for those sites. The State specifically "reserves its right to pursue and seek recovery for such disclaimed sites"—including "any sites with mixed AFFF and non-AFFF contamination"—through the State's *other* case "currently pending in the AFFF MDL." Dkt. 53-1 ¶ 15; *see also* Dkt. 52 at 3. At the same time, the State's amendment acknowledges the possibility of discovering additional AFFF contamination at the 800-plus sites that the State does not purport to disclaim by name. Dkt. 53-1 ¶ 15.

The result is exactly what the First Circuit flatly rejected in its November ruling: parallel "state and federal court actions deciding the same PFAS contamination source issues alleged by Maine," *Maine*, 159 F.4th at 140, with different adjudicators potentially producing inconsistent outcomes or redundant recoveries. As the court of appeals explained, "Maine's efforts to have two courts answer the same questions must fail," or a central "purpose" of Congress's enactment (and strengthening) of the federal-officer removal statute "would be defeated." *Id.* at 131, 140.

The straightforward solution is to honor 3M's "entitle[ment] . . . to have a federal court adjudicate the scope of its federal contractor defense" and, "should the [JPML] [so] choose," to "transfer this case" to the AFFF MDL. *Id*. at 139, 141. That the State's proposed amendments seek to thwart that fair, efficient outcome is all the more reason to deny the State leave to amend.

## CONCLUSION

The Court should deny the State's motion for leave to amend its complaint.

|  |  |
|---|---|
|  | Respectfully submitted, |
| January 13, 2026 | */s/ Lauren R. Goldman* |
|  | Lauren R. Goldman (admitted *pro hac vice*) |
|  | Justine Goeke (admitted *pro hac vice*) |
|  | GIBSON, DUNN & CRUTCHER LLP |
|  | 200 Park Avenue |
|  | New York, NY 10166 |
|  | (212) 351-2375 |
|  | lgoldman@gibsondunn.com |
|  | jgoeke@gibsondunn.com |
|  |  |
|  | Jay S. Geller (Bar No. 9022) |
|  | LAW OFFICE OF JAY S. GELLER |
|  | Lunt Professional Building |
|  | 74 Lunt Road, Suite 206 |
|  | Falmouth, ME 04105 |
|  | (207) 899-1477 |
|  | jgeller@jaysgellerlaw.com |
|  |  |
|  | Russell B. Pierce (Bar No. 7322) |
|  | NORMAN HANSON & DETROY LLC |
|  | Two Canal Plaza |
|  | P.O. Box 4600 |
|  | Portland, ME 04112 |
|  | (207) 774-7000 |
|  | rpierce@nhdlaw.com |
|  |  |
|  | Daniel L. Ring (admitted *pro hac vice*) |
|  | Terri L. Mascherin (admitted *pro hac vice*) |
|  | JENNER & BLOCK LLP |
|  | 353 North Clark Street |
|  | Chicago, IL 60654 |
|  | (312) 222-9350 |
|  | dring@jenner.com |
|  | tmascherin@jenner.com |
|  |  |
|  | Joanna Wright (admitted *pro hac vice*) |
|  | JENNER & BLOCK LLP |
|  | 1155 Avenue of the Americas |
|  | New York, NY 10036 |
|  | (212) 891-1600 |
|  | jwright@jenner.com |
|  |  |
|  | *Counsel for Defendant 3M Company* |