# EXHIBIT 1

CASE NO.: 23-1709


STATE OF MAINE,

          Plaintiff,

vs.

3M COMPANY,

          Defendant.
_____/



AUDIO RECORDING

          FILE NAME:       23-1709_20251006

          DATE TAKEN:      October 6, 2025
















Transcribed By:  Sarah Albaladejo

23-1709_20251006
October 06, 2025

1                      INDEX TO EXAMINATION

2

3                                                    PAGE

4     Proceedings                                     4

5     Certificate of Transcriptionist                30

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

23-1709_20251006
October 06, 2025

```
 1              UNIDENTIFIED SPEAKER:  Today's cases will be called as
 2    previously announced, and the times will be as allotted to
 3    counsel.
 4              The first case today is number 23-1709, State of Maine
 5    vs. The 3M Company.  At this time, would counsel for the
 6    appellant come to the podium and introduce themselves on the
 7    record to begin?
 8              MR. CLEMENT:  Good morning, Your Honor.  Paul Clement
 9    for the appellant, 3M.  And I'm going to endeavor to save three
10    minutes for rebuttal if that would work.
11              THE COURT:  Thank you.  You may.
12              MR. CLEMENT:  Thank you.
13              Your Honor, if Maine had simply sued 3M for PFAS
14    remediation in a single lawsuit, the appropriateness of a
15    federal form for that suit would be obvious.  A federal court
16    would determine not only the availability of the federal
17    defense, but whether PFAS associated with the federal activity
18    could be separated from PFAS from private activity.  And if so,
19    what percentage of PFAS is shielded by the federal defense?
20              Maine believes that by filing two lawsuits and
21    disclaiming any AFFF liability in one of them, it can defeat
22    federal jurisdiction over the suit with the disclaimer.  Indeed,
23    there's no other plausible explanation for why Maine filed two
24    suits instead of one.  But that gambit requires two courts to
25    answer the same basic questions about whether PFAS from federal
```

1 and private activities can be disentangle.  And if so, what

2 percentage to allocate to the federal activities?

3          JUDGE THOMPSON:  Well Maine says they're filing two

4 lawsuits because they want to, with regard to the Maine case,

5 focus on harm nonfederally related that is done to the state of

6 Maine.

7          MR. CLEMENT:  So I understand that, Judge Thompson,

8 but the reason they're doing that essentially in -- I mean, they

9 could do that in one suit.  And if they did it in one suit, it

10 would go to federal court because of the colorable federal

11 defense for the AFFF produced for the military.  So --

12          THE COURT:  But they -- they could, but they're

13 saying, it's our option to file in state court because we don't

14 have a federal claim.

15          MR. CLEMENT:  And with respect -- I would say that

16 that's not their option because there still is essentially a

17 federal claim or a federal defense in the case.  And the issue

18 is going to be what is the relationship between the federal PFAS

19 and the non-federal PFAS and you -- I mean, if this was just

20 brought in federal court, it would be pretty straightforward.

21 We'd be debating that issue in the context of what's the scope

22 of the federal defense.  Because of the disclaimer here, we

23 would be essentially debating the same issue, but it would be

24 what's the scope of the disclaimer?  Is this something that

25 Maine has disclaimed or is -- it's not?  And that with respect,

1   I think, is exactly the kind of circular disclaimer that this

2   court in Express Scripts, recognized is just sort of clever

3   pleading to try to defeat a federal defense.

4          THE COURT:  Can I ask you about -- about that in --

5   well, about Express Scripts specifically?

6          In that case, I think we said the at issue disclaimer

7   there would have permitted Puerto Rico to, quote, recover based

8   on Caremark's official acts because Caremark jointly negotiated

9   private and government contracts.  To me, that is a very

10  different case than -- than 3M's actions here.  How do you --

11  how -- how do you see that?

12         MR. CLEMENT:  So ultimately, I don't think it's a

13  different case.  I mean, you know, obviously, it is a different

14  case and different facts.  But I think, you know, to me,

15  what's -- there's a couple of things that are critical about

16  Express Scripts.  One is this court emphatically says that you

17  have to credit the theory of removal in the removal petition.

18  There, it was -- that it's all indivisible.  I think there was

19  actually probably some dispute about that.  But there it was --

20  it was all indivisible.

21         Here, it's as we allege in our removal pet --

22  petition, that the PFAS and the -- and the -- and the federal

23  PFAS, the phrase we used at one point is inseparably contributed

24  to the alleged non-tr -- AFFF contamination.  And if we're right

25  about that, then it really ends up being the same issue, which

23-7769_20251006
October 06, 2025

1  is there is a need to determine in -- in -- in the case how much

2  of this is federally associated, how much of it is non-federally

3  associated.  Our position is you really can't do that.  And so

4  you're going to have a debate about it.  And presumably, we're

5  going to have that debate in the federal litigation, the a AFFF

6  case that's been removed without objection.  And you're going to

7  be having the same issue.  And it is essentially an issue that

8  belongs in federal court because at bottom, it's an issue about

9  what's the scope of the federal defense.  And just to, you know,

10  obviously, all of this is a little bit of an accident of timing,

11  but because the Express Script case came down after my friends

12  crafted their complaint, but their own complaint seven different

13  times with each of the counts in the complaint that's directed

14  except for the accounts that are specific to DuPont, which

15  aren't at issue here.  In each one of those complaints, they say

16  the injury is indivisible.  Like, that's the phrase they use.

17       And the other thing about Express Script I find very

18  helpful is this Court said that one -- one -- at one point in

19  the opinion, the way to think about this is first ask the

20  question, would this complaint be removable without the

21  disclaimer?  And then ask it, does the disclaimer suffice?  Now,

22  I think that first question here answers itself.  Without the

23  disclaimer, this case is in federal court.  And again, they

24  didn't even contest the removability of the AFFF twin suit.  So

25  I think that's pretty straightforward.

1           So then the question is, does this disclaimer get it

2   done?  And with respect, I don't think this disclaimer gets it

3   done.  It is circular in the sense that matters.  I mean, if

4   they -- if they had said, we disclaim all liability, that's

5   protected by a federal defense.  Like that wouldn't pass the

6   straight face test because that's just circular.

7           THE COURT:  I think you just -- you answered this just

8   a minute ago, but I've been thinking about the disclaimer here

9   and then also about your arguments that -- that, you know, the

10  PFAS here is inseparable or, you know, it -- it's forever

11  chemical and it leaches through the environment.  Would there be

12  a di -- say, I agree with you that this disclaimer maybe doesn't

13  work in the way that Maine wants it to, would there ever be a

14  disclaimer in a case like this that would work?  Could you --

15  could you think of one that would?

16          MR. CLEMENT:  I mean, I -- I -- you know, it's hard

17  for me to sort of, you know, give away part of, like, what my

18  client might want to argue.  But I would say -- let me at least

19  tell you what would be a much harder case.  If this were a case

20  where, if -- if Maine picked one site in the remote corner of

21  the state that was as far as possible for all the military bases

22  as imaginable and said, Look, we just want to recover for this

23  one site.  That's all that's at issue here.  We don't want to do

24  anything else.  And -- and then they gave the kind of disclaimer

25  that was at issue in the Raul case in the 7th Circuit, then I --

23-7709_20251006
October 06, 2025

1  I might still say there's still a problem if we could allege in

2  that case.  And maybe we couldn't if it's remote enough.  But if

3  we could allege in that case, it's still, like, indivisible and

4  there's still PFAS contamination here from the federal

5  contracting, then -- then it would be removal, I suppose,

6  because there'd still be the question of who's right about that.

7  And I think that should be in federal court.  But that's a much

8  harder case.

