IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

STATE OF MAINE,

        Plaintiff,

  v.

3M COMPANY, ET AL.,

        Defendants.

Case No. 2:25-cv-00453-JAW

**DEFENDANT 3M COMPANY'S SUR-REPLY IN OPPOSITION TO PLAINTIFF**
**<u>STATE OF MAINE'S MOTION FOR LEAVE TO AMEND</u>**

# INTRODUCTION

The Court should deny the State's post-appeal request for leave to amend its complaint as a transparent (and ineffective) attempt to forum shop. The State's reply and accompanying third iteration of its proposed amendments, Dkt. 77 & 77-1, underscore the very reasons that 3M opposed the State's original proposal.

*First*, the State's third attempt to alter the scope of this case serves only to illustrate the State's gamesmanship and undue delay. On reply, the State doubles down on its prior admission that it seeks amendment "to avoid transfer to an MDL," Reply 1, and, even more strikingly, refuses to deny that it is "secretly laying the groundwork for a renewed remand motion." *Id.* at 5. The State's bad faith effort to manipulate the forum is reason alone to deny leave. *See Hatch v. Dept. for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001). But its most recent maneuvers further demonstrate its dilatoriness. The sites the State seeks to disclaim in both the original and reply versions of its proposed complaint are ones it now admits it could have identified through the MDL (because, as a party, it is permitted access to discovery) well before it first moved to amend. This lack of diligence is likewise reason enough to deny the State's motion.

*Second*, even this third version of the proposed amendments would be futile in precluding transfer to the AFFF MDL or achieving remand. The First Circuit squarely held that this case, in which the State "broadly alleged" PFAS contamination "statewide," belongs in federal court. *Maine v. 3M Co., Inc.*, 159 F.4th 129, 130, 138 (1st Cir. 2025). The court also observed that "further proceedings" in this case should occur in the MDL court alongside the "almost-identical" suit the State brought against 3M for alleged PFAS contamination from AFFF if "the Judicial Panel on Multidistrict Litigation chooses to transfer this case." *Id.* at 130–31. The State's proposed amendments on reply neither change the nature of the State's statewide case nor eliminate 3M's plausible allegations of commingled AFFF and non-AFFF PFAS. And the State's additional

1

disclaimers of recovery "at or from" even more sites, Dkt. 77-1 ¶ 15, do not make litigating two almost-identical suits in two different fora any less "untenable." Transfer Order at 3, *In re AFFF Prods. Liab. Litig.*, MDL No. 2873, ECF No. 1020 (J.P.M.L. June 7, 2021) (transferring Michigan's purportedly "non-AFFF" case). The State's third iteration of its proposed amendments will not change the outcome of the JPML's early April decision whether to transfer this statewide case to the MDL or furnish the State with a second stab at remand.

*Finally*, the State's attempt to disclaim another batch of sites on reply confirms the unfair prejudice to 3M. In its January 13 opposition, 3M observed that the State's amendments to disclaim seven sites with "mixed AFFF and non-AFFF contamination," Dkt. 53-1 ¶ 15, "invite serious administrability problems." Opp. 14. Within just two months, the State sought to disclaim in its third version of its proposed amended response fourteen *additional* sites from its "statewide non-AFFF Complaint." *Maine*, 159 F.4th at 138. The State did not even feign that this would be its final effort to disclaim sites at issue in this case: just two days ago it filed an (ineffectual) fourth supplemental disclaimer purporting to strike twenty more sites from this case. This is all by design. Maine admitted to the First Circuit that it is playing a game of "oops": "Like oops, in discovery, did we list a case where they can say, a[ha], we can show there's AFFF there. . . . Oh, well, that may have been an oops . . . We're going to cross that off." Ex. 78-1 at 17–18. Maine asks for a blank check to proceed in this fashion indefinitely, disclaiming sites in this case and seeking instead to recover for them in the MDL. That approach guarantees the precise inefficiencies and litigation disorder that weigh in favor of denying leave to amend. This court should "refuse to allow [the State] an endless number of trips to the well." *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 58 (1st Cir. 2006).

For each of these reasons, this Court should deny the State's motion.

**ARGUMENT**

**I.      The State's Request Should Be Denied On The Basis Of Its Delay And Gamesmanship.**

The State's reply and third version of its proposed amended complaint underscore its improper delay and gamesmanship. The Court should not countenance such blatantly "improper[ ] maneuvering for a do-over." *Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 390–91 (1st Cir. 2013).

