IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

|  |  |
|---|---|
| STATE OF MAINE,<br><br>            Plaintiff,<br><br>    v.<br><br>3M COMPANY, ET AL.,<br><br>            Defendants. | Civil Action Nos.<br>2:23-cv-00210-JAW<br>2:25-cv-00453-JAW (Lead) |

**PLAINTIFF STATE OF MAINE'S MOTION FOR SANCTIONS AND OTHER
APPROPRIATE RELIEF AGAINST 3M COMPANY AND
THE DUPONT DEFENDANTS**

Plaintiff the State of Maine (the "State") seeks an order imposing sanctions on 3M

Company ("3M") and EIDP, Inc., The Chemours Company, and The Chemours Company FC,

LLC (together, "DuPont"), for their continued failure to comply with the Court's October 16,

2025 and December 23, 2025 discovery orders.  The State requested defendants produce

documents at issue here in June, 2025 and defendants did not object to producing them.

Defendants nonetheless refused to produce and the Court ordered that "on or before January 30,

2026, Defendants shall produce the documents."  Dkt. 57 at 3.  Defendants have made clear that

they intentionally refused to comply with this Order, just as they intentionally refused to comply

with a prior order requiring them to make best efforts to complete this production by December

5, 2025.  The Court should respond to the flouting of its orders by imposing a fine for each day

that 3M and DuPont continue to fail to comply, along with payment of the State's reasonable

attorney's fees and expenses.  The State is filing a separate motion today seeking expedited

briefing of this motion so as to prevent defendants from continuing to benefit from their

wrongful conduct through the passage of time; the State will appreciate any expedited

consideration of these motions that the Court may be able to afford.

## LEGAL STANDARD

Sanctions "may be imposed to compel compliance with a court order." *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005); Fed. R. Civ. P. 37(b)(2)(A), (C). A "court faced with a disobedient litigant has wide latitude to choose from among an armamentarium of available sanctions." *Hooper-Haas v. Ziegler Holdings, LLC*, 690 F.3d 34, 37 (1st Cir. 2012). The Court "may issue further just orders," and may require the party, its attorneys, or both, to pay reasonable expenses, including attorney's fees. Fed. R. Civ. P. 37(b)(2)(C).

The First Circuit has held that "disobedience of court orders, in and of itself, constitutes extreme misconduct," and that there is a "strong institutional interest in ensuring that litigants honor court orders." *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 46–47 (1st Cir. 2002). Courts have imposed sanctions where a party flouts a court order.[1] As one federal court has pointed out, coercive sanctions are particularly appropriate where a party has "repeatedly flouted [its] discovery obligations—first by delay, then by refusing to follow this Court's specific directions, and ultimately by unauthorized limitations on what [it] produced, even after all [its] attempts at securing relief failed." *See LegalForce RAPC Worldwide P.C. v. Demassa*, 2019 WL 5395038, at *5 (N.D. Cal. Oct. 22, 2019).

---

[1] *See, e.g.*, *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 26 (1st Cir. 2006) (affirming sanctions where "district court twice ordered [party] to produce [documents] by a certain date and [the party] failed both times to come into full compliance with the court's order"); *Emmert v. Orr*, 2025 WL 1764384, at *2 (D. Me. June 26, 2025) (imposing sanctions for failure to comply with court orders on discovery), *report and recommendation adopted*, 2025 WL 2390548 (D. Me. Aug. 18, 2025).

## BACKGROUND

As relevant here, the State requested in June, 2025 that defendants produce the following case-specific documents, which, notably, are not tethered to individual contaminated sites:

1.    All records of sales of PFAS or PFAS-containing products to any Person located in Maine.

2.    All Documents which mention or refer to sales of PFAS or PFAS-containing products to any Person located in Maine.

3.    All Communications between You and any Person located in Maine relating to PFAS or PFAS-containing products, including all Documents which mention or refer to such Communications.

4.    All Documents identifying all of your employees and contracted third parties with responsibilities for sales, marketing, advertising, promotion, distribution, customer support, use, storage, handling, or disposal of PFAS or PFAS-containing products for any customers located in Maine.

5.    All Documents regarding all of Your current or historical facilities and offices in Maine relating to the manufacturing, marketing, sale, promotion, use, or storage of PFAS or PFAS-containing products.[2]

The State diligently conferred with defendants regarding their responses to these Requests by video calls and written correspondence in the fall of 2025.[3]  Defendants indicated to the State that they would produce documents in response to these Requests.[4]  Until last week (as

---

[2] Declaration of Benjamin Krass in Support of Plaintiff State of Maine's Motion for Sanctions and Other Appropriate Relief against 3M Company and the DuPont Defendants ¶ 3 ("Krass Decl.").