9          And, you know, I obviously don't know what my friend

10 is going to disclaim or not disclaim when he gets up here.  But

11 I don't think that kind of disclaimer that was at issue in Raul

12 works in a case like this where the case is statewide.  And

13 that's why I do think it is helpful to start as this Court

14 instructed and Express Scripts with the question, like, but for

15 the disclaimer, is this removable?  And I -- I mean, I -- I

16 think it would be hard to construct a complaint that was more

17 removable because the complaint keeps on talking about statewide

18 injury.  It seeks recovery for abatement and investigation

19 costs.  And then seven different times, it says, the injuries to

20 the natural resources in Maine are indivisible.  It even has one

21 specific allegation where it says -- you know, it also says,

22 this stuff migrates.  But it has a specific allegation that says

23 that part of the problem is when the PFAS gets into a wastewater

24 treatment plant and the part of the processes you sort of, you

25 know, get rid of the water and you have sludge.  Then that

 1  sludge is used on farmers' fields throughout Maine.  And so,

 2  something that starts as a contamination for one specific

 3  wastewater treatment facility ends up spreading throughout the

 4  state because the wastewater sludge is then used on farmers'

 5  fields as a nitrate additive.

 6          So the complaint -- and obviously, it's their

 7  complaint, they -- you know, some of that stuff we might

 8  dispute.  But the complaint is written in terms that really make

 9  it kind of very, very hard to separate out the AFFF PFAS.  And

10  then they simply have the disclaimer.  And you know, obviously,

11  this case does not want for 28-J letters, but you may have seen

12  the last two 28-J letters, whereas the discovery is ongoing in

13  the state court, new disputes arise as to the extent to which

14  AFFF sort of PFAS has gotten into additional water sources that

15  are plainly at issue in the state court litigation.

16          THE COURT:  Is there evidence in that state court

17  litigation or -- that PFAS contamination caused by AFFF and PFAS

18  contamination caused by the non-AFFF sources can be

19  distinguished.  If I go back to the complaint, you know, it

20  lists PFAS and then like a million other acronyms for related

21  PFAS?

22          MR. CLEMENT:  Yeah.  So what you might find there is a

23  factual dispute about that question.  It is certainly 3M's

24  position that you can't distinguish it, particularly once it's,

25  you know, it's -- it's -- it's basically, at the end of the day,

1   it's the same chemical compounds.  And then once they're in the

2   water, you -- you know, you can try to say based on sort of

3   proximity or where a water source is versus a contamination

4   source.  You can -- you know, you can -- you can speculate as to

5   where it was -- where it came from, but you can't, like,

6   fingerprint it or you can't, like, sort of look at it and say,

7   oh, well, this has the distinct mark of AFFF PFAS versus

8   non-AFFF PFAS.  So we know this one is not related to the

9   government contracting.

10          Now, like, I -- I -- again, I don't know what my

11  friend will say about that.  It may be that we just have a

12  factual dispute about that, but that's exactly the kind of

13  factual dispute that the federal contractor is entitled to have

14  resolved in the federal forum.

15          And just, you know, one last thought here before I sit

16  down is that, you know, if this had just been a single suit, you

17  know, this would all be so much simpler because there would be a

18  debate in federal court about whether the colorable federal

19  defense is actually a valid federal defense.  Then there would

20  be a single adjudication about the scope of that federal

21  defense.  And then, you know, you're started done, whereas

22  because they bifurcated the cases and they sort of recognize

23  that the presence of AFFF is essentially the marker for federal

24  jurisdiction.  Like, I'm not even sure how this is going to work

25  going forward if we don't prevail in this appeal because there's

23-1709_20251006
October 06, 2025

1  going to be an ongoing set of disputes about whether a

2  particular source is part of the federal claim or part of the

3  non-federal claim.  And all of that makes the disclaimer here

4  quite different from the disclaimer that many courts have

5  confronted in other context.

6          And maybe this is part of my answer to your original

7  question about what disclaimers work mean.  I mean, most

8  disclaimers are, like, real disclaimers.  The -- the plaintiff

9  can say, I'm never going to try to recover for this.  Or, you

10 know, I have two fed -- I have two state law claims, a -- a -- a

11 failure to warn claim and a design defect claim.  And the

12 federal defense only applies to one and I'm going to disclaim

13 that -- that -- that claim forever.  Like, those kind of

14 disclaimers are different than this, which is really, I'm

15 disclaiming this in this lawsuit, but I'm going to try to

16 recover it in this lawsuit.  And I think this is going to create

17 all manner of problems down the road, like issue preclusion and

18 all of the like, and it's just such a better solution to have

19 this one case be removed to federal court.

20          JUDGE THOMPSON:  Counsel, their -- their -- their

21 position --

22          JUDGE LYNCH:  Mr. Clement --

23          JUDGE THOMPSON:  -- is that even if it's -- even if

24 it's one -- if -- even if it's a 1 percent contamination,

25 they're still disclaiming.  So they -- they are, in fact,

1  disclaiming any kind of responsibility for anything that's PFAS.

2        MR. CLEMENT:  So I -- I don't know if they are, if

3  it's just like a 1 percent or if it's not one morcel.  But I

4  still don't think it works here because there's still factual

5  disputes about whether there's any -- there's any federal PFAS,

6  if you will, in particular sort of water streams.  And that's a

7  dispute that really belongs in federal court at -- at -- at

8  bottom.  Because it -- you -- you can say, well, I've just

9  disclaimed that, but the dispute is still, at bottom, a dispute

10 about the scope of the federal defense.  That's why they're

11 disclaiming that a fact finder is going to have to determine,

12 okay, you know, they're if you look at the la -- well, the --

13 maybe the penultimate set of 28-J's, there's this dispute about

14 the -- a particular water supply near the Brunswick Air Force

15 Base, but it's a municipal water supply for Brunswick and

16 Topsham.

17        And we say that there's federal AFFF there.  They say,

18 I guess, that there's not.  That's a factual dispute.  It's at

19 -- it's -- we could say it's a dispute about the scope of the

20 proxy rather of the -- of the disclaimer, but that's just a

21 proxy for a debate about the scope of the federal defense.

22        JUDGE LYNCH:  Mr. Clement, if I might?

23        Suppose we agree with you, what is the proper remedy

24 here, and what are the consequences of that remedy as to all

25 matters that were before the state court?  I take it you're

1  saying we simply reverse the remand order.  Do we then order the

2  district court to take jurisdiction?  And what is the effect on

3  the state court proceedings to date?  Are they just null and

4  void?

5       MR. CLEMENT:  So Judge Lynch, I think the answer would

6  be that, you know, we -- we would -- we would ask you to

7  essential -- essentially reverse and sort of essentially direct

8  that the case sort of proceed in -- in -- in -- in federal

9  court.  I mean, if you wanted to get into the second issue about

10 the factual disputes about particular water sites, then maybe

11 there'd be a remain for that, but we don't actually think that's

12 necessary --

13      JUDGE LYNCH:  No --

14      MR. CLEMENT:  -- because of the nature of their

15 complaint.  And then I -- I --

16      JUDGE LYNCH Mr. Clement, before you go on.

17      I take it that the state court has not yet ruled on

18 any of those factual disputes?

19      MR. CLEMENT:  That -- that's my understanding.  I

20 think we're still in --

21      JUDGE LYNCH:  Okay.

22      MR. CLEMENT:  -- discovery there.  I think -- I -- I

23 mean, you know, I think at -- at some level, the proceedings in

24 state court would be null and void.  But at another level, I

25 mean, to the extent interrogatories have been exchanged and

23-1709_20251006
October 06, 2025

1  things like that, there's probably some judgment calls for the

2  district court judge as to how to proceed going forward.

3          JUDGE LYNCH:  Okay.  Thank you.

4          MR. CLEMENT:  Thank you, Your Honor.

5          UNIDENTIFIED SPEAKER:  Thank you, counsel.

6          At this time, would counsel for the appellee please

7  introduce themselves on the record to begin?

8          MR. PAWA:  May it please the court.  Matt Pawa for

9  appellee, the state of Maine.  I'm joined at counsel table by

10  assistant attorney general Mark Bauer.