As 3M explained in its opposition to the first version of the proposed amended complaint, Opp. 8–9, the State has been on notice that its case implicates sites plausibly contaminated by AFFF since 3M first removed to federal court almost three years ago. Instead of using the intervening time to investigate—including by consulting the record in the AFFF MDL—the State sat on its hands and instead is playing a game of "oops," whereby it largely waits for 3M to conduct diligence and only then tries to disclaim any site 3M identifies as plausibly affected by AFFF. *See* Dkt 78-1 at 17–18. Indeed, the sites it seeks to disclaim in both the original and reply versions of its proposed complaint are ones it recently admitted it could have identified before it first moved to amend simply by searching the MDL docket. Maine's Br. in Supp. of Mot. to Vacate Conditional Transfer Order at 7–8, *In re AFFF Prods.*, MDL No. 2873, Dkt. 26-1 (Jan. 22, 2026). That flagrant failure to conduct the "due diligence" the First Circuit requires alone warrants denial of leave to amend. *Aponte-Torres*, 445 F.3d at 58; *see also In re Insulin Pricing Litig.*, 2025 WL 3022535, at *2 (D.N.J. Oct. 29, 2025) (denying motion to amend where plaintiff "has not sufficiently justified" its delay, and the "timing of the motion" after "an adverse decision from the First Circuit" suggested "that Plaintiff is engaging in gamesmanship to escape MDL jurisdiction").[1]

---

[1] To the extent the State suggests that 3M acquiesced to this whack-a-mole approach by telling the Maine state court "that sites with plausible AFFF commingling should be 'excluded from this case,'" it mischaracterizes 3M's position. Reply 6–7. "Although [3M] dispute[d] the effectiveness of [the State's purported] disclaimer," it simply asked the state court to require the State to first identify and disclose basic information about the sites at issue before setting a case schedule. *See* Dkt. 12-11 at 5–6. Once identified, 3M could then "assess the scope of discovery needed to

3

That this Court should deny the State leave is reinforced by the State's concession that these requested amendments are designed to manipulate the forum post-appeal—whether by attempting to avoid transfer to the MDL or by trying to "lay[] the groundwork" to seek a second remand. Reply 2, 5, 10. As 3M explained in its opposition, Opp. 9–10, Rule 15 empowers courts to deny bad-faith amendments, including when confronted with clear evidence of forum manipulation. *See* 6 Wright & Miller, *Federal Practice & Procedure* § 1487 (3d ed. 2025); *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 923 n.2 (8th Cir. 2023).[2]

The State is wrong to suggest that *Royal Canin U.S.A., Inc., v. Wullschleger*, 604 U.S. 22 (2025), eliminated the court's discretion to deny leave to amend when a party engages in gamesmanship or forum manipulation. Reply 4. It did no such thing. In *Royal Canin*, plaintiffs amended their complaint as of right under Rule 15(a)(1)(B). The footnote on which the State hangs its argument explicitly addressed whether forum-manipulation concerns bear on a court's decision to *remand* after amendment as of right—not, as the State suggests, whether such concerns bear on a court's discretion to grant leave to amend in the first place under Rule 15(a)(2). The Eighth Circuit decision that the Supreme Court upheld made clear that courts can and should "withhold 'leave' to amend" precisely to "curb[] potential forum manipulation." *Wullschleger*, 75 F.4th at 923 n.2.

---

determine whether those sites were contaminated by AFFF . . . which would mean they should, *at minimum*, be excluded from this case." *Id.* (emphasis added). Transfer to the MDL would eliminate the very discovery inefficiencies from litigating two overlapping cases in separate courts that 3M highlighted here.

[2] That is what sets this case apart from the district court cases the State cites in footnote 3 of its Reply—those cases lacked the clear history demonstrating the amendments were proposed in bad faith. And the Ninth Circuit decision the State cites reviewed the propriety of a remand order under 28 U.S.C. §§ 1331, 1332, and 1367, not an amendment order under Rule 15.

4

Permitting amendment will not serve the interests of justice. The Court should deny leave under Rule 15 based on the State's three-year delay and bad faith post-appeal.

**II.     The State's Proposed Amendments Are Futile In Achieving The State's Aims.**

The State's motion for leave to amend its complaint to the "updated version" submitted on reply, Reply at 2, should also be denied because it is "futile" in achieving either the State's explicit objective of avoiding transfer to the MDL or its implicit aim of renewing its motion to remand to state court. *Maine State Bldg. & Constr. Trades Council, AFL-CIO v. U.S. Dep't of Lab.*, 359 F.3d 14, 19 (1st Cir. 2004).