[3] *Id.* ¶¶ 4–6.

[4] *Id.* ¶¶ 5–6.

described below), 3M did not seek to confer further with the State about search terms or custodians for these Requests.[5]

On October 16, after hearing from the State that defendants had not produced these documents, the Court ordered defendants to "use their best efforts to complete the outstanding discovery by December 5, 2025." Dkt. 41. In November, 3M informed the State that, with respect to Request No. 3, it would use the search terms the State had proposed in October to search for and produce responsive communications.[6] On November 26, 2025, 3M moved to stay this case in light of its request for MDL transfer and DuPont subsequently joined in that motion. On December 9, 2025, the State moved to amend its complaint to remove certain sites on which 3M was alleging there was AFFF contamination.

On December 17, 2025, the Court held a hearing on discovery and case management issues at which the State informed the Court that defendants were flatly refusing to produce the documents at issue; defendants argued that they should not have to comply with the Court's order due to 3M's request for MDL transfer. Dkt. 62-1 at 3:1–2, 5:14–24, 9:8–14, 12:1–8, 15:5–13. On December 23, the Court rejected this argument and ordered that "on or before January 30, 2026, Defendants shall produce the documents." Dkt. 57 at 3. On January 6, 2026, 3M filed an objection to the Magistrate Judge's order and once again argued that the discovery should not occur until the JPML resolves its transfer request; nowhere in this objection did 3M raise the issue of the State's pending motion to amend the complaint as somehow affecting the discovery issue. DuPont did not object. The Magistrate Judge's order has not been overturned.

---

[5] *Id.* ¶ 5.

[6] *Id.*; Emails from B. Krass to counsel for 3M dated Oct. 29, 2025 and Nov. 18, 2025, Ex. 1 to Krass Decl.

Defendants have produced or deemed reproduced the same general liability documents

they have produced in other cases to plaintiffs, but on January 30, 2026, defendants only made

small productions of the Maine-specific documents at issue in this motion and that the State

needs to move this case forward.  Shortly thereafter, on February 9 and 12, the State sent emails

asking defendants whether they had completed the outstanding document productions.  3M

ignored these communications.[7]  On March 4, the State followed up a third time with 3M, which

finally responded on March 6 that in fact it had not completed the production, that its search for

documents was "ongoing" for Request Nos. 1, 2, 4, and 5, and that it had not produced any

responsive communications (Request No. 3) purportedly because, despite the parties'

communication in November confirming the search terms, the parties supposedly still needed to

negotiate search terms and custodians.[8]  This was a total surprise to the State.  3M also based its

failure to produce on its motion to transfer the case to the AFFF MDL, its pending motion to stay

the case, and the State's pending motion to amend its complaint.[9]  DuPont responded to the State

on February 17, but refused to answer directly whether its production was complete:  "Before

taking a position as to the status of discovery in response to the requests the State issued," it

stated, DuPont needed to know whether the State would be making any further amendments to

its complaint.[10]  The State understands this to be an implicit admission that DuPont had not

complied with the Court's order and (after further back and forth in which the State confirmed it

did not have any current plans to remove additional sites from the case) sought to confirm this

---

[7] Krass Decl. ¶ 7.

[8] Email from D. Ring to B. Krass (Mar. 6, 2026), Ex. 2 to Krass Decl.

[9] *Id.*

[10] Email from W. Donald to B. Krass (Feb. 17, 2026), Ex. 3 to Krass Decl.

understanding in an email earlier this week: "Our simple request is that DuPont let us know whether it has completed its production of documents responsive to Request Nos. 1-5."[11] DuPont's response to this March 10, 2026, email and a phone message seeking an answer to this simple question was as follows: "Ben, I have your email and call.  Because there are a number of people involved on our end I need to confer and will respond."[12]

The State informed 3M and DuPont that it intended to seek sanctions.

## ARGUMENT

Defendants have blocked the State from discovery for many months, and are disregarding the Court's discovery orders.  A "party who flouts a court order does so at its own peril." *Hooper-Haas*, 690 F.3d at 37.  Defendants have now, for a second time, intentionally violated an order of the Court.  As the Court is aware from prior briefing, defendants simply announced that they would not comply with the Court's October 16, 2025, order in light of the First Circuit's remand order, which defendants decided made it likely the JPML would transfer the case.  Dkt. 56 at 4; Dkt. 56-1; Dkt. 56-2; Dkt. 72 at 1–3.  By defendants' reasoning, they could flout this Court's order and, if successful, beat it out of town before consequences would follow.  The Court disagreed and required defendants to produce by January 30.  Dkt. 57 at 3.