11          The Court should affirm the district court's decision

12  here that the State's disclaimer in this case is a valid express

13  disclaimer that precludes federal officer jurisdiction.  The

14  State has disclaimed recovery for all sites with commingled AFFF

15  and non-AFFF contamination regardless of whether or not that

16  AFFF is MILSPEC.  We are not seeking to have the fact finder in

17  this case allocate -- allocate as between AFFF and non-AFFF.

18  Again, regardless of whether or not it's MILSPEC AFFF.

19          JUDGE THOMPSON:  But how --

20          MR. PAWA:  -- the jury will never get there.

21          JUDGE THOMPSON:  -- but how can -- how can that be?

22          MR. PAWA:  Our disclaimer is just like the one in the

23  7th Circuit by the state of Illinois.  We -- we -- if there is a

24  site with commingled contamination, it's at issue in the other

25  lawsuit, it's a -- it's going to be at issue in the -- the case

 1  that's in the multi-district litigation.  And -- and it is not

 2  going to be an issue here.  Just --

 3          JUDGE THOMPSON:  But their -- but their position is

 4  that there's commingling everywhere statewide.  And that you --

 5  and that the -- the fact that you would have to have a separate

 6  hearing to determine if that's correct means that there's a

 7  federal officer.

 8          MR. PAWA:  Right.  Well, respectfully, that is not

 9  their position.  Their position is that there's five military

10  bases, four of which have some commingled contamination that is,

11  quote, nearby those bases.  That is what they said.

12          Now, we have said that there's non-AFFF PFAS

13  contamination statewide and that it's ubiquitous.  And they say,

14  well, you've got five military bases that you sued us at in

15  another case that's not at issue here that have AFFF.  And they

16  use the word "nearby" to describe that contamination a couple of

17  times in their reply brief at pages 21 through 23.  They're

18  talking about --

19          JUDGE THOMPSON:  Well, then --

20          MR. PAWA:  -- nearby military bases.

21          JUDGE THOMPSON:  But their argument today certainly

22  seems to suggest a much broader contamination theory.  I mean,

23  they're talking about sludge and fertilizer --

24          MR. PAWA:  Right.  And --

25          JUDGE THOMPSON:  -- and --

October 06, 2025

```
 1          MR. PAWA:  -- and we have a -- and we have a series --
 2   you -- the Court now knows from the 28-J letters, we have a
 3   series of 900 sites.  It does not include any site for which
 4   there's cross -- cross contamination.  And in fact, I just want
 5   to point out, we have a declaration unrebutted fact --
 6          JUDGE LYNCH:  Excuse me, counsel.
 7          MR. PAWA:  -- established in this case that it's
 8   possible --
 9          JUDGE LYNCH:  Counsel --
10          MR. PAWA:  -- to do source attribution.  The depart --
11   excuse me.
12          THE COURT:  One second.  I think Judge Lynch has a
13   question.
14          MR. PAWA:  I believe Judge Lynch is trying to ask a
15   question.
16          JUDGE LYNCH:  You -- you have just stated, we are not
17   suing as to any site in which there is cross contamination, but
18   that is not what your complaint says.  Your complaint says, if
19   there is any such site, we attempt to disclaim.  Whether the
20   disclaimer is sufficient or not is another matter.  But surely
21   you concede that some of the sites at issue have at least the
22   potential for cross contamination.
23          MR. PAWA:  The way we plead our case, respectfully, is
24   a series of discrete sites.  We use the word locations
25   repeatedly throughout our complaint, locations to describe the
```

```
 1   area where there's PFAS contamination.

 2           JUDGE LYNCH:  Yes, but in discovery, you've now

 3   described Brunswick and other areas where it seems quite likely

 4   there is some form of cross contamination.

 5           MR. PAWA:  We do not list the military bases at all in

 6   the complaint at issue here.  Those military bases, in fact, are

 7   expressly listed --

 8           JUDGE LYNCH:  Excuse me, counsel.

 9           MR. PAWA:  -- in the other case.

10           JUDGE LYNCH:  List The Brunswick municipal water

11   supply.  Of course, you haven't listed the military --

12           MR. PAWA:  Right.

13           JUDGE LYNCH:  -- and still (indiscernible).  You have

14   listed areas where they say there is cross contamination.

15           MR. PAWA:  And -- and --

16           JUDGE LYNCH:  I would appreciate greater candor from

17   the state of Maine.

18           MR. PAWA:  Well, re -- respectfully, I -- I think that

19   the -- the way we have drafted this complaint is to make clear

20   that any area where there's commingled contamination is not at

21   issue in this case.  And -- and we acknowledge that they say

22   there is commingling.  And -- but the -- that's why we have the

23   disclaimer.  So the disclaimer comes in and sits as an -- an

24   umbrella in case we have what I would describe perhaps as an

25   oops.  Like oops, in discovery, did we list a case where they
```

1   can say, ah-huh, we can show there's AFFF there.  And they say

2   now that they have done that and they found a place like

3   Brunswick were there -- and -- and that's when we say, Oh, well,

4   that may have been an oops, good for you.  You found some AFFF.

5   That's why we have the disclaimer.  We're going to cross that

6   off the site.  And that is a question of causation that is

7   antecedent to the issue of federal officer defense as --

8          JUDGE LUNCH:  Counsel, you may have read my Moore

9   decision in which we discuss the amendment to the statute and

10  congressional choice not to use the word "causation" but to use

11  the word "related to."  And we made it quite clear in the first

12  circuit, it was not a causal standard.  Judge Heldy (phonetic)

13  in the most recent decision also repeated that some circuits

14  disagree with us.  You rely on those circuits, but that is not

15  for circuit law.  And related to usually has an extremely broad

16  reach when Congress uses the term.

17         MR. PAWA:  Right.  And we embrace that decision.  A --

18  a -- and there's two different issues here.  The -- this Court

19  said in Puerto Rico vs. Express Scripts that a disclaimer that

20  requires the state court to determine the nexus between the

21  charged conduct and the federal authority is not a valid means

22  of precluding removal.  But here our position is, respectfully,

23  the state court will never have to do so because the -- the

24  charged conduct at issue here is the production and distribution

25  of the PFAS products, right?

1          The causation issue comes before you get to that issue

2    of whether or not the charged conduct is related to the federal

3    officer defense.  That's the MILSPEC.  And for purposes of this

4    appeal, we're not disputing that the MILSPEC creates that causal

5    nexus between the charged conduct and the federal authority.

6    What we are saying is that you never get to that issue because

7    we have a causation issue that is antecedent to the federal

8    defense.  The causation --

9          JUDGE LYNCH:  You have a -- a related to issue.  And

10   the remand order expressly said, Oh, the state court can

11   determine that related to issue.  And Mr. Clement has suggested

12   that alone means that the removal was wrong because it has to be

13   a federal court under the federal officer defense, which

14   determines that question.

15         MR. PAWA:  A federal court has to determine the -- the

16   relationship between the charge conduct and the -- and the

17   federal authority, right?  That's like the Willingham vs. Morgan

18   case from the Supreme Court in Jefferson County vs. Acker.

19   Here, we don't have a dispute about the scope of 3M's federal

20   obligations.  There's no dispute about that -- that if -- if it

21   comes up at all, will come up in the MDL court.  And it's a

22   matter of the MILSPEC.

23         The -- the -- what we have here is a dispute about the

24   scope of our lawsuit.  And we'd refer you to what the 9th

25   Circuit recently said in the California verse -- by Harrison vs.

1  Express Scripts case.  In the process of crediting the

2  defendant's theory of the case, a court is not free to disregard

3  or rewrite the allegations the plaintiff has chosen to include

4  in its complaint.  And I also want to refer Your Honors to the

5  oral argument in the New Hampshire case presenting this exact

6  same issue the court didn't decide it, but --

7       JUDGE LYNCH:  Is the 9th Circuit rule consistent with

8  our Puerto Rico case?