***Transfer to AFFF MDL.*** The State's third proposed amendment still would not preclude transfer to the MDL: The JPML regularly transfers cases where a state's attempt to split its case into two nearly identical suits is untenable. Maine's repeated inability to separate its non-AFFF and AFFF claims likewise warrants transfer to the MDL—an issue that the JPML will decide by early April. The State cannot end-run that decision based on its (now thoroughly debunked) theory that its proposed revisions to its pleading excise AFFF from this case.

JPML precedent is clear that transfer is warranted when a state's "attempt to separate [its] non-AFFF and AFFF claims is untenable." Transfer Order at 3, *In re AFFF*, MDL No. 2873, ECF No. 1020 (J.P.M.L. June 7, 2021). Contrary to the State's arguments, Reply 9, the JPML transferred statewide "non-AFFF" cases brought by Michigan, Illinois, and Oklahoma precisely because of "overlap with actions pending in the MDL." Transfer Order at 3–4, *In re AFFF*, MDL No. 2873, ECF No. 1020 (Michigan); Transfer Order at 2–4, *In re AFFF*, MDL No. 2873, ECF No. 1927 (J.P.M.L. June 5, 2023) (Illinois); Transfer Order at 3, *In re AFFF*, MDL No. 2873, ECF No. 4061 (J.P.M.L. Dec. 11, 2025) (Oklahoma). The State's reply amendment does not and cannot eliminate the overlap between the State's case pending in this Court and its case in the MDL.

As 3M has alleged—and the First Circuit has confirmed—the State's attempt here at

5

separating AFFF from non-AFFF claims is untenable because of the plausible commingling of PFAS throughout Maine. Nothing in the State's proposed amendments changes the nature of the State's "broad" and "statewide" case. *Maine*, 159 F.4th at 140 n.24. The State identified over 800 sites across Maine "at or from" which it alleges that the State's natural resources and the environment were contaminated by PFAS. The State has repeatedly, but unsuccessfully, attempted to disclaim all sites where AFFF is allegedly present. Tellingly, the State just two days ago filed yet another purported "disclaimer" of *twenty* sites with plausible AFFF commingling. Dkt. 81. By making this fourth disclaimer, the State all but concedes that its attempts to disclaim all AFFF in the third version of its proposed complaint does not even come close. These repeated efforts underscore that it is not readily possible to disentangle AFFF PFAS from non-AFFF PFAS in a statewide suit.

Two sites the State purports to disclaim on reply illustrate the futility of its efforts to disclaim AFFF contamination site by site. Take the Kennebec Water District. In the third version of its proposed amended complaint, the State purported to disclaim recovery for alleged PFAS contamination "at or from" that water district. But it continued to pursue claims for China Lake, the water source for the Kennebec Water District, which the District alleges in the MDL is contaminated with PFAS from AFFF. Likewise, in that third version, Maine purported to disclaim the Sanford Water District. But it continued to pursue recovery for PFAS contamination of the Mousam River, which the Sanford Sewerage District alleges is contaminated with AFFF. Just these two examples, from sites the State purports to disclaim in this third proposed amendment demonstrate that Maine cannot eliminate plausible AFFF contamination from this statewide suit.[3]

---

[3] The State's purported "fourth supplemental disclaimer" included China Lake and the Sanford Sewage District. Dkt. 81 at 1–2. But this Court was clear: "*No* further briefing of the motion to amend is permitted." Dkt. 79 at 3 (emphasis added). That *fourth* disclaimer is no exception.

Even if the State disclaims particular sites with plausible AFFF contamination, that does not end the inquiry into the scope and extent of AFFF contamination "at or from" the disclaimed sites, including its impact on other sites and natural resources throughout the State. This is particularly salient in view of the sites the State purports to disclaim on reply. For example, it now tries to disclaim recovery "at or from" the entire Portland Water District, Dkt. 77-3 ¶ 15, a major regional utility which encompasses water-related services (supply, distribution, sewage, and irrigation) for eleven communities along the coastline and neighboring the Presumpscot River (for which the State continues to seek relief). As the State's own proposed amended complaint alleges, PFAS contamination "migrate[s] long distances through soil and groundwater," Dkt. 77-1 ¶ 37, so disclaiming recovery for the District itself does not eliminate the inquiry into the scope of the alleged AFFF contamination throughout its service area or whether it is a source of contamination at other sites or resources. So AFFF remains implicated, even under the State's proposed amendments.[4]

**Remand to State Court.** The State's "updated" proposed amended complaint is also futile because it will not result in remand. Remarkably, the State refuses to deny that it is "secretly laying the groundwork for a renewed remand motion." Reply 5. Instead, the State maintains it "has not made any decision to seek another remand." *Id.* This equivocation is bad faith in and of itself.