Now they are at it again.  But none of defendants' present excuses are valid.  First, the mere filing of a motion to stay does not alleviate a party's obligation to comply with a court order.  *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 371 F. Supp. 2d 358, 360 (W.D.N.Y. 2005) ("Merely filing a motion for [a stay] does not excuse the moving party from fully complying

---

[11] Email from B. Krass to S. Schutz (Mar. 10, 2026), Ex. 3 to Krass Decl. at 1.

[12] Email from S. Schutz to B. Krass (Mar. 10, 2026), Ex. 3 to Krass Decl. at 1.

with the order appealed from until a court grants a stay and relieves the party of its obligation to comply with a challenged order."); *Creative Sols. Grp., Inc. v. Pentzer Corp.*, 199 F.R.D. 443, 444 (D. Mass. 2001) ("The plain fact is that merely moving for a stay does not operate to effectuate a stay unless and until the stay is granted" and a party is "under an obligation to obey [an] Order unless it *sought and obtained* a stay of that specific Order."). Nor does the filing of an objection to a magistrate's order, which remains valid unless and until vacated by the District Judge. *See, e.g.*, *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 2021 WL 1080673, at *2 (S.D.N.Y. Mar. 5, 2021) ("the filing of Rule 72(a) objections to a magistrate judge's discovery order does not excuse a party from complying with that order"); *Herskowitz v. Charney*, 1995 WL 104007, at *3 (S.D.N.Y. Mar. 8, 1995) ("the fact that a litigant has appealed to the District Court from a Magistrate Judge's discovery order does not excuse failure to comply with that order"). These are, of course, basic propositions.

It is also not true that 3M was awaiting information from the State about search terms. That point is belied by 3M's agreement to the State's email from November 2025, confirming the search terms and the total absence of any further inquiry by 3M on search terms or custodians until March 2026. *See supra* n.7. 3M's further refusal to respond to the State's emails in February asking whether the document production was complete also demonstrates a cynical attempt to defy the Court's authority by running out the clock.

Nor is the State's motion to amend to remove a handful of sites from the case a basis for failing to comply with the Court's order. Defendants only raised the issue of the complaint amendment in February (DuPont) and March (3M), long after the State's December 9 motion to amend. In fact, on January 6, 3M filed an objection to the Magistrate Judge's December 23 order but never raised the issue of the State's pending motion to amend. The issue is a post-hoc

rationalization for failing to obey a court order.  Moreover, all of the requests at issue seek documents that go beyond individual contaminated sites in the case.  Request Nos. 1 and 2 seek sales records of PFAS products to retail and industrial businesses, regardless of whether the sales location itself is a contaminated site.  Defendants' communications with regulators, municipalities, and retail and other customers in Maine about their PFAS products (No. 3) and the identity of defendants' employees responsible for sales and marketing in Maine (No. 4) obviously are not limited to contaminated sites.[13]

Defendants' violation of the Court's orders has caused delay, undermined the legal system, interfered with the State's ability to prepare its case for trial, and flouts the Court's authority.  This is so even though the Court held that deferring the production "would unreasonably delay the proceedings, particularly if the case is not transferred" to the MDL, and overruled defendants' arguments that the discovery should await a ruling on its motion to stay and transfer to the MDL.  Dkt. 57 at 3.  After many months of disregard for the deadlines set by

---

[13] DuPont asserted in an email that the number of claimed sites has dropped by 78 and the number of claimed public water systems has dropped by 16, *see* Schutz email (Mar. 6, 2026), Ex. 3 to Krass Decl., but in point of fact, 91 of the 94 sites removed from the case are public water systems, land application sites, surface waters, landfills, wastewater treatment facilities, compost facilities, and an underground injection site, which, unlike industrial sites (where customers have purchased PFAS products directly from defendants, generating sales records and communications with defendants), would not be sites expected to have responsive documents.  The three other sites are industrial sites that might have responsive documents like sales records.  Those records are still relevant even though the sites are out of the case because defendants have raised the issue of whether PFAS from an industrial site might conceivably have ended up elsewhere at a site that remains in the case (a point 3M itself has made repeatedly in making thin allegations of AFFF being hither and yon); the State needs to understand defendants' relationship to such pollution and to test 3M's position that AFFF was actually present at the industrial (or other) sites to begin with.

this Court, it is now apparent that sanctions are the only means to bring defendants into compliance.  Notably, this is not the first time 3M has engaged in improper litigation tactics that have shown deep disrespect for the judiciary.  *See In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2022 WL 17853203, at *6 (N.D. Fla. Dec. 22, 2022) (3M litigation tactics consisted of "deception and prevarication" going "beyond the pale of acceptable litigation conduct and reflect a flagrant contempt for this Court and the MDL process").