9       MR. PAWA:  I -- I -- I believe it's very --

10      JUDGE LYNCH:  I don't think it is.

11      MR. PAWA:  -- consistent.  In Puerto Rico, this court

12  described disclaimers that are valid.  And it referred to a

13  whole series of asbestos decisions in which you have an

14  indivisible injury by a plaintiff.  The plaintiff has sued

15  numerous different companies for mesothelioma and has expressly

16  disclaimed any -- any ex -- recovery for -- for conduct that

17  occurred on a military base during the time the plaintiff was in

18  military service.  And the court said, that's an example of a

19  proper disclaimer.  And, you know, our -- our case is very much

20  like that, except we have a much more conservative disclaimer,

21  right?  Those cases required allocation.  And this court

22  embraced those cases.  It embraced the asbestos case.  And in

23  fact, this court ruled on a disclaimer in the Rhode Island One

24  case in which it said that a disclaimer in there actually

25  required the court to engage -- and the finder of fact to engage

```
 1  in allocation.
 2          In the Rhode Island One case, it was about -- Rhode
 3  Island sued energy companies for climate change for CO2
 4  greenhouse gas emissions and noticed those greenhouse gas
 5  emissions mixed uniformly and indivisibly in the environment.
 6  And yet the court held that -- that the contract between Citco
 7  and the Navy, which was expressly disclaimed by the plaintiff
 8  for -- because it was federal conduct, meant that the disclaimer
 9  was valid, and there was no federal office or jurisdiction.
10  That case is indistinguishable from our case except that we have
11  a much more modest disclaimer that looks just like the one from
12  the state of Illinois.  And the state of -- now -- now --
13          THE COURT:  Do --
14          MR. PAWA:  Yes.
15          THE COURT:  To change the -- the subject.  Do you
16  think you could address the latest 28-J letter that 3M filed
17  regarding Juni -- the Juniper Ridge landfill, which I think is a
18  named site in the comp -- your complaint in this case?
19          MR. PAWA:  That's right.
20          THE COURT:  But as I read --
21          MR. PAWA:  Yeah.
22          THE COURT:  -- that --
23          MR. PAWA:  Yeah.
24          THE COURT:  -- 28-J letter --
25          MR. PAWA:  Right.  Yeah.
```

```
 1              THE COURT:  -- 3M suggests --

 2              MR. PAWA:  Right.  So, like, it -- it's inevitable in

 3    a -- in a case with 900 sites that there's going to be an oops.

 4              And I want to point out that we have a declaration

 5    from the State Department of Environmental Protection in this

 6    case that is an unrebutted fact that there are hundreds, quote,

 7    hundreds, potentially thousands, of sites of a -- of PFAS

 8    contamination in Maine that are unrelated to AFFF that is an

 9    undisputed unrebutted fact here.  And so this is --

10              THE COURT:  So what do you mean by there might be an

11    oops somewhere --

12              MR. PAWA:  Right.  So the --

13              THE COURT:  -- is it just a mistake?

14              MR. PAWA:  -- the Juniper Rib -- we -- look, we --

15    we -- we received this 28-J letter, what, a week or two ago.  We

16    have to look into the facts.  We have to examine it.  Our -- our

17    declaration also says that source attribution is possible.

18    That's at State addendum page 3 and that you can do an

19    investigation.  And we will do an investigation and figure out

20    if Juniper Ridge has AFFF.  And we'll do the same thing we've

21    been doing for the last six years for the state of Vermont.  And

22    we'll amend our discovery responses.  And we'll take a -- take

23    a -- Juniper Ridge out of the case if we have to.  Six sites

24    they've named out of 900 and we can -- we can amend our

25    discovery responses to take them out.  And the U.S. Supreme
```

1  Court in Royal Canon just recently embrace this idea that you

2  can --

3          THE COURT:  But I -- I mean, 3M's pos -- position will

4  be we have a defense to that site here that we wish to raise and

5  we can't.

6          MR. PAWA:  And -- and we can -- and we're -- and we

7  are the -- the masters of our complaint and can take that

8  complaint out of the case.

9          And -- and, you know, we -- we -- there's really no

10 fair reading of our complaint and, you know, in which any of

11 these commingled sites are at issue in the case with the

12 possible exception of Juniper Ridge.  But -- but again, we

13 haven't had an opportunity to submit facts on -- you know, to

14 the district court on this to prepare for an appeal, so we

15 don't --

16         JUDGE LYNCH:  Counsel --

17         MR. PAWA:  -- have a proper record.

18         JUDGE LYNCH:  I'm sorry.

19         MR. PAWA:  And we object to trying to -- to --

20         JUDGE LYNCH:  Counsel.

21         MR. PAWA:  -- belatedly inject this into the appeal.

22         I'm sorry, Judge Lynch, I interrupted.  I beg your

23 pardon.

24         JUDGE LYNCH:  Okay.  3M and a series of 28-J letters

25 to us has asserted that there is a plausible commingling of the

1  chemical that they have the federal defense at -- at a number of

2  the sites.  You say, Oh, we're not going to amend our complaint

3  now and eliminate all of those sites.  We need to investigate

4  and determine whether 3M is correct or not.  And only after we

5  investigate and we reach a conclusion would we then amend our

6  complaint.

7           Isn't that exactly why there are issues here to be

8  determined and they have to be determined by the federal court?

9           MR. PAWA:  Respectfully, no.  Be -- because we can

10 remove sites from the case.  If they -- if they -- even if --

11 whether or not they've met their -- the -- that -- we're not

12 conceding they've met their plausibility standard.  We have a

13 whole section of our brief, as you know --

14          JUDGE LYNCH:  Exactly.

15          MR. PAWA:  -- in which we argue that they are

16 speculating, right?  But -- right?

17          But before we ever get there, we've got a disclaimer.

18          JUDGE THOMPSON:  But suppose that you just --

19          MR. PAWA:  And -- and the disclaimer says --

20          JUDGE THOMPSON:  -- Suppose they disagree with you.

21          MR. PAWA:  Right.

22          JUDGE THOMPSON:  I mean, you -- you do your

23 investigation.

24          MR. PAWA:  Right.

25          JUDGE THOMPSON:  You make a determination, yeah, that

October 06, 2025

```
 1   they've got a good point or they don't have a good point with --
 2   I mean, if they disagree with you, then what?
 3            MR. PAWA:  If -- if they disagree with us, then --
 4   then, you know, we may remove it from the case as a matter of --
 5   of caution.  We will -- we will ensure that they will never have
 6   to put their federal officer defense on at -- at issue in the
 7   state court.  We have built a ball work around that because
 8   we're disclaiming all AFFF whether or not it's MILSPEC, whether
 9   or not it has a federal defense.
10            And this is an issue of causation.  And 3 -- 3M
11   admitted that this -- this was an antecedent issue of causation
12   in the New Hampshire oral argument.  If you listen to the
13   questioning by Judge Rickleman (phonetic) with 3M's lawyer, and
14   they've incorporated that oral argument into their brief here at
15   page 33.  And Judge Rickleman jumps in and says, wait a minute.
16   That allocation issue that you're talking about is not an issue.
17   It's an issue of causation.  It's not the federal defense.  And
18   3M says, you're right.  It's a causation issue.  It's a quote.
19   They said, you're right.  And then they said, well, it tees up
20   the federal officer defense.  Well, if it tees up the federal
21   officer defense, we must be right that the causation issue comes
22   first.  It's antecedent to the issue of the federal officer
23   defense.
24            And -- and -- and so that is where we stake our claim
25   in this case.  We are like Raul.  Now, they say Raul is
```

1   different because there's only one site.  But analytically how

2   many sites matters?  Is it one?  Is it five?  We have a --

3   they're asking you to create a circuit split with the 7th

4   Circuit, you know.  And -- and -- and just because there's one

5   site, that is not a basis to dismiss.  We can do the same thing

6   the se -- that Illinois did in the 7th Circuit, whether it's one

7   site or five sites or 500 sites.