---

Regardless, it has no effect. As 3M explained in its motion to strike the State's third proposed amended complaint, plaintiffs cannot "effect a mid-litigation disclaimer" or "amend their complaint on the fly." *W. Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*, 140 F.4th 188, 196, n.4 (4th Cir. 2025)); *see* Dkt. 78 at 1, 3–5.

[4] The State's citation of a prior JPML order, Reply 3, is inapposite: It was brought by a firefighter who alleged injuries "stemming from PFAS contained in the firefighter's protective clothing, not AFFF." Reply 3–4 (citing Order Denying Transfer at 3, *In re AFFF*, MDL No. 2873, ECF No. 3260 (J.P.M.L. Feb. 12, 2025)). That circumstance is worlds apart from this case—a state seeking to recover for alleged "broad[,] statewide" environmental contamination in two overlapping cases in two different fora. *Maine*, 159 F.4th at 140 n.24.

By saying it has not reached a decision, it tries to take the gamesmanship arguments off the board *now*, knowing that if the court grants amendment, the State will argue that the court can no longer consider the State's bad-faith motives in deciding whether to deny remand. But there can be no serious question that a second bite at the remand apple will be the State's next tactic if permitted to amend; the State's private lawyers recently initiated a similar gambit on behalf of the State of Vermont in an attempt to defeat federal jurisdiction there. *See* Opp. at 11 n.5.

Regardless whether the State is lying in wait, or, as it says, awaiting "an impending Supreme Court decision," Reply 5, this third version of the State's proposed complaint continues to allege contamination statewide and therefore would not enable the State to secure remand. *See* Opp. 10.[5] The First Circuit held that courts "must credit" plausible allegations "that PFAS contamination from sources for which 3M admittedly has a federal contractor defense has commingled with and so has become in[di]visible with the PFAS contamination . . . broadly alleged in Maine's statewide non-AFFF Complaint." *Maine*, 159 F.3d at 138.[6]

### III. The State's Gamesmanship And Its Proposed Amendments Unfairly Prejudice 3M.

The State's iterative proposed amendments unfairly prejudice 3M and thus independently warrant denial of leave to amend. *See In re Fustolo*, 896 F.3d 76, 84 (1st Cir. 2018) ("'It is axiomatic that amendments which unfairly prejudice a litigant should not be granted.'"). It is patently unfair that the State forced 3M to litigate removal based on the original allegations, only to revise them multiple times three years later after 3M prevailed on appeal. When confronted with a request for leave to amend under similar circumstances in *Insulin Pricing Litigation*, the

---

[5] The State's time to petition for a writ of certiorari has now expired.

[6] The State continues to mischaracterize the First Circuit's decision, relying on a single footnote in the description of the procedural history to argue that its decision was predicated on just "one" site. Reply 8. But this is not what the First Circuit held. Opp. 11.

district court denied leave. 2025 WL 3022535, at *3–4. This Court should reach the same result here, which is especially warranted in light of the First Circuit's admonition that "[p]laintiffs must exercise due diligence in amending their complaints," such that courts "may refuse to allow plaintiffs an endless number of trips to the well." *Aponte-Torres*, 445 F.3d at 58.

The State's proposed amendments have already made for inefficient litigation. The State has now tried to revise its claims at least three times in the last two months alone (with a fourth attempt apparently on its way), creating uncertainty and requiring multiple rounds of briefing. Reply at 2 n.1. The State's late-breaking (and ineffectual) fourth supplemental disclaimer filed just two days ago all but guarantees that even a fourth iteration of its proposed amendments would not be its last, and its lack of assurances otherwise and emphasis on reply that there is "no deadline to amend the complaint," make clear it will not be. Reply at 7. That is the direct consequence of the game of "oops" it told the First Circuit it is playing—blithely adding sites to its recovery list in this suit and then maybe (or maybe not) "cross[ing]" that site off when 3M, by its own diligence, identifies plausible AFFF commingling at that site. *See* Ex. 78-1 at 17–18. In other words, the State's plan, in no uncertain terms, is to amend its complaint indefinitely as additional sites with plausible AFFF commingling are revealed, creating the potential for jurisdictional ping-pong that will waste this Court's and the parties' time and resources.