The Court may impose a "prospective, conditional fine to achieve compliance" with its orders.  *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 428 (1st Cir. 2015); *accord Marquis Theatre Corp. v. Condado Mini Cinema*, 846 F.2d 86, 88 (1st Cir. 1988) (sanction "for failure to comply with a discovery order is intended to prompt a party to respond").  A daily fine "is a reasonable sanction designed to compel compliance with a lawful court order."  *Mitchell Grp. USA, LLC v. Udeh*, 2015 WL 6760109, at *8 (E.D.N.Y. Nov. 5, 2015).[14]  Courts routinely impose daily fines of thousands of dollars per day to encourage compliance with court orders. *See Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57–58 (2d Cir. 1982) (affirming daily fine of $5,000 for company with $20 million in annual sales); *Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic*, 2021 WL 39582, at *1 (S.D.N.Y. Jan. 5, 2021) (increasing daily sanction of $5,000 per day to $15,000 per day).[15]  The First Circuit has held

---

[14] *Accord Martinenko v. 212 Steakhouse, Inc.*, 2023 WL 2919559, at *12 (S.D.N.Y. Apr. 12, 2023) (collecting cases), *report and recommendation adopted*, 2023 WL 11938820 (S.D.N.Y. Apr. 28, 2023); *Rodriguez v. New Generation Hardware Store Corp.*, 2024 WL 1406953, at *2 (S.D.N.Y. Apr. 2, 2024) (imposing daily fine for violation of discovery order).

[15] *See also Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 621 (S.D.N.Y. 2008), *aff'd*, 351 F. App'x 467 (2d Cir. 2009) (contempt sanction of $100,000 per day); *CE Int'l Res. Holdings LLC v. S.A. Mins. Ltd. P'ship*, 2013 WL 324061, at *3 (S.D.N.Y. Jan. 24, 2013) (imposing sanctions beginning at $5,000 per day and escalating to $20,000 after 20 days until there is compliance with court order).

that a court may impose a "large enough fine to prod Defendants" to comply with a court order. *AngioDynamics*, 780 F.3d at 427 & n.4 (affirming $1 million fine that escalated over time).[16] The State recommends that the Court impose a fine of $20,000 per day per defendant (treating the DuPont defendants as one entity) until defendants comply with the Court's order of December 23, 2025.  Given last year's reported revenues of 3M ($24 billion)[17] and Chemours ($5.8 billion),[18] these fines are reasonable attempts to secure compliance with the Court's orders. The State also requests compensation for the legal fees incurred in bringing this motion and in seeking the documents after they were ordered by the Court because defendants "simply chose not to produce the information, in violation of a direct court order." *See Cuviello v. Feld Ent. Inc.*, 2015 WL 877688, at *3 (N.D. Cal. Feb. 27, 2015).[19]

The bottom line is that defendants have continuously flouted the Court's discovery orders.  The Court should impose fines and order other appropriate relief.

### CONCLUSION

The State respectfully requests that the Court grant the relief requested above.

Dated: March 13, 2026                   Respectfully submitted,

                                        AARON M. FREY
                                        ATTORNEY GENERAL

---

[16] *Accord In re Power Recovery Sys., Inc.*, 950 F.2d 798, 802 (1st Cir. 1991) (affirming daily fine: "Where the purpose of a monetary sanction is to make the defendant comply, the court has wide discretion in considering the character and magnitude of the harm threatened by the continued contumacy, and the probable effectiveness of any suggested sanction in bringing about compliance and the like.").

[17] *See* https://investors.3m.com/financials/sec-filings/content/0000066740-26-000014/0000066740-26-000014.pdf at 51.

[18] *See* https://investors.chemours.com/static-files/5a53538d-5f9e-450d-b65c-8f8b7a5c5691 at pdf p. 90.

[19] Should the Court award fees and expenses, the State will submit to the Court the amount of expenses and fees that the State seeks.

/s/ Benjamin A. Krass
Benjamin A. Krass*
Matthew F. Pawa*
Gillian C.A. Cowley*
Pawa Law Group P.C.
1280 Centre Street, Suite 230
Newton Centre, MA 02459
(617) 641-9550
Email: bkrass@pawalaw.com
        mp@pawalaw.com
        gcowley@pawalaw.com

Scott Boak (Bar No. 009150)
Mark Bower (Bar No. 004132)
Assistant Attorneys General
6 State House Station
Augusta, Maine 04333
(207) 626-8566
Email: Scott.Boak@maine.gov
        Mark.Bower@maine.gov

Kyle J. McGee*
Viola Vetter*
Jason H. Wilson*
Grant & Eisenhofer P.A.
123 Justison Street
Wilmington, DE 19801
(302) 622-7000
Email: kmcgee@gelaw.com
        vvetter@gelaw.com
        jwilson@gelaw.com

*Admitted *pro hac vice*