8            THE COURT:  Thank you.

9            MR. PAWA:  Thank you, Your Honor.

10           THE COURT:  Your time is up.

11           UNIDENTIFIED SPEAKER:  Thank you, counsel.

12           At this time, would counsel for the appellant please

13   reintroduce themself on the record?  He has a three-minute

14   rebuttal.

15           MR. CLEMENT:  Thank you.  Paul Clement, again, for the

16   appellants.  Just a few quick points in rebuttal.

17           I -- you know, I'd invite you to read the State's

18   complaint.  And I do think Express Script is exactly right, that

19   you just start with the complaint.  Put the disclaimer aside for

20   a second.

21           The complaint talks about statewide contamination,

22   ubiquitous contamination, the sludge that gets taken and put on

23   the farmers field.  It also is seeking recovery for fish and

24   wildlife.  The fish and wildlife don't stay put.  They move from

25   one site to the other.  I mean, wildlife presumably includes

23-1709_20251006
October 06, 2025

1    birds that can -- can move from one site to another.  So -- and

2    then, of course, they're also seeking abatement and recovery of

3    investigation costs, all of which are statewide.  So the only

4    place this gets at all site specific is when you get to the

5    disclaimer.

6           And so, then they try to disclaim essentially anything

7    that has AFFF.  And he admitted today that there are probably a

8    couple of the sites that are oops.  Well, determining which

9    sites are oops and which sites are not oops is essentially a

10   question about what's the scope of the federal defense.  And

11   that should be decided in federal court.

12          And of course, then there's -- the related question

13   is, like, what do you even -- like, what do you even do if there

14   is an oops?  You know, they don't actually disclaim liability

15   for that oops.  Then they think it somehow migrates to the

16   federal case or something.  And all of those problems can be

17   avoided if you simply say that this kind of bifurcation and

18   disclaimer doesn't work, at least in this set of cases.  And

19   that's, of course, exactly what the 4th Circuit said in the

20   Maryland case.

21          And with respect to my colleague, the only person

22   asking you to create a circuit split here today is my friend.

23   Because to decide this case against 3M here, I think will create

24   a circuit split with the fourth circuit in Maryland.  The Raul

25   case was expressly distinguished by the 4th Circuit in that

1   Maryland case.  So you don't have to create a circuit split with

2   the 7th Circuit.  And the California case is, by its own terms,

3   distinguished Maryland as being unique facts.  They weren't

4   quite right about that.  It's not unique.  These are the same

5   set of facts.

6          And then with all due respect to cali -- the -- the

7   California decision, I think the California decision also failed

8   to credit the allegations of the removal petition the way that

9   would be required under this circuit's law.  So I think if you

10  look at the circuit law out there, the only person asking you to

11  create a circuit split is my friend from Maine.

12         One last thing before I sit down, or maybe two.  One,

13  I'm not going to tell the author of Rhode Island One what that

14  decision did or not decide.  I read that decision is essentially

15  saying the allegations in that complaint were about

16  misrepresentations that had nothing to do with the federal

17  contracts.  So that wasn't going to drive the decision.  I think

18  it is worth recognizing that the 4th Circuit had a parallel

19  case, the City of Baltimore case, that didn't stop them from

20  finding there was improper -- that -- that this -- that this

21  parallel case in Maryland was removable.  So I think the

22  greenhouse cas -- cases are distinguishable.

23         The last thing on this antecedent point, that doesn't

24  move the needle.  You could have a purely circular disclaimer

25  that said, we're going to disclaim anything protected by the

23-1709_20251006
October 06, 2025

1  federal defense, and they could say, oh, that's an antecedent

2  question of causation.  It's still the same question.  It

3  belongs in federal court.

4            Thank you for your indulgence.

5            THE COURT:  Thank you.

6            UNIDENTIFIED SPEAKER:  Thank you, counsel.  That

7  concludes argument in this case.

8            (End of recording.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE OF TRANSCRIBER

 2

 3

 4        I, Sarah Albaladejo, do hereby certify that I was

 5   authorized to transcribe the foregoing recorded proceeding; and

 6   that the transcript is a true and accurate transcription, to the

 7   best of my ability, taken while listening to the provided

 8   recording.

 9

10        I FURTHER CERTIFY that I am not of counsel or attorney

11   for either or any of the parties to said proceedings, nor in any

12   way interested in the events of this cause, and that I am not

13   related to any of the parties thereto.