There are other follow-on consequences from the State's gambit that the Court should consider. In its third iteration of the proposed amended complaint, the State seeks to disclaim the Kennebunk, Kennebunkport & Wells Water District. Dkt. 77-1 ¶ 15. But Kennebunk is the singular site in the initial (and operative) complaint for which the State specifically alleged excessive levels of a type of PFAS that 3M allegedly exclusively manufactured. Dkt. 1-1 ¶ 57. The State invoked Kennebunk in opposing 3M's motion to dismiss challenging the State's

9

allegations of injury and causation. Dkt. 9-39 at 4–5, 7–8, 10. The Kennebunk disclaimer thus may necessitate a further motion to dismiss, since the removal of the allegations concerning that site may now warrant dismissal of the entire case.

The State's response that 3M cannot be prejudiced by "amendment[s] that reduce[] defendants' liability *in this case*," Reply 12 (emphasis added), is too clever by half. The State is not seeking dismissal of these sites with prejudice but rather plans to simply shift liability for these sites to its "AFFF" suit "currently pending in the AFFF MDL." Dkt. 53-1 ¶ 15; *see also* Dkt. 52 at 3. The State's serial disclaimers thus do not relieve 3M of any liability; they at best just sling sites between two cases pending (for now) in two different courts, perpetuating the unduly prejudicial inefficiencies that should be avoided.

In any event, the First Circuit clearly held that 3M is "entitle[d] . . . to have a federal court adjudicate the scope of its federal contractor defense" and have this case transferred to the MDL, should the JPML so choose. *Maine*, 159 F.4th at 139, 141–42. 3M has consistently and plausibly alleged that PFAS from MilSpec AFFF and PFAS from other sources have "commingled" in Maine and "inseparably contributed to" the contamination for which the State seeks relief. *id.* at 134; *see also Maryland v. 3M Co.*, 130 F.4th 380, 390 (4th Cir. 2025) (similar); First Notice of Removal, No. 2:23-cv-00210-JAW, ECF No. 1 ¶ 26. And "Maine's efforts to have two courts answer the same questions"—"whether and to what extent contamination from AFFF sources has commingled with non-AFFF"—""must fail." *Maine*, 159 F.4th at 131, 138–39. If the State's three-years-too-late proposed amendments would achieve its objective "to affect the forum" post-appeal, Reply 1, by thwarting either federal jurisdiction or transfer to the MDL, that will unfairly prejudice the fair and efficient administration of this case and is reason enough to deny the motion for leave to amend.

## CONCLUSION

For the foregoing reasons, this Court should deny the State's Motion for Leave to Amend.

| | |
|---|---|
| Date: February 20, 2026 | Respectfully submitted, |
| | /s/ Lauren R. Goldman |
| | Lauren R. Goldman (admitted *pro hac vice*) |
| | Justine Goeke (admitted *pro hac vice*) |
| | Gibson, Dunn & Crutcher LLP |
| | 200 Park Avenue |
| | New York, NY 10166 |
| | (212) 351-2375 |
| | lgoldman@gibsondunn.com |
| | jgoeke@gibsondunn.com |
| | |
| | Jay S. Geller (Bar No. 9022) |
| | Law Office of Jay S. Geller |
| | Lunt Professional Building |
| | 74 Lunt Road, Suite 206 |
| | Falmouth, ME 04105 |
| | (207) 899-1477 |
| | jgeller@jaysgellerlaw.com |
| | |
| | Russell B. Pierce (Bar No. 7322) |
| | NORMAN HANSON & DETROY LLC |
| | Two Canal Plaza |
| | P.O. Box 4600 |
| | Portland, ME 04112 |
| | (207) 774-7000 |
| | rpierce@nhdlaw.com |
| | |
| | Daniel L. Ring (admitted *pro hac vice*) |
| | Terri L. Mascherin (admitted *pro hac vice*) |
| | JENNER & BLOCK LLP |
| | 353 North Clark Street |
| | Chicago, IL 60654 |
| | (312) 222-9350 |
| | dring@jenner.com |
| | tmascherin@jenner.com |
| | |
| | Joanna Wright (admitted *pro hac vice*) |
| | JENNER & BLOCK LLP |
| | 1155 Avenue of the Americas |
| | New York, NY 10036 |
| | (212) 891-1600 |
| | jwright@jenner.com |
| | |
| | *Counsel for Defendant 3M Company* |