14

15

16        Dated this 25th day of January 2026.

17                     Sarah Albaladejo

18

19                     _____

20                     Sarah Albaladejo

21

22

23

24

25
```

**1**

**1**
   11:24  12:3

**2**

**21**
   15:17
**23**
   15:17
**23-1709**
   3:4
**28-J**
   9:11,12  16:2
   21:16,24
   22:15  23:24
**28-j's**
   12:13

**3**

**3**
   22:18  25:10
**33**
   25:15
**3M**
   3:5,9,13
   21:16  22:1
   23:24  24:4
   25:10,18
   27:23
**3m's**
   5:10  9:23
   19:19  23:3
   25:13

**4**

**4th**
   27:19,25
   28:18

**5**

**500**
   26:7

**7**

**7th**
   7:25  14:23
   26:3,6  28:2

**9**

**900**
   16:3  22:3,24
**9th**
   19:24  20:7

**A**

**abatement**
   8:18  27:2
**accident**
   6:10
**accounts**
   6:14
**Acker**
   19:18
**acknowledge**
   17:21
**acronyms**
   9:20
**actions**
   5:10
**activities**
   4:1,2
**activity**
   3:17,18
**acts**
   5:8
**addendum**
   22:18
**additional**
   9:14

**additive**
   9:5
**address**
   21:16
**adjudication**
   10:20
**admitted**
   25:11  27:7
**AFFF**
   3:21  4:11
   5:24  6:5,24
   9:9,14,17
   10:7,23
   12:17  14:14,
   16,17,18
   15:15  18:1,4
   22:8,20  25:8
   27:7
**affirm**
   14:11
**agree**
   7:12  12:23
**ah-huh**
   18:1
**Air**
   12:14
**allegation**
   8:21,22
**allegations**
   20:3  28:8,15
**allege**
   5:21  8:1,3
**alleged**
   5:24
**allocate**
   4:2  14:17
**allocation**
   20:21  21:1
   25:16
**allotted**
   3:2
**amend**
   22:22,24
   24:2,5
**amendment**
   18:9

**analytically**
   26:1
**announced**
   3:2
**answers**
   6:22
**antecedent**
   18:7  19:7
   25:11,22
   28:23  29:1
**appeal**
   10:25  19:4
   23:14,21
**appellant**
   3:6,9  26:12
**appellants**
   26:16
**appellee**
   14:6,9
**applies**
   11:12
**appropriatenes
s**
   3:14
**area**
   17:1,20
**areas**
   17:3,14
**argue**
   7:18  24:15
**argument**
   15:21  20:5
   25:12,14
   29:7
**arguments**
   7:9
**arise**
   9:13
**asbestos**
   20:13,22
**asserted**
   23:25
**assistant**
   14:10
**attempt**
   16:19

attorney
  14:10
attribution
  16:10 22:17
author
  28:13
authority
  18:21 19:5,
  17
availability
  3:16
avoided
  27:17

─────────

         B

back
  9:19
ball
  25:7
Baltimore
  28:19
base
  12:15 20:17
based
  5:7 10:2
bases
  7:21 15:10,
  11,14,20
  17:5,6
basic
  3:25
basically
  9:25
basis
  26:5
Bauer
  14:10
beg
  23:22
begin
  3:7 14:7
belatedly
  23:21
believes
  3:20

belongs
  6:8 12:7
  29:3
bifurcated
  10:22
bifurcation
  27:17
birds
  27:1
bit
  6:10
bottom
  6:8 12:8,9
broad
  18:15
broader
  15:22
brought
  4:20
Brunswick
  12:14,15
  17:3,10 18:3
built
  25:7

─────────

         C

cali
  28:6
California
  19:25 28:2,7
called
  3:1
calls
  14:1
candor
  17:16
Canon
  23:1
Caremark
  5:8
Caremark's
  5:8
cas
  28:22

case
  3:4 4:4,17
  5:6,10,13,14
  6:1,6,11,23
  7:14,19,25
  8:2,3,8,12
  9:11 11:19
  13:8 14:12,
  17,25 15:15
  16:7,23
  17:9,21,24,
  25 19:18
  20:1,2,5,8,
  19,22,24
  21:2,10,18
  22:3,6,23
  23:8,11
  24:10 25:4,
  25 27:16,20,
  23,25 28:1,
  2,19,21 29:7
cases
  3:1 10:22
  20:21,22
  27:18 28:22
causal
  18:12 19:4
causation
  18:6,10
  19:1,7,8
  25:10,11,17,
  18,21 29:2
caused
  9:17,18
caution
  25:5
change
  21:3,15
charge
  19:16
charged
  18:21,24
  19:2,5
chemical
  7:11 10:1
  24:1
choice
  18:10

chosen
  20:3
circuit
  7:25 14:23
  18:12,15
  19:25 20:7
  26:3,4,6
  27:19,22,24,
  25 28:1,2,
  10,11,18
circuit's
  28:9
circuits
  18:13,14
circular
  5:1 7:3,6
  28:24
Citco
  21:6
City
  28:19
claim
  4:14,17
  11:2,3,11,13
  25:24
claims
  11:10
clear
  17:19 18:11
Clement
  3:8,12 4:7,
  15 5:12 7:16
  9:22 11:22
  12:2,22
  13:5,14,16,
  19,22 14:4
  19:11 26:15
clever
  5:2
client
  7:18
climate
  21:3
CO2
  21:3
colleague
  27:21

**colorable**
  4:10 10:18
**commingled**
  14:14,24
  15:10 17:20
  23:11
**commingling**
  15:4 17:22
  23:25
**comp**
  21:18
**companies**
  20:15 21:3
**Company**
  3:5
**complaint**
  6:12,13,20
  8:16,17 9:6,
  7,8,19 13:15
  16:18,25
  17:6,19 20:4
  21:18 23:7,
  8,10 24:2,6
  26:18,19,21
  28:15
**complaints**
  6:15
**compounds**
  10:1
**concede**
  16:21
**conceding**
  24:12
**concludes**
  29:7
**conclusion**
  24:5
**conduct**
  18:21,24
  19:2,5,16
  20:16 21:8
**confronted**
  11:5
**Congress**
  18:16
**congressional**
  18:10

**consequences**
  12:24
**conservative**
  20:20
**consistent**
  20:7,11
**construct**
  8:16
**contamination**
  5:24 8:4
  9:2,17,18
  10:3 11:24
  14:15,24
  15:10,13,16,
  22 16:4,17,
  22 17:1,4,
  14,20 22:8
  26:21,22
**contest**
  6:24
**context**
  4:21 11:5
**contract**
  21:6
**contracting**
  8:5 10:9
**contractor**
  10:13
**contracts**
  5:9 28:17
**contributed**
  5:23
**corner**
  7:20
**correct**
  15:6 24:4
**costs**
  8:19 27:3
**counsel**
  3:3,5 11:20
  14:5,6,9
  16:6,9 17:8
  18:8 23:16,
  20 26:11,12
  29:6
**counts**
  6:13

**County**
  19:18
**couple**
  5:15 15:16
  27:8
**court**
  3:11,15
  4:10,12,13,
  20 5:2,4,16
  6:8,18,23
  7:7 8:7,13
  9:13,15,16
  10:18 11:19
  12:7,25
  13:2,3,9,17,
  24 14:2,8,11
  16:2,12
  18:18,20,23
  19:10,13,15,
  18,21 20:2,
  6,11,18,21,
  23,25 21:6,
  13,15,20,22,
  24 22:1,10,
  13 23:1,3,14
  24:8 25:7
  26:8,10
  27:11 29:3,5
**court's**
  14:11
**courts**
  3:24 11:4
**crafted**
  6:12
**create**
  11:16 26:3
  27:22,23
  28:1,11
**creates**
  19:4
**credit**
  5:17 28:8
**crediting**
  20:1
**critical**
  5:15
**cross**

  16:4,17,22
  17:4,14 18:5

---

**D**

**date**
  13:3
**day**
  9:25
**debate**
  6:4,5 10:18
  12:21
**debating**
  4:21,23
**decide**
  20:6 27:23
  28:14
**decided**
  27:11
**decision**
  14:11 18:9,
  13,17 28:7,
  14,17
**decisions**
  20:13
**declaration**
  16:5 22:4,17
**defeat**
  3:21 5:3
**defect**
  11:11
**defendant's**
  20:2
**defense**
  3:17,19
  4:11,17,22
  5:3 6:9 7:5
  10:19,21
  11:12 12:10,
  21 18:7
  19:3,8,13
  23:4 24:1
  25:6,9,17,
  20,21,23
  27:10 29:1
**depart**
  16:10

Department
    22:5
describe
    15:16 16:25
    17:24
design
    11:11
determination
    24:25
determine
    3:16 6:1
    12:11 15:6
    18:20 19:11,
    15 24:4
determined
    24:8
determines
    19:14
determining
    27:8
di
    7:12
direct
    13:7
directed
    6:13
disagree
    18:14 24:20
    25:2,3
disclaim
    7:4 8:10
    11:12 16:19
    27:6,14
    28:25
disclaimed
    4:25 12:9
    14:14 20:16
    21:7
disclaimer
    3:22 4:22,24
    5:1,6 6:21,
    23 7:1,2,8,
    12,14,24
    8:11,15 9:10
    11:3,4 12:20
    14:12,13,22
    16:20 17:23

18:5,19
    20:19,20,23,
    24 21:8,11
    24:17,19
    26:19 27:5,
    18 28:24
disclaimers
    11:7,8,14
    20:12
disclaiming
    3:21 11:15,
    25 12:1,11
    25:8
discovery
    9:12 13:22
    17:2,25
    22:22,25
discrete
    16:24
discuss
    18:9
disentangle
    4:1
dismiss
    26:5
dispute
    5:19 9:8,23
    10:12,13
    12:7,9,13,
    18,19 19:19,
    20,23
disputes
    9:13 11:1
    12:5 13:10,
    18
disputing
    19:4
disregard
    20:2
distinct
    10:7
distinguish
    9:24
distinguishab
le
    28:22

distinguished
    9:19 27:25
    28:3
distribution
    18:24
district
    13:2 14:2,11
    23:14
drafted
    17:19
drive
    28:17
due
    28:6
Dupont
    6:14

━━━━━━━
        E
━━━━━━━

effect
    13:2
eliminate
    24:3
embrace
    18:17 23:1
embraced
    20:22
emissions
    21:4,5
emphatically
    5:16
end
    9:25 29:8
endeavor
    3:9
ends
    5:25 9:3
energy
    21:3
engage
    20:25
ensure
    25:5
entitled
    10:13

environment
    7:11 21:5
Environmental
    22:5
essential
    13:7
essentially
    4:8,16,23
    6:7 10:23
    13:7 27:6,9
    28:14
established
    16:7
evidence
    9:16
exact
    20:5
examine
    22:16
exception
    23:12
exchanged
    13:25
excuse
    16:6,11 17:8
explanation
    3:23
express
    5:2,5,16
    6:11,17 8:14
    14:12 18:19
    20:1 26:18
expressly
    17:7 19:10
    20:15 21:7
    27:25
extent
    9:13 13:25
extremely
    18:15

━━━━━━━
        F
━━━━━━━

face
    7:6
facility
    9:3

fact
  11:25  12:11
  14:16  15:5
  16:4,5  17:6
  20:23,25
  22:6,9
facts
  5:14  22:16
  23:13  28:3,5
factual
  9:23  10:12,
  13  12:4,18
  13:10,18
failed
  28:7
failure
  11:11
fair
  23:10
farmers
  26:23
farmers'
  9:1,4
fed
  11:10
federal
  3:15,16,17,
  19,22,25
  4:2,10,14,
  17,18,20,22
  5:3,22  6:5,
  8,9,23  7:5
  8:4,7  10:13,
  14,18,19,20,
  23  11:2,12,
  19  12:5,7,
  10,17,21
  13:8  14:13
  15:7  18:7,21
  19:2,5,7,13,
  15,17,19
  21:8,9  24:1,
  8  25:6,9,17,
  20,22  27:10,
  11,16  28:16
  29:1,3
federally
  6:2

fertilizer
  15:23
field
  26:23
fields
  9:1,5
figure
  22:19
file
  4:13
filed
  3:23  21:16
filing
  3:20  4:3
find
  6:17  9:22
finder
  12:11  14:16
  20:25
finding
  28:20
fingerprint
  10:6
fish
  26:23,24
focus
  4:5
Force
  12:14
forever
  7:10  11:13
form
  3:15  17:4
forum
  10:14
forward
  10:25  14:2
found
  18:2,4
fourth
  27:24
free
  20:2
friend
  8:9  10:11
  27:22  28:11

friends
  6:11

---

## G

gambit
  3:24
gas
  21:4
gave
  7:24
general
  14:10
give
  7:17
good
  3:8  18:4
  25:1
government
  5:9  10:9
greater
  17:16
greenhouse
  21:4  28:22
guess
  12:18

---

## H

Hampshire
  20:5  25:12
hard
  7:16  8:16
  9:9
harder
  7:19  8:8
harm
  4:5
Harrison
  19:25
hearing
  15:6
held
  21:6
Heldy
  18:12

helpful
  6:18  8:13
Honor
  3:8,13  14:4
  26:9
Honors
  20:4
hundreds
  22:6,7

---

## I

idea
  23:1
Illinois
  14:23  21:12
  26:6
imaginable
  7:22
improper
  28:20
include
  16:3  20:3
includes
  26:25
incorporated
  25:14
indiscernible
  17:13
indistinguish
able
  21:10
indivisible
  5:18,20  6:16
  8:3,20  20:14
indivisibly
  21:5
indulgence
  29:4
inevitable
  22:2
inject
  23:21
injuries
  8:19

injury
  6:16  8:18
  20:14
inseparable
  7:10
inseparably
  5:23
instructed
  8:14
interrogatori
es
  13:25
interrupted
  23:22
introduce
  3:6  14:7
investigate
  24:3,5
investigation
  8:18  22:19
  24:23  27:3
invite
  26:17
Island
  20:23  21:2,3
  28:13
issue
  4:17,21,23
  5:6,25  6:7,
  8,15  7:23,25
  8:11  9:15
  11:17  13:9
  14:24,25
  15:2,15
  16:21  17:6,
  21  18:7,24
  19:1,6,7,9,
  11  20:6
  23:11  25:6,
  10,11,16,17,
  18,21,22
issues
  18:18  24:7

---

**J**

Jefferson
  19:18
joined
  14:9
jointly
  5:8
judge
  4:3,7  11:20,
  22,23  12:22
  13:5,13,16,
  21  14:2,3,
  19,21  15:3,
  19,21,25
  16:6,9,12,
  14,16  17:2,
  8,10,13,16
  18:8,12  19:9
  20:7,10
  23:16,18,20,
  22,24  24:14,
  18,20,22,25
  25:13,15
judgment
  14:1
jumps
  25:15
Juni
  21:17
Juniper
  21:17  22:14,
  20,23  23:12
jurisdiction
  3:22  10:24
  13:2  14:13
  21:9
jury
  14:20

---

**K**

kind
  5:1  7:24
  8:11  9:9
  10:12  11:13

---

  12:1  27:17

---

**L**

la
  12:12
landfill
  21:17
latest
  21:16
law
  11:10  18:15
  28:9,10
lawsuit
  3:14  11:15,
  16  14:25
  19:24
lawsuits
  3:20  4:4
lawyer
  25:13
leaches
  7:11
letter
  21:16,24
  22:15
letters
  9:11,12  16:2
  23:24
level
  13:23,24
liability
  3:21  7:4
  27:14
list
  17:5,10,25
listed
  17:7,11,14
listen
  25:12
lists
  9:20
litigation
  6:5  9:15,17
  15:1
locations

---

  16:24,25
LUNCH
  18:8
Lynch
  11:22  12:22
  13:5,13,16,
  21  14:3
  16:6,9,12,
  14,16  17:2,
  8,10,13,16
  19:9  20:7,10
  23:16,18,20,
  22,24  24:14

---

**M**

made
  18:11
Maine
  3:4,13,20,23
  4:3,4,6,25
  7:13,20  8:20
  9:1  14:9
  17:17  22:8
  28:11
make
  9:8  17:19
  24:25
makes
  11:3
manner
  11:17
mark
  10:7  14:10
marker
  10:23
Maryland
  27:20,24
  28:1,3,21
masters
  23:7
Matt
  14:8
matter
  16:20  19:22
  25:4

---

matters
7:3 12:25
26:2
MDL
19:21
means
15:6 18:21
19:12
meant
21:8
mesothelioma
20:15
met
24:11,12
migrates
8:22 27:15
military
4:11 7:21
15:9,14,20
17:5,6,11
20:17,18
million
9:20
MILSPEC
14:16,18
19:3,4,22
25:8
minute
7:8 25:15
minutes
3:10
misrepresenta
tions
28:16
mistake
22:13
mixed
21:5
modest
21:11
Moore
18:8
morcel
12:3
Morgan
19:17

morning
3:8
move
26:24 27:1
28:24
multi-
district
15:1
municipal
12:15 17:10

**N**

named
21:18 22:24
natural
8:20
nature
13:14
Navy
21:7
nearby
15:11,16,20
needle
28:24
negotiated
5:8
nexus
18:20 19:5
nitrate
9:5
non-afff
9:18 10:8
14:15,17
15:12
non-federal
4:19 11:3
non-federally
6:2
non-tr
5:24
nonfederally
4:5
noticed
21:4

null
13:3,24
number
3:4 24:1
numerous
20:15

**O**

object
23:19
objection
6:6
obligations
19:20
obvious
3:15
occurred
20:17
office
21:9
officer
14:13 15:7
18:7 19:3,13
25:6,20,21,
22
official
5:8
ongoing
9:12 11:1
oops
17:25 18:4
22:3,11
27:8,9,14,15
opinion
6:19
opportunity
23:13
option
4:13,16
oral
20:5 25:12,
14
order
13:1 19:10
original

11:6

**P**

pages
15:17
parallel
28:18,21
pardon
23:23
part
7:17 8:23,24
11:2,6
pass
7:5
Paul
3:8 26:15
Pawa
14:8,20,22
15:8,20,24
16:1,7,10,
14,23 17:5,
9,12,15,18
18:17 19:15
20:9,11
21:14,19,21,
23,25 22:2,
12,14 23:6,
17,19,21
24:9,15,19,
21,24 25:3
26:9
penultimate
12:13
percent
11:24 12:3
percentage
3:19 4:2
permitted
5:7
person
27:21 28:10
pet
5:21
petition
5:17,22 28:8

**PFAS**
3:13,17,18,
19,25 4:18,
19 5:22,23
7:10 8:4,23
9:9,14,17,
20,21 10:7,8
12:1,5 15:12
17:1 18:25
22:7
**phonetic**
18:12 25:13
**phrase**
5:23 6:16
**picked**
7:20
**place**
18:2 27:4
**plainly**
9:15
**plaintiff**
11:8 20:3,
14,17 21:7
**plant**
8:24
**plausibility**
24:12
**plausible**
3:23 23:25
**plead**
16:23
**pleading**
5:3
**podium**
3:6
**point**
5:23 6:18
16:5 22:4
25:1 28:23
**points**
26:16
**pos**
23:3
**position**
6:3 9:24
11:21 15:3,9
18:22 23:3

**potential**
16:22
**potentially**
22:7
**precludes**
14:13
**precluding**
18:22
**preclusion**
11:17
**prepare**
23:14
**presence**
10:23
**presenting**
20:5
**pretty**
4:20 6:25
**prevail**
10:25
**previously**
3:2
**private**
3:18 4:1 5:9
**problem**
8:1,23
**problems**
11:17 27:16
**proceed**
13:8 14:2
**proceedings**
13:3,23
**process**
20:1
**processes**
8:24
**produced**
4:11
**production**
18:24
**products**
18:25
**proper**
12:23 20:19
23:17

**protected**
7:5 28:25
**Protection**
22:5
**proximity**
10:3
**proxy**
12:20,21
**Puerto**
5:7 18:19
20:8,11
**purely**
28:24
**purposes**
19:3
**put**
25:6 26:19,
22,24

———

**Q**

**question**
6:20,22 7:1
8:6,14 9:23
11:7 16:13,
15 18:6
19:14 27:10,
12 29:2
**questioning**
25:13
**questions**
3:25
**quick**
26:16
**quote**
5:7 15:11
22:6 25:18

———

**R**

**raise**
23:4
**Raul**
7:25 8:11
25:25 27:24
**reach**

18:16 24:5
**read**
18:8 21:20
26:17 28:14
**reading**
23:10
**real**
11:8
**reason**
4:8
**rebuttal**
3:10 26:14,
16
**received**
22:15
**recent**
18:13
**recently**
19:25 23:1
**recognize**
10:22
**recognized**
5:2
**recognizing**
28:18
**record**
3:7 14:7
23:17 26:13
**recording**
29:8
**recover**
5:7 7:22
11:9,16
**recovery**
8:18 14:14
20:16 26:23
27:2
**refer**
19:24 20:4
**referred**
20:12
**regard**
4:4
**reintroduce**
26:13
**related**
4:5 9:20

10:8 18:11,
15 19:2,9,11
27:12
**relationship**
4:18 19:16
**rely**
18:14
**remain**
13:11
**remand**
13:1 19:10
**remediation**
3:14
**remedy**
12:23,24
**remote**
7:20 8:2
**removability**
6:24
**removable**
6:20 8:15,17
28:21
**removal**
5:17,21 8:5
18:22 19:12
28:8
**remove**
24:10 25:4
**removed**
6:6 11:19
**repeated**
18:13
**repeatedly**
16:25
**reply**
15:17
**required**
20:21,25
28:9
**requires**
3:24 18:20
**resolved**
10:14
**resources**
8:20
**respect**
4:15,25 7:2

27:21 28:6
**respectfully**
15:8 16:23
17:18 18:22
24:9
**responses**
22:22,25
**responsibilit
y**
12:1
**reverse**
13:1,7
**rewrite**
20:3
**Rhode**
20:23 21:2
28:13
**Rib**
22:14
**Rickleman**
25:13,15
**Rico**
5:7 18:19
20:8,11
**rid**
8:25
**Ridge**
21:17 22:20,
23 23:12
**road**
11:17
**Royal**
23:1
**rule**
20:7
**ruled**
13:17 20:23

_____

**S**

_____

**save**
3:9
**scope**
4:21,24 6:9
10:20 12:10,
19,21 19:19,
24 27:10

**Script**
6:11,17
26:18
**Scripts**
5:2,5,16
8:14 18:19
20:1
**section**
24:13
**seeking**
14:16 26:23
27:2
**seeks**
8:18
**sense**
7:3
**separate**
9:9 15:5
**separated**
3:18
**series**
16:1,3,24
20:13 23:24
**service**
20:18
**set**
11:1 12:13
27:18 28:5
**shielded**
3:19
**show**
18:1
**simpler**
10:17
**simply**
3:13 9:10
13:1 27:17
**single**
3:14 10:16,
20
**sit**
10:15 28:12
**site**
7:20,23
14:24 16:3,
17,19 18:6
21:18 23:4

26:1,5,7,25
27:1,4
**sites**
13:10 14:14
16:3,21,24
22:3,7,23
23:11 24:2,
3,10 26:2,7
27:8,9
**sits**
17:23
**sludge**
8:25 9:1,4
15:23 26:22
**solution**
11:18
**sort**
5:2 7:17
8:24 9:14
10:2,6,22
12:6 13:7,8
**source**
10:3,4 11:2
16:10 22:17
**sources**
9:14,18
**SPEAKER**
3:1 14:5
26:11 29:6
**specific**
6:14 8:21,22
9:2 27:4
**specifically**
5:5
**speculate**
10:4
**speculating**
24:16
**split**
26:3 27:22,
24 28:1,11
**spreading**
9:3
**stake**
25:24
**standard**
18:12 24:12

start
  8:13 26:19
started
  10:21
starts
  9:2
state
  3:4 4:5,13
  7:21 9:4,13,
  15,16 11:10
  12:25 13:3,
  17,24 14:9,
  14,23 17:17
  18:20,23
  19:10 21:12
  22:5,18,21
  25:7
State's
  14:12 26:17
stated
  16:16
statewide
  8:12,17
  15:4,13
  26:21 27:3
statute
  18:9
stay
  26:24
stop
  28:19
straight
  7:6
straightforwa
rd
  4:20 6:25
streams
  12:6
stuff
  8:22 9:7
subject
  21:15
submit
  23:13
sued
  3:13 15:14
  20:14 21:3

suffice
  6:21
sufficient
  16:20
suggest
  15:22
suggested
  19:11
suggests
  22:1
suing
  16:17
suit
  3:15,22 4:9
  6:24 10:16
suits
  3:24
supply
  12:14,15
  17:11
suppose
  8:5 12:23
  24:18,20
Supreme
  19:18 22:25
surely
  16:20

---

**T**

table
  14:9
talking
  8:17 15:18,
  23 25:16
talks
  26:21
tees
  25:19,20
term
  18:16
terms
  9:8 28:2
test
  7:6

themself
  26:13
theory
  5:17 15:22
  20:2
there'd
  8:6 13:11
thing
  6:17 22:20
  26:5 28:12,
  23
things
  5:15 14:1
thinking
  7:8
Thompson
  4:3,7 11:20,
  23 14:19,21
  15:3,19,21,
  25 24:18,20,
  22,25
thought
  10:15
thousands
  22:7
three-minute
  26:13
time
  3:5 14:6
  20:17 26:10,
  12
times
  3:2 6:13
  8:19 15:17
timing
  6:10
today
  3:4 15:21
  27:7,22
Today's
  3:1
Topsham
  12:16
treatment
  8:24 9:3
twin
  6:24

---

**U**

U.S.
  22:25
ubiquitous
  15:13 26:22
ultimately
  5:12
umbrella
  17:24
understand
  4:7
understanding
  13:19
undisputed
  22:9
UNIDENTIFIED
  3:1 14:5
  26:11 29:6
uniformly
  21:5
unique
  28:3,4
unrebutted
  16:5 22:6,9
unrelated
  22:8

---

**V**

valid
  10:19 14:12
  18:21 20:12
  21:9
Vermont
  22:21
verse
  19:25
versus
  10:3,7
void
  13:4,24

23-1709_20251006
October 06, 2025

---

### W

---

**wait**
  25:15
**wanted**
  13:9
**warn**
  11:11
**wastewater**
  8:23 9:3,4
**water**
  8:25 9:14
  10:2,3 12:6,
  14,15 13:10
  17:10
**week**
  22:15
**wildlife**
  26:24,25
**Willingham**
  19:17
**word**
  15:16 16:24
  18:10,11
**work**
  3:10 7:13,14
  10:24 11:7
  25:7 27:18
**works**
  8:12 12:4
**worth**
  28:18
**written**
  9:8
**wrong**
  19:12

---

### Y

---

**years**
  22